IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HYDROGEN MASTER RIGHTS, LTD., a Delaware corporation, CARL LE SOUEF and PRAVANSU MOHANTY, PH.D. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DEAN WESTON, ENGINEERING INTERESTS, LLC, a Michigan limited liability company, PAUL DAVID MANOS, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, a Nevada intellectual property trust, SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, a Wyoming intellectual property trust, TRACY COATS, and THE CLIENT IS EVERYTHING, LTD., a Wyoming corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. No. _____

JURY TRIAL DEMANDED

Defendants.

## Complaint

For their Complaint against defendants Dean Weston, Engineering Interests, LLC, Paul David Manos, Significan Global Energy Intellectual Property Trust, Significan Australia Energy Intellectual Property Trust, Tracy Coats, and The Client is Everything, Ltd. (collectively "Defendants"), plaintiffs Hydrogen Master Rights, Ltd., Carl Le Souef and Pravansu Mohanty, Ph.D. (collectively, "Plaintiffs") state:

## The Parties

1.      Plaintiff Hydrogen Master Rights, Ltd. ("HMR") is a Delaware corporation, having a principal place of business in Michigan.

2.      Plaintiff Carl Le Souef ("Mr. Le Souef") is an individual who resides in, and is a citizen of, Australia.

3.      Plaintiff Pravansu Mohanty, Ph.D. ("Dr. Mohanty") is an individual who resides in Michigan.

4.      Upon information and belief, defendant Dean Weston ("Weston") is an individual who resides in Michigan.

5.      Upon information and belief, defendant Engineering Interests, LLC ("Engineering Interests") is a Michigan limited liability company having a principal place of business in Michigan.

6.      Upon information and belief, defendant Paul David Manos ("Manos") is an individual who resides in Nevada.

7.      Upon information and belief, defendant Significan Global Energy Intellectual Property Trust ("Significan") is a Nevada intellectual property trust, having a principal place of business in Nevada.

8.      Upon information and belief, defendant Significan Australia Energy Intellectual Property Trust ("Significan AUS") is a Wyoming intellectual property trust, having a principal place of business in Nevada.

9.      Upon information and belief, defendant Tracy Coats ("Coats") is an individual who resides in Pennsylvania.

10.     Upon information and belief, The Client is Everything, Ltd., (a/k/a International Business Knowledge Exchange, Ltd.) ("IBKE (Wyo.)") is a Wyoming corporation having a principal place of business in Pennsylvania.

### Jurisdiction and Venue

11.     This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331 because Plaintiffs assert a claim for misappropriation of trade secrets under the

Defend Trade Secrets Act of 2016 (the "DTSA"), which creates a federal civil cause of action for misappropriation of trade secrets regardless of the amount in controversy. This Court has supplemental or pendant jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because such claims are so related to Plaintiffs' federal misappropriation of trade secrets claim that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court has personal jurisdiction over Manos, Significan and Significan AUS, and venue for Plaintiffs' claims against each of them is proper here, because each agreed and consented in the Purchase Agreement (as defined below, *see* ¶ 54) that the state and federal courts located in the State of Delaware have exclusive jurisdiction over any action arising out of or relating to that agreement and waived any objection to the jurisdiction and venue of this Court.

13.     This Court has personal jurisdiction over Weston, and venue for Plaintiffs' claims against him is proper here, because, as the claimed assignee of some or all of the rights of Manos, Bernard Picot ("Picot"), Significan and Significan AUS under the Purchase Agreement, he has agreed and consented that the state and federal courts located in Delaware have exclusive jurisdiction over any action arising out of or relating to that agreement and waived any objection to the jurisdiction and venue of this Court, and because he has caused tortious injuries both in and outside the State of Delaware as alleged herein.

14.     This Court has personal jurisdiction over Engineering Interests, and venue for Plaintiff's claims against it is proper here, because, up0n information and belief, Engineering Interests is the assignee of some or all of the rights of Manos, Picot, Significan and Significan AUS under the Purchase Agreement and, as such, it has agreed and consented that the state and

federal courts located in Delaware have exclusive jurisdiction over any action arising out of or relating to that agreement and waived any objection to the jurisdiction and venue of this Court, and because it has caused tortious injuries both in and outside the State of Delaware as alleged herein.

15.     This Court has personal jurisdiction over Coats because he regularly transacts business, performs work or services in, and otherwise engages in a persistent course of conduct in the State of Delaware and has maintained systematic and continuous contact with persons residing or otherwise domiciled in the State of Delaware, and because he has caused tortious injuries both in and outside the State of Delaware. As non-exclusive examples, Coats: (i) purposefully caused HMR and other corporate entities to be incorporated in Delaware; (ii) signed one or more annual reports to the Delaware Secretary of State relating to such entities, including HMR, IBKE (Del.) (as defined below, *see* ¶ 35) and Disruptive Prosperity LLC (as defined below, *see* ¶ 83); (iii) is the sole shareholder or member, a director, or officer of one or more Delaware corporations; and (iv) caused tortious injury to one or more of the Plaintiffs in Delaware by his acts and omissions both in and outside the State of Delaware as alleged herein. Moreover, the Court has personal jurisdiction over Coats due to his conspiracy with Weston that relates, at least in part, to the Purchase Agreement, under which Weston, as an assignee under the Purchase Agreement, and to Coats' knowledge, has consented to the jurisdiction of this Court.

16.     This Court has personal jurisdiction over IBKE (Wyo.) because, on information and belief, it is a mere alter ego of Coats that he has used to achieve inequitable results, it has maintained systematic and continuous contact with persons residing or otherwise domiciled in the State of Delaware, and it has caused tortious injuries both in and outside the State of Delaware, as alleged herein.

17.     Venue is proper under 28 U.S.C. § 1391(b)(3) because each defendant is subject to the Court's personal jurisdiction with respect to this action.

**Statement of Facts**

**A.     The Hydrogen Technology**

18.     This case relates to trade secret hydrogen technology that HMR purchased in December 2011 (the "Hydrogen Technology").

19.     Manos and Picot formed DBHS LLC, a Nevada limited liability company (*a/k/a* "DBHS Technologies, LLC") ("DBHS"), in 2009 to, among other things, facilitate the development of, and attract investment in, the Hydrogen Technology.

20.     DBHS has never owned any right, title or interest in or to the Hydrogen Technology.

21.     In or about January 2010, Manos asked Dr. Mohanty to assist with developing and validating the Hydrogen Technology.

22.     Dr. Mohanty was not, and has never been, employed by, or a partner of, Manos or Picot, either individually or in any combination thereof.

23.     Dr. Mohanty was not, and has never been, employed by, or a partner of, Weston, either individually or in any combination thereof.

24.     On or about September 10, 2010, Manos, Picot and DBHS entered into an Exclusive Option Agreement with IBKE (Wyo.), pursuant to which Coats, through IBKE (Wyo.), received an exclusive option to license the Hydrogen Technology in Australia and New Zealand (the "Exclusive Option Agreement").

25.     On information and belief, IBKE (Wyo.) has at all times been, directly or indirectly, owned, influenced, governed, controlled and dominated by Coats such that IBKE

(Wyo.) is merely his instrumentality and his alter ego, and has functioned as a façade for Coats as its controlling shareholder. Among other things, and upon information and belief, Coats failed to adequately capitalize IBKE (Wyo.) and has maintained it at or near insolvency by siphoning off company funds for his personal benefit, and failed to observe corporate formalities in his dealings with IBKE (Wyo.). Moreover and upon information and belief, Coats has misused IBKE (Wyo.) as an instrumentality to perpetuate, and to conceal his role in and the personal benefits he received as a result of, certain of the transactions alleged herein. As a result, the required separateness between Coats and IBKE (Wyo.) has ceased to exist and adherence to the fiction of IBKE (Wyo.)'s separate existence would lead to injustice, fundamental unfairness, and inequity.

26.    On or about September 14, 2010, Manos, Picot and DBHS entered into an Exclusive Representation Agreement with IBKE (Wyo.) (the "Exclusive Representation Agreement") under which Coats, through IBKE (Wyo.), was appointed as the exclusive agent for representing the Hydrogen Technology in exchange for a commission on all sums paid for the Hydrogen Technology to or for the benefit of Manos and Picot.

27.    Having caused IBKE (Wyo.) to enter into the Exclusive Option Agreement and then the Exclusive Representation Agreement, Coats began seeking investors for the Hydrogen Technology.

**B.    Coats Forms a Partnership to License the Hydrogen
Technology While Continuing to Represent Manos and Picot**

28.    In or around late 2010, Coats formed a partnership with Mr. Le Souef and Mr. Rodney Adler ("Mr. Adler") to acquire rights in and to, and to commercialize, the Hydrogen Technology (the "Partnership").

6

29.     In forming the Partnership and as a partner in the Partnership, Coats repeatedly acknowledged, both orally and in writing, that he held a position of trust with respect to each of his partners in the Partnership and promised, verbally and in writing, to act in the best interests of the Partnership even if the Partnership's interests were different from his personal interests.

30.     Coats also promised and agreed, both orally and in writing, to maintain all information regarding the Partnership, including its technology, finances and deliberations, as confidential to the Partnership.

31.     Mr. Le Souef and Mr. Adler reasonably relied on Coats' agreements and promises to them as his partners in disclosing confidential and proprietary information to him as a partner in the Partnership.

32.     Notwithstanding his status as a partner of the Partnership and his promises to his partners, Coats continued to represent the Hydrogen Technology on behalf of Manos and Picot through IBKE (Wyo.) without disclosing to Mr. Le Souef and Mr. Adler the benefits he stood to receive through his ownership and control of IBKE (Wyo.) from any investment by the Partnership in the Hydrogen Technology.

33.     On Coats' recommendation, Picot and Manos created Significan AUS in or about January 2011 and assigned into it the Australian and New Zealand rights to the Hydrogen Technology that Coats knew the Partnership intended to license.

34.     Upon information and belief, the reason Coats recommended that Picot and Manos create Significan AUS and assign into it the Australian and New Zealand rights to the Hydrogen Technology was, at least in part, to conceal from Coats' partners that, by virtue of his ownership and complete control and domination over IBKE (Wyo.), Coats stood to realize personal gain from transactions involving the Partnership relating to the Hydrogen Technology.

35.     Coats incorporated International Business Knowledge Exchange, Ltd. ("IBKE (Del.)") in Delaware on behalf of the Partnership for the purpose of acquiring rights to the Hydrogen Technology.

36.     The Partnership, through IBKE (Del), then licensed the Australian and New Zealand rights from Significan AUS in January 2011.

37.     IBKE (Del.) and IBKE (Wyo.) are unrelated corporate entities.

38.     Using capital primarily contributed by Mr. Le Souef, IBKE (Del.) made a substantial initial payment to Significan AUS under the January 2011 license.

39.     Upon information and belief, IBKE (Wyo.) received a commission or other consideration on IBKE (Del.)'s initial payment under the January 2011 license agreement, with the balance of the payment by IBKE (Del.) being distributed to Manos and Picot.

40.     Upon information and belief, IBKE (Wyo.) distributed to Coats some or all of the payment it received on IBKE (Del.)'s initial payment under the January 2011 license.

41.     In or around April 2011, Manos and Picot created Significan and assigned to it the worldwide rights to the Hydrogen Technology at Coats' recommendation.

42.     Upon information and belief, the reason Coats recommended that Picot and Manos create Significan and then assign it the worldwide rights to the Hydrogen Technology was, at least in part, to conceal from Coats' partners that he stood to realize personal gain from Partnership transactions relating to the Hydrogen Technology.

43.     The Partnership, through IBKE (Del.), licensed the worldwide rights to the Hydrogen Technology in April 2011.

44.     Pursuant to the April 2011 license agreement, IBKE (Del.) made two payments to Significan to license the worldwide rights to the Hydrogen Technology, again using capital contributed by Le Souef.

45.     Upon information and belief, IBKE (Wyo.) received a commission on each payment by IBKE (Del.) under the April 2011 license agreement and the balance was distributed or otherwise paid over to Manos and Picot.

46.     Upon information and belief, IBKE (Wyo.) distributed to Coats some or all of the payments it received on IBKE (Del.)'s payments made under the April 2011 license.

47.     Coats also induced Mr. Le Souef to make a substantial payment to him personally, which Mr. Le Souef made on behalf of both himself and the Partnership.

**C.     Dr. Mohanty Joins the Partnership**

48.     Following its acquisition of a worldwide license to the Hydrogen Technology through IBKE (Del.), Dr. Mohanty joined the Partnership at the invitation of Mr. Le Souef, Mr. Adler and Coats.

49.     After Dr. Mohanty joined the Partnership, Coats continued to acknowledge, both orally and in writing, that he held a position of trust with respect to each partner in the Partnership, including Dr. Mohanty.

50.     Coats also repeated and reaffirmed to Dr. Mohanty and his other partners his prior promises and agreements to act in the best interests of the Partnership even if the Partnership's interests were different from his personal interests and to maintain all information regarding the Partnership, including its technology, finances and deliberations, as confidential.

51.     Dr. Mohanty and Mr. Le Souef reasonably relied on Coats' agreement and promises in continuing to disclose confidential and proprietary information to him as a partner in the Partnership.

52.     Upon information and belief, Coats recorded some or all of his confidential conversations with other partners in of the Partnership, both before and after Dr. Mohanty became his partner (collectively with all copies, transcriptions, summaries, and other records thereof, the "Confidential Recordings").

53.     Each Confidential Recording was the property of the Partnership that Coats held in trust for the benefit of the Partnership, and Coats never has had any right or interest in or to the Confidential Recordings separate from, or in addition to, the rights of the Partnership.

**D.      The Partnership Purchases the Hydrogen Technology**

54.     The Partnership, through HMR, purchased all rights, titles and interests in and to the Hydrogen Technology from Manos, Picot, Significan and Significan AUS (collectively, the "Sellers") pursuant to the December 12, 2011 Agreement for Sale of Certain Assets (the "Purchase Agreement").

55.     The terms of the Purchase Agreement are confidential to HMR.

56.     Coats had caused HMR to be incorporated in Delaware on behalf of the Partnership for the purpose of acquiring the Hydrogen Technology from the Sellers.

57.     HMR made a substantial initial payment to the Sellers under the Purchase Agreement using capital contributed to it by Mr. Le Souef.

58.     To induce the Partnership and HMR to enter into the Purchase Agreement, the Sellers made numerous representations and warranties that they subsequently memorialized in the Purchase Agreement, including, among other things, that: (i) although they had disclosed

aspects of the Hydrogen Technology to certain identified individuals, they had not disclosed the actual formula for the Hydrogen Technology (the "Secret Formula") to anyone other than Dr. Mohanty; (ii) with the exception of certain agreements that HMR assumed (the "Assumed Agreements"), no third party other than the Sellers ever had any right, title or interest in or to the Hydrogen Technology; and (iii) the Sellers had good and marketable title to the Hydrogen Technology.

59.     Under the Purchase Agreement, the Sellers' agreed that their relevant representations and warranties were true as of the effective date of the agreement and that they would remain true indefinitely following its execution.

60.     The Sellers also agreed to indemnify and hold HMR and its officers, directors and shareholders, among others, harmless with respect to any third party claims arising out of transactions entered into by the Sellers concerning the Hydrogen Technology, and that the state and federal courts located in the State of Delaware would have sole and exclusive jurisdiction over any action arising out of or relating to the Purchase Agreement.

61.     The Partnership and HMR reasonably and justifiably relied on the Sellers' representations, warranties and covenants in purchasing and then investing substantial capital and other resources trying to validate the Hydrogen Technology.

62.     The Partnership would not have caused HMR to enter, and HMR would not have entered, into the Purchase Agreement, and would not have invested substantial capital and other resources trying to validate the Hydrogen Technology, but for the representations, warranties and covenants by the Sellers.

E.   **HMR Discovers the Sellers' Breach of the Purchase Agreement**

63.   After HMR entered into the Purchase Agreement and made its initial payment to the Sellers, Weston contacted Dr. Mohanty without solicitation and claimed to know the Secret Formula. Weston also claimed that Manos and Picot had granted him an interest in the Hydrogen Technology.

64.   At Dr. Mohanty's request, Weston confirmed his knowledge of the Secret Formula by correctly telling it to Dr. Mohanty.

65.   Until Weston contacted Dr. Mohanty, neither HMR nor any partners in the Partnership knew that Weston had knowledge of the Secret Formula or that he claimed to have an interest with respect to the Hydrogen Technology.

66.   Weston subsequently claimed that Manos and Picot invited him to invest and partner with them to design, build, test and invest in hydrogen fuel cell technology (that Weston has alleged is related to the Hydrogen Technology) in exchange for a 12% ownership share and 12% of the revenues of the hydrogen fuel cell business and that he had invested $220,000 of his personal savings and borrowed $100,000 from his brother as part of his investment with Manos and Picot.

67.   Weston later claimed that Manos and Picot actually promised him one-third ownership of, and one-third of the revenues from, the hydrogen fuel cell business and that he invested and incurred expenses of more than $800,000 relating to that business.

68.   Upon information and belief, Coats recorded one or more of his conversations with Weston regarding the Hydrogen Technology.

69.   Thereafter, Weston and HMR entered into a Mutual Cooperation Agreement whereby HMR agreed to notify Weston in advance of further payments made to or for the benefit

of Manos or Picot relating to the Hydrogen Technology, and Weston agreed to (i) execute a sworn declaration truthfully identifying how he learned the Secret Formula, and (ii) maintain the Hydrogen Technology and all related information in the strictest of confidence and to not make any disclosure or use thereof for any purpose without HMR's express written consent.

**F.    Manos and Picot Sue Weston After HMR Provided
         <u>Notice of the Sellers' Breaches of the Purchase Agreement</u>**

70.    HMR contacted the Sellers after Weston revealed his knowledge of the Secret Formula and claimed an interest in the Hydrogen Technology.

71.    In response, the Sellers denied disclosing the Secret Formula to Weston and represented that Weston was never granted any interest in or to the Hydrogen Technology.

72.    On or about March 23, 2012, Picot and Manos filed suit against Weston in the Superior Court of California for the County of Santa Clara (the "California Action), asserting claims for declaratory relief and for interference with the Purchase Agreement.

73.    In their complaint in the California Action, Manos and Picot denied Weston's claim that they granted him an interest in and to the Hydrogen Technology.

74.    HMR and the Sellers entered into a tolling agreement pursuant to which the parties agreed to toll all unexpired statutes of limitation and repose and all applicable time periods under the Purchase Agreement effective as of May 3, 2012.

75.    HMR asked the Sellers on multiple occasions to provide written assurances that their representations, warranties and certifications in the Purchase Agreement were and remain true and correct, which the Sellers refused to provide.

76.    HMR also asked the Sellers to provide information regarding additional false statements and breaches of the Purchase Agreement, including potential ownership claims by other third parties.

77.     The Sellers refused to provide the information that HMR requested and instead affirmatively acted to conceal the extent of their false statements and their breaches of the Purchase Agreement, including their representations and warranties regarding confidentiality, ownership and title.

78.     In opposition to Weston's motion to dismiss the lawsuit filed against him by Manos and Picot, Manos and Picot each executed and filed sworn declarations in the California Action dated May 8, 2012. In their declarations, Manos and Picot each denied granting Weston an ownership interest in or to the Hydrogen Technology or agreeing that Weston would receive a share in or portion of the profits from the sale or license of that technology, and that Weston never indicated to them that he claimed an interest in the technology or any profits relating thereto. *See* Declaration of Paul David Manos in Opposition to Motions to Dismiss for Lack of Jurisdiction and Venue and to Transfer, N.D. Cal. Case No. 5:12-cv-01939 ECF # 16, at ¶¶ 45, 47-48; Declaration of [Bernard Picot] in Opposition to Motions to Dismiss for Lack of Jurisdiction and Venue and to Transfer, N.D. Cal. Case No. 5:12-cv-01939 ECF # 17, at ¶¶ 29-30.

79.     Counsel for the Sellers provided a copy of Mr. Manos' declaration and other filings in the California Action to counsel for HMR, including but not limited to Mr. Manos' sworn declaration in which he denied granting Weston any interest in or to the Hydrogen Technology.

80.     The Sellers continued to maintain that Weston was never granted any right, title or interest in filings throughout the duration of the California Action, including in a filing submitted to the U.S. Court of Appeals for the Ninth Circuit on or about December 15, 2013, and their

claim that Weston had no such interest is reflected in the March 19, 2015, opinion entered by the U.S. Court of Appeals for the Ninth Circuit in *Picot and Manos v. Weston,* 780 F.3d 1026 (2015).

81.     Weston, Manos and Picot entered into an agreement pursuant to which Manos, Picot, Significan and Significan AUS assigned to Weston their rights under the Purchase Agreement.

**G.     Coats Exits the Partnership**

82.     In or about June 2014, Coats withdrew from the Partnership.

83.     As part of his withdrawal, Coats and Disruptive Prosperity, LLC, a limited liability company that Coats formed or caused to be formed in Delaware that he directly or indirectly controls or controlled, agreed to sell their entire right, title and interest in and to HMR (to the extent they had any) and other Partnership entities, and entered into a Mutual General Release and Indemnity (the "Mutual General Release") under which they agreed to release HMR, Dr. Mohanty, Mr. Le Souef and others from all claims, covenants, agreements, actions, liability, obligations and causes of action they may have had as of June 27, 2014.

84.     The Mutual General Release did not release any claims against Coats by the Partnership or his former partners, and it excludes "any disputes, claims, controversies and causes of action arising out of or resulting from acts, omissions, or events occurring as a result of a breach of confidential information by [Coats] regarding [HMR]."

85.     Mr. Adler also has withdrawn from the Partnership, and Dr. Mohanty and Mr. Le Souef are the only current partners in the Partnership.

H. **Coats, Weston and Manos Conspire in an Attempt
to Extort Dr. Mohanty, Mr. Le Souef and HMR**

86.     Upon information and belief, Coats, Weston and Manos illegally, maliciously and wrongfully entered into an agreement with the intent to, and for the illegal purpose of, among other things, extorting Dr. Mohanty, Mr. Le Souef and HMR, among others.

87.     Upon information and belief, Coats, Weston and Manos entered into their agreement after Coats executed his Mutual General Release.

88.     Coats agreed to, and did, provide the Partnership's and HMR's confidential, proprietary and trade secret information to Weston in breach of his continuing obligations of confidentiality and nondisclosure.

89.     The confidential, proprietary and trade secret information Coats provided to Weston included some or all of the Confidential Recordings.

90.     Upon information and belief, Coats also disclosed to Weston private, personal and sensitive information regarding Dr. Mohanty and Mr. Le Souef.

91.     Upon information and belief, Coats provided the Confidential Recordings and private, personal and sensitive information to Weston knowing, and with Weston's agreement that, he would use them in furtherance of their conspiracy.

92.     Coats did not request, nor did he receive, the consent of the Partnership or Mr. Le Souef and Dr. Mohanty as his former partners before disclosing the Confidential Recordings to Weston, nor did Coats inform them that he had disclosed the Confidential Recordings and other information to Weston.

93.     Putting his conspiracy with Coats and Manos into action, Weston contacted Dr. Mohanty on March 23, 2016, and asked him to meet to discuss an "urgent" matter.

94.     Dr. Mohanty agreed to meet Weston at a Starbucks in Novi, Michigan.

16

95.    When Dr. Mohanty arrived at the agreed-upon location, Weston insisted that they talk in Weston's vehicle instead of inside the Starbucks.

96.    With Dr. Mohanty in his vehicle, Weston claimed for the first time that the Sellers had assigned him their rights under the Purchase Agreement as part of his settlement with Manos and Picot and that he already filed a lawsuit against HMR for breach of the Purchase Agreement.

97.    At the time of his conversation with Dr. Mohanty, none of the Sellers had disclosed to HMR, Dr. Mohanty or Mr. Le Souef any assignment of rights to Weston, and Weston had not filed a lawsuit against HMR for breach of the Purchase Agreement.

98.    Weston also told Dr. Mohanty that, through his "research" on Dr. Mohanty, Mr. Le Souef and their business and personal interests, he had uncovered information that would be highly prejudicial to Dr. Mohanty, Mr. Le Souef and their business and personal interests if it was disclosed to federal law enforcement authorities and other third parties.

99.    Weston then had Dr. Mohanty listen to excerpts of the Confidential Recordings and provided him with written transcripts of those excerpts.

100.    After playing the Confidential Recordings, Weston told Dr. Mohanty the recordings were evidence of felony criminal conduct and threatened to report Dr. Mohanty and Mr. Le Souef to federal law enforcement authorities.

101.    Weston further threatened that, if he were to disclose the Confidential Recordings, Dr. Mohanty and Mr. Le Souef would be convicted of federal criminal offenses and that Dr. Mohanty would have his citizenship revoked.

102.    To reinforce his threats, Weston boasted to Dr. Mohanty that he previously caused a third party to be criminally charged, convicted, and imprisoned based on information he discovered and then publicly revealed, and that the third party in question was still in prison.

103.    The excerpts of the Confidential Recordings that Weston played for Dr. Mohanty are unrelated to the Hydrogen Technology and do not evidence, disclose or suggest any illegal conduct by Dr. Mohanty or Mr. Le Souef.

104.    Weston also threatened to disclose to third parties private and secret information about Dr. Mohanty and Mr. Le Souef that, if disclosed, would professionally and personally harm, embarrass and otherwise materially prejudice each of them.

105.    Weston told Dr. Mohanty that the reason he wanted to meet in the privacy of his car was to give Dr. Mohanty the opportunity to avoid having criminal charges lodged against him and to otherwise prevent the Confidential Recordings and other prejudicial information from becoming public.

106.    Having threatened Dr. Mohanty and Mr. Le Souef with personal and professional embarrassment, criminal convictions, loss of citizenship and other harms, Weston offered to make it all "go away" if Dr. Mohanty, Mr. Le Souef and HMR agreed to (i) pay Weston $9.4 million, (ii) assign to him the Hydrogen Technology and related assets, and (iii) assign to him multiple unrelated patent-pending technologies.

107.    When Dr. Mohanty told Weston he did not have the means to pay him $9.4 million, Weston told him to sell assets or otherwise get the money from Mr. Le Souef.

108.    Weston concluded by telling Dr. Mohanty to relay his extortionate threats to Mr. Le Souef and further threatening that, unless his demands were met, Dr. Mohanty and Mr. Le Souef "will get really hurt."

109.    Weston repeated his extortionate demands when he subsequently talked with Mr. Le Souef by telephone. During their call, Weston admitted to Mr. Le Souef that Coats provided him with copies of the Confidential Recordings pursuant to an agreement between them.

18

110.    Weston also claimed to know private and secret information about Mr. Le Souef regarding, for example, his family and personal life and his personal finances, and he disclosed that Manos was one of his sources for such information. Upon information and belief, Coats was also one of Weston's sources for such information.

111.    Weston also represented to Mr. Le Souef that he was currently working in partnership with Manos and that Manos was regularly providing him information regarding the Hydrogen Technology.

112.    Weston repeated his demand for $9.4 million and assignment of the Hydrogen Technology and other, unrelated technologies as the price of keeping the Confidential Recordings and other private and secret information confidential.

113.    Weston also repeated his claim to having filed a lawsuit against HMR for breach of the Purchase Agreement when, in fact, he had not yet done so.

114.    When Weston and Mr. Le Souef met several days later, Weston repeated his extortionate demands for a third time.

115.    During their meeting, Weston threatened that, unless his demands were met, he would provide the Confidential Recordings to federal law enforcement authorities and other third parties, that he would begin subpoenaing third parties including federal agencies, and that, as a result, "there will be a lot of tears."

116.    After his meeting with Mr. Le Souef concluded, Weston caused to be served on Mr. Le Souef a summons and complaint for a lawsuit he and Engineering Interests had filed against Mr. Le Souef, Dr. Mohanty, HMR and other third parties in the Circuit Court for Oakland County, Michigan, on or about March 29, 2016 (the "Michigan Action").

117.    In furtherance of his conspiracy with Weston and Coats, Manos testified in a sworn affidavit dated June 7, 2016, that Weston had been granted a 1/3 interest in the Hydrogen Technology prior to the Purchase Agreement and that, at the time of the Purchase Agreement, he and Picot "were trying to eliminate all Dean Weston's interest."

118.    Weston and Engineering Interests submitted Manos' affidavit to the court in the Michigan Action as Exhibit 5 to Weston's June 8, 2016, filing in Oakland Cty. Circuit Court Case No. 16-152236-CB.

119.    Manos' affidavit admits that his representations to HMR, Mr. Le Souef and Dr. Mohanty prior to the Purchase Agreement were false, that his representations to HMR in the Purchase Agreement were false, and that he breached the Purchase Agreement. Manos' affidavit also materially contradicts his sworn declaration and his representations to the U.S. District Court for the Northern District of California in the California Action.

120.    Before Weston's June 7, 2016, affidavit, the Sellers had worked to affirmatively conceal the existence of the ownership and other interests that Dean Weston claims with respect to the Hydrogen Technology.

121.    Upon information and belief, Weston's and Engineering Interests' purpose in filing the Michigan Action was not to pursue legitimate claims, but instead to further their conspiracy with Coats and Manos with the ulterior and improper purposes of attempting to legitimize and to further pursue their extortionate conduct.

122.    Weston's and Engineering Interests' ulterior and improper purposes are made manifest by their disclosure of confidential, proprietary and trade secret information relating to the Hydrogen Technology, HMR and the Partnership in their complaint that was unnecessary to sufficiently state their claims for relief, in breach of Weston's duties of confidentiality under the

Mutual Cooperation Agreement and the Purchase Agreement, and in violation of their obligations under the law.

123.   Weston's and Engineering Interests' ulterior and improper purposes are further made manifest by their assertion of claims that arise out of and relate to the Purchase Agreement in the Michigan Action when the Purchase Agreement requires such claims to be brought only in the state and federal courts located in the State of Delaware.

124.   Since filing his complaint in the Michigan Action, Weston and Engineering Interests have continued to disclose and use confidential, proprietary and trade secret information relating to the Hydrogen Technology, HMR and the Partnership by, among other things, prosecuting their claims in the Michigan Action and requesting, through the help of others, additional information from third parties.

<u>COUNT I</u>
*Breach of Purchase Agreement*
*(HMR against Manos, Significan, Significan AUS, and Weston)*

125.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

126.   The Purchase Agreement is a valid and binding contract between HMR and the Sellers.

127.   Manos, Significan and Significan AUS (the "Defendant Sellers") materially breached, and continue to breach, the Purchase Agreement by, among other acts and omissions, alleged herein, including falsely representing and warranting, among other things, that they had not disclosed the Secret Formula to anyone other than Dr. Mohanty, that (other than the Assumed Agreements, none of which concerns or relates to Weston) no third party other than the Sellers ever had any right, title or interest in or to the Hydrogen Technology, that the Sellers had good

and marketable title to the Hydrogen Technology, and that no third party claimed or contested their exclusive ownership of the Hydrogen Technology.

128.    The Defendant Seller's representations and warranties in the Purchase Agreement survived its execution and the Sellers remain obligated to ensure their ongoing and continued truthfulness.

129.    Representations and warranties by the Defendant Sellers to HMR in the Purchase Agreement were false as of the effective date of that agreement, and continue to be false.

130.    The Defendant Sellers also materially breached the Purchase Agreement by, among other acts and omissions, failing to provide written assurances regarding their representations and warranties, and by disclosing to Weston the terms and conditions of the Purchase Agreement without HMR's prior written agreement to such disclosure.

131.    As a claimed successor to the Sellers by assignment, Weston is bound by the Sellers' duties and obligations under the Purchase Agreement, and the Defendant Sellers are jointly and severally liable with Weston for his breaches thereof.

132.    Weston breached the Purchase Agreement by filing suit against HMR for breach of the Purchase Agreement and other claims relating to or arising out of that agreement in Michigan and not Delaware as the Purchase Agreement requires.

133.    Weston also materially breached the Purchase Agreement by, among other acts and omissions, publicly disclosing material terms and conditions of the Purchase Agreement and confidential and proprietary information relating to the Hydrogen Technology in his complaint in the Michigan Action without HMR's prior written agreement to such disclosure and use.

134.    HMR has fulfilled its obligations under the Purchase Agreement, including paying a substantial amount of money to the Sellers, acting in good faith and using its best efforts to

validate the Hydrogen Technology, and bringing this claim and its other claims that arise out of or relate to the Purchase Agreement in a court located in the State of Delaware as required by the Purchase Agreement instead of asserting them as defenses and counterclaims in the Michigan Action.

135.   As a direct and proximate result of the foregoing, HMR has been damaged in an amount to be proven at trial.

136.   Moreover, HMR has suffered irreparable harm for which there is no adequate remedy at law, and it will continue to suffer irreparable harm unless this Court enjoins Weston from disclosing confidential and proprietary information in breach of the Purchase Agreement and requires him to take all actions necessary to remove or redact all such disclosures from the public record in the Michigan Action.

### COUNT II
*Promissory Estoppel*
*(All Plaintiffs against Manos, Significan and Significan AUS)*

137.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

138.   Among other things, the Defendant Sellers promised to HMR, Dr. Mohanty and Mr. Le Souef that they had not disclosed the Secret Formula to anyone other than Dr. Mohanty, that no third party other than the Sellers ever had any right, title or interest in or to the Hydrogen Technology, that the Sellers had good and marketable title to the Hydrogen Technology, that no third party claimed or contested their exclusive ownership of the Hydrogen Technology, and that they would not disclose the terms and conditions of the Purchase Agreement without HMR's consent.

139.    When they made their promises to HMR, Mohanty and Mr. Le Souef, the Defendant Sellers expected to induce their action or forbearance based on those promises.

140.    HMR, Dr. Mohanty and Mr. Le Souef reasonably relied on the Defendant Sellers' promises to their detriment.

141.    The Defendant Sellers' promises are binding because injustice to HMR, Dr. Mohanty and Mr. Le Souef only can be avoided by enforcement of their promises.

142.    At the time the Defendant Sellers made their promises, they knew that they were false.

143.    Since making them, the Defendant Sellers have broken their promises as alleged herein and have affirmatively worked to conceal misconduct.

144.    As a direct and proximate result of the foregoing, HMR, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

**COUNT III**
*Breach of Implied Duty of Good Faith and Fair Dealing*
*(HMR against Manos, Significan, Significan AUS and Weston)*

145.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

146.    The Purchase Agreement embodies an implied duty of good faith and fair dealing.

147.    The Defendant Sellers breached their duty of good faith and fair dealing by, among other acts and omissions, failing to disclose that third parties other than Dr. Mohanty knew the Secret Formula and that other third parties claim rights and interests in and to the Hydrogen Technology, refusing to provide HMR assurances regarding their representations and warranties, and by disclosing the terms and conditions of the Purchase Agreement to Weston and then assigning rights and interests in and to that Agreement to him.

24

148.    Weston breached his duty of good faith and fair dealing as an assignee of the Purchase Agreement by, among other acts and omissions, disclosing material terms and conditions of the Purchase Agreement and confidential and proprietary information relating to the Hydrogen Technology in his complaint in the Michigan Action and by using and attempting to use his knowledge of the Purchase Agreement and the Hydrogen Technology to the disadvantage of HMR as alleged herein.

149.    The Defendant Sellers and Weston have affirmatively concealed their misconduct.

150.    As a direct and proximate result of the foregoing, HMR has been damaged in an amount to be proven at trial.

### COUNT IV
*Unjust Enrichment and Constructive Trust*
*(All Plaintiffs against Manos, Significan and Significan AUS)*

151.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

152.    By, among other acts and omissions, engaging in the conduct alleged herein, the Defendant Sellers obtained and retained money and other value to which they are not entitled and that rightfully belongs to the Plaintiffs.

153.    The Defendant Sellers have not compensated Plaintiffs for the money and other value they improperly retained, despite the requirements of justice and equity. The Defendant Sellers therefore have been unjustly enriched and the Plaintiffs are entitled to recover their interest in all property and other value obtained and retained by the Defendant Sellers as a result of the acts and omissions alleged herein.

154.    Imposition of a constructive trust and an accounting therefore is necessary to prevent the Defendant Sellers from unfairly and unjustly profiting as a result of their improper conduct as alleged herein.

155.    Alternatively or additionally, the Defendant Sellers should be ordered to pay restitution to the Plaintiffs for their unjust enrichment in an amount to be proven at trial.

**COUNT V**
*Rescission and Restitution*
*(HMR against Manos, Significan and Significan AUS)*

156.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

157.    The Purchase Agreement is rescindable by HMR for one or all of the following reasons:

(a)    The Purchase Agreement is voidable to the extent it requires HMR to pay to use technology in the public domain.

(b)    The Sellers failed to provide HMR with a true trade secret Hydrogen Technology that had not been disclosed to third-parties and was free from ownership claims by third-parties, which is the substance of what HMR contracted for and paid to obtain.

(c)    To the extent the Sellers deny that they knew the formula for the Hydrogen Technology had been disclosed to Weston or that Weston had made claims of an ownership interest in the Hydrogen Technology, the doctrine of mutual mistake makes the Purchase Agreement voidable by HMR because it mistakenly believed the representations and warranties made by the Defendant Sellers.

158.   In the event HMR elects rescission and restitution as a remedy, HMR asks the Court to rescind the Purchase Agreement and order the Defendant Sellers to pay the corresponding amount of restitution due to HMR.

## COUNT VI
*Fraudulent Inducement*
*(All Plaintiffs against Manos, Significan and Significan AUS)*

159.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

160.   As set forth in detail above, each of the Defendant Sellers falsely represented to HMR, Dr. Mohanty and Mr. Le Souef, both prior to entering into the Purchase Agreement and then again to HMR in the Purchase Agreement, that they had sole and exclusive ownership of the Hydrogen Technology, that they had maintained the Hydrogen Technology as confidential, and that no third party claimed or contested their exclusive ownership of the Hydrogen Technology.

161.   The Defendant Sellers' false representations prior to executing the Purchase Agreement include, but are not limited to, the following:

(a)   On December 8, 2011, the Defendant Sellers, via their agent Mr. Joseph Dunn, falsely represented to Mr. Le Souef that there had "been no disclosures of confidential technical information to any parties other than what have already been disclosed [and] there will be no surprises or skeletons at or after the closing of this transaction."

(b)   Also on December 8, 2011, Manos and Significan Global via Mr. Dunn falsely represented to Mr. Le Souef that: neither had disclosed the Hydrogen Technology to any third parties; the Hydrogen Technology had not been assigned, licensed, encumbered or transferred; and neither had assigned, licensed, granted, transferred or

otherwise encumbered any of its respective right, title or interest in or to the Hydrogen Technology.

(c)     Also on December 8, 2011, Significant AUS via Mr. Dunn falsely represented to Mr. Le Souef that, other than the January 2011 assignment: it had not disclosed the Hydrogen Technology to any third party; the Hydrogen Technology had not been assigned, licensed, encumbered or transferred; and it had assigned, licensed, granted, transferred or otherwise encumbered any of its right, title or interest in or to the Hydrogen Technology.

(d)     By email on December 9, 2011: Manos falsely represented to Mr. Le Souef that he was not a party to any agreements relating to the Hydrogen Technology other than those identified on the draft Schedule 16.1; Manos and Julia Blair as trustee falsely represented to Mr. Le Souef that Significan was not a party to any agreements relating to the Hydrogen Technology other than those identified on the draft Schedule 16.3; and Manos, and Julia Blair as trustee falsely represented to Mr. Le Souef that Significan AUS was not a party to any agreements relating to the Hydrogen Technology other than those identified on the draft Schedule 16.4.

162.   The Defendant Sellers also made false representations and warranties to HMR when they signed the Purchase Agreement effective as of December 12, 2011, including when each of the Defendant Sellers individually certified in writing that its representations and warranties in the Purchase Agreement were true and that each had performed all covenants and agreements required of it as of the effective date of the Purchase Agreement.

163.   Upon information and belief, each of the Defendant Seller made its false representations with knowledge of their falsity or, alternatively, with reckless indifference to the truth.

164.   Upon information and belief, each of the Defendant Sellers made their misrepresentations to induce HMR, Dr. Mohanty and Mr. Le Souef to enter into the Purchase Agreement, pay money to them, and invest substantial capital and other resources to develop and commercialize the Hydrogen Technology so that each would receive additional monetary payments under the Purchase Agreement.

165.   Without knowledge of their falsity, HMR, Dr. Mohanty and Mr. Le Souef believed and justifiably relied on the Defendant Sellers' misrepresentations by, among other things, entering into the Purchase Agreement, paying money to the Defendant Sellers, and then investing substantial capital and other resources attempting to validate the Hydrogen Technology.

166.   Upon information and belief, the Defendant Sellers made their misrepresentations with the specific intent of inducing HMR, Dr. Mohanty and Mr. Le Souef to rely upon them by, for example, entering into the Purchase Agreement, making payments to them under the Purchase Agreement, and investing substantial capital and other resources attempting to validate the Hydrogen Technology.

167.   The Defendant Sellers have affirmatively concealed their misconduct.

168.   As a direct and proximate result of the foregoing, HMR, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

## COUNT VII
*Negligent Misrepresentation*
*(All Plaintiffs against Manos, Significan and Significan AUS)*

169.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

170.     To the extent any of the Defendant Sellers deny that they knew the Secret Formula had been disclosed to Weston or that Weston claimed an ownership interest in the Hydrogen Technology, they reasonably should have known those facts, and therefore they are liable for failing to exercise reasonable care or competence to determine those facts before making their misrepresentations.

171.     The Defendant Sellers have affirmatively concealed their misconduct.

172.     As a direct and proximate result of the foregoing, HMR, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

## COUNT VIII
*Intentional and Negligent Non-Disclosure*
*(All Plaintiffs against Manos, Significan and Significan AUS)*

173.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

174.     When they entered into the Purchase Agreement with HMR and at all other relevant times prior to and during the term of that agreement, the Defendant Sellers knew or should have known that the formula for the Hydrogen Technology had been disclosed to Weston and that Weston claimed or contested their exclusive ownership of the Hydrogen Technology, which are material facts that, in equity and good conscience, they were required to disclose to Mr. Le Souef, Dr. Mohanty and HMR.

175.    The Defendant Sellers knowingly or negligently failed to disclose these material facts to Mr. Le Souef, Dr. Mohanty and HMR, who were ignorant of those facts.

176.    The Defendant Sellers intended for Mr. Le Souef, Dr. Mohanty and HMR to rely upon the materially incomplete facts so that they would cause HMR to, and so HRM would, enter into the Purchase Agreement and make payments to them thereunder, or they reasonably should have foreseen that occurring.

177.    The Defendant Sellers' failure to disclose material facts to Mr. Le Souef and Dr. Mohanty induced them to cause HMR, and caused HMR, to enter into the Purchase Agreement and to make payments to them under the Purchase Agreement, all of which they would not have done had they disclosed all of the material facts.

178.    The Defendant Sellers have affirmatively concealed their misconduct.

179.    As a direct and proximate result of the foregoing, Mr. Le Souef, Dr. Mohanty and HMR have suffered damages in an amount to be proven at trial.

### COUNT IX
*Violations of Delaware's Deceptive Trade Practices Act,*
*6 Del. Code § 2531, et seq.*
*(HMR against Manos, Significan and Significan AUS)*

180.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

181.    The Defendant Sellers engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act ("DTPA") at least by representing and warranting that they had kept the Hydrogen Technology confidential and that no third-party had contested their exclusive ownership thereof, when the Defendant Sellers knew that was not true.

182.    The Defendant Sellers have affirmatively concealed their violations of the DTPA.

183.    As a direct and proximate result of the foregoing, HMR has suffered damages in an amount to be proven at trial.

### COUNT X
*Breach of Mutual Cooperation Agreement*
*(HMR against Weston)*

184.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

185.    The Mutual Cooperation Agreement constitutes a valid contract between HMR and Weston, and HMR has fulfilled its obligations under that agreement.

186.    By, among other acts and omissions, engaging in the conduct alleged herein, Weston has materially breached the Mutual Cooperation Agreement.

187.    As a direct and proximate result of the foregoing, HMR has been damaged in an amount to be proven at trial.

188.    Moreover, HMR has suffered irreparable harm for which there is no adequate remedy at law, and it will continue to suffer irreparable harm unless this Court enjoins Weston from disclosing confidential and proprietary information in breach of the Mutual Cooperation Agreement and requires him to take all actions necessary to remove or redact all such disclosures from the public record in the Michigan Action.

### COUNT XI
*Promissory Estoppel*
*(HMR against Weston)*

189.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

190.    Among other things, Weston promised to HMR that he would not disclose confidential and proprietary information relating to the Hydrogen Technology, including aspects

disclosed to him by or on behalf of Manos and Picot and technical data and knowhow of a confidential or proprietary nature relating to the Hydrogen Technology without HMR's express written consent.

191.    When Weston made his promises to HMR, he expected to induce HMR's action or forbearance based on his promises, and HMR reasonably relied on Weston's promises to its detriment.

192.    Weston's promises are binding because injustice to HMR only can be avoided by enforcement of their promises.

193.    Since making them, Weston has broken his promises as alleged herein.

194.    By reasonably relying on Weston's promises, HMR has been directly and proximately damaged in an amount to be proven at trial.

**COUNT XII**
*Breach of Implied Duty of Good Faith and Fair Dealing*
*(HMR against Weston)*

195.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

196.    The Mutual Cooperation Agreement contains an implied duty of good faith and fair dealing.

197.    Weston breached his duty of good faith and fair dealing by, among other acts and omissions, engaging in the conduct alleged herein, including inducing the Sellers to assign him rights under the Purchase Agreement, attempting to extort HMR, and by disclosing confidential and proprietary information relating to the Hydrogen Technology, including aspects disclosed to him by or on behalf of Manos and Picot and technical data and knowhow of a confidential or proprietary nature relating to the Hydrogen Technology.

198.    As a direct and proximate result of the foregoing, HMR has been damaged in an amount to be proven at trial.

## COUNT XIII
*Breach of Fiduciary Duty*
*(Dr. Mohanty and Mr. Le Souef against Coats)*

199.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

200.    As a partner in the Partnership, Coats owed the Partnership and his partners, including Dr. Mohanty and Mr. Le Souef, fiduciary and other duties, including duties of loyalty, utmost good faith, and integrity.

201.    Coats breached and otherwise failed to observe his fiduciary and other duties to Mr. Le Souef by, among other acts and omissions, engaging in the conduct alleged herein, including entering into the Partnership for the purpose of acquiring rights and commercializing the Hydrogen Technology while, upon information and belief, continuing to represent the Hydrogen Technology on behalf of Manos and Picot and IBKE (Wyo.) without adequately disclosing the benefits he stood to receive through his ownership and control of IBKE (Wyo.) from any investment by the Partnership in the Hydrogen Technology and by personally benefitting from commissions received by IBKE (Wyo.) as a result of payments made by or on behalf of the Partnership.

202.    Coats also breached and otherwise failed to observe his fiduciary and other duties to Dr. Mohanty and Mr. Le Souef by, among other acts and omissions, engaging in the conduct alleged herein, including making the Confidential Recordings and using and disclosing their existence and contents to third parties without informing Dr. Mohanty and Mr. Le Souef and without seeking or obtaining their consent.

203.   Upon their creation by Coats: the Confidential Recordings constituted property of the Partnership, Coats was obligated to disclose their existence to the other partners in the Partnership, Coats was obligated to hold and maintain them in confidence, and Coats possessed and held the Confidential Recordings in trust on behalf of the Partnership.

204.   After he withdrew from the Partnership, Coats continued to owe the Partnership and his partners, including Dr. Mohanty and Mr. Le Souef, fiduciary and other duties with respect to all Partnership matters prior to his withdrawal.

205.   Upon his withdrawal from the Partnership, Coats had the obligation to account for and return all Partnership property, including the Confidential Recordings, which he failed to do in breach of his fiduciary duties.

206.   Coats breached and otherwise failed to observe his continuing fiduciary and other duties to the Partnership and its remaining partners, including Dr. Mohanty and Mr. Le Souef, by, among other acts and omissions, disclosing confidential and proprietary information regarding the Partnership, including the Confidential Recordings, to Weston and by providing the Confidential Recordings and other confidential, proprietary and trade secret information to Weston.

207.   As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

**COUNT XIV**
*Breach of Contract*
*(Dr. Mohanty and Mr. Le Souef against Coats)*

208.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

209.   Coats' promises to and agreements with Dr. Mohanty to maintain information regarding the Partnership and its assets confidential constitute valid contracts between Coats and Dr. Mohanty.

210.   Coats' promises to and agreements with Mr. Le Souef to maintain information regarding the Partnership and its assets confidential constitute valid contracts between Coats and Mr. Le Souef.

211.   Dr. Mohanty and Mr. Le Souef performed all of their obligations under their contracts with Coats regarding the confidentiality of Partnership information.

212.   Coats materially breached his contracts with Dr. Mohanty and Mr. Le Souef by, among other acts and omissions, engaging in the conduct alleged herein, including disclosing information regarding Dr. Mohanty, Mr. Le Souef and the Partnership, including information contained in the Confidential Recordings and information relating to the Partnership's assets, to Weston and, upon information and belief, to others.

213.   As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

### COUNT XV
*Fraudulent Inducement*
*(Dr. Mohanty and Mr. Le Souef against Coats)*

214.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

215.   Coats falsely represented to Dr. Mohanty and Mr. Le Souef, both verbally and in writing, that he would act in the best interests of the Partnership even if the Partnership's interests were different from his personal interests and that he would maintain all information regarding the Partnership, including its technology, finances, and deliberations as confidential.

36

216.    Coats made his false representations to Mr. Le Souef on multiple occasions, including prior to forming the Partnership with Mr. Le Souef and throughout the time that Coats and Mr. Le Souef were partners in the Partnership.

217.    Coats also made his false representations to Dr. Mohanty on multiple occasions, including prior to Dr. Mohanty joining the Partnership and throughout the time that Coats and Dr. Mohanty were partners in the Partnership.

218.    Coats memorialized one or more of his false representations in multiple emails to one or more partners in the Partnership. Those emails include, but are not limited to, the following:

    (a)    An email from Coats to Dr. Mohanty on January 6, 2011;

    (b)    Multiple emails from Coats to Mr. Le Souef on January 13, 2011;

    (c)    An email from Coats to Dr. Mohanty on February 22, 2011;

    (d)    An email from Coats to Dr. Mohanty on March 3, 2011;

    (e)    An email from Coats to Dr. Mohanty on March 4, 2011;

    (f)    An email from Coats to Dr. Mohanty on April 15, 2011;

    (g)    An email from Coats to Dr. Mohanty on May 23, 2011;

    (h)    Emails from Coats to Mr. Le Souef and Mr. Adler on July 3, 2011;

    (i)    An email from Coats to Dr. Mohanty on July 4, 2011;

    (j)    An email from Coats to Dr. Mohanty on July 8, 2011;

    (k)    An email from Coats to Dr. Mohanty and copied to Mr. Le Souef and Mr. Adler on July 9, 2011;

    (l)    An email from Coats to Mr. Le Souef on August 10, 2011;

(m)     An email from Coats to Mr. Le Souef and copied to Mr. Adler on September 4, 2011;

(n)     An email from Coats to Mr. Adler and copied to Mr. Le Souef on December 11, 2011;

(o)     An email from Coats to Dr. Mohanty, Mr. Le Souef and Mr. Adler on December 22, 2011;

(p)     An email from Coats to Mr. Le Souef on December 24, 2011; and,

(q)     An email from Coats to Mr. Le Souef on January 31, 2012.

219.    Upon information and belief, Coats made his misrepresentations to Mr. Le Souef and Dr. Mohanty with knowledge of their falsity.

220.    Coats used IBKE (Wyo.) as an instrumentality to perpetuate his fraudulent conduct by, for example, using it to receive commissions on payments made by or on behalf of the Partnership with respect to the Hydrogen Technology and using IBKE (Wyo.) to conceal the payment of such commissions from his partners to induce Mr. Le Souef and Dr. Mohanty to continue as partners in the Partnership with him.

221.    Mr. Le Souef and Dr. Mohanty did not know that Mr. Coats' representations were false until Mr. Weston attempted to extort Mr. Le Souef, Dr. Mohanty and HMR, and, in fact, Mr. Le Souef and Dr. Mohanty believed and relied upon them by entering into the Partnership with Coats and then continuing as his partner.

222.    Coats made his misrepresentations to Mr. Le Souef and Dr. Mohanty with the specific intent of inducing them to rely upon them, to enter into the Partnership with him, and to then continue as his partner.

223.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

### COUNT XVI
*Negligent Misrepresentation*
*(Dr. Mohanty and Mr. Le Souef against Coats)*

224.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

225.    To the extent that Coats denies making knowing misrepresentations to Mr. Le Souef and Dr. Mohanty, Coats knew or should have known that he did not intend to honor his representations and promises to Mr. Le Souef and Dr. Mohanty based on, for example, his ongoing contractual and other relationships with third parties including Manos, Picot, Weston and IBKE (Wyo.), and he therefore is liable for failing to exercise reasonable care or competence to determine those facts before making his misrepresentations to Mr. Le Souef and Dr. Mohanty.

226.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

### COUNT XVII
*Intentional and Negligent Non-Disclosure*
*(Mr. Le Souef and Dr. Mohanty against Coats)*

227.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

228.    During the time he was a partner in the Partnership, Coats knew that, based on his agreement to represent the Hydrogen Technology on behalf of Manos and Picot through IBKE (Wyo.), he stood to benefit personally through his ownership and control of IBKE (Wyo.) from any investment by the Partnership in the Hydrogen Technology, which are material facts that, in

equity and good conscience, they were required to disclose to Mr. Le Souef, Dr. Mohanty and HMR.

229.    Coats knowingly or negligently failed to disclose these materials fact to Mr. Le Souef and Dr. Mohanty, who were ignorant of those facts.

230.    Coats intended for Mr. Le Souef and Dr. Mohanty to rely upon the materially incomplete facts so that they would cause the Partnership to invest in the Hydrogen Technology so that he would benefit personally through his ownership and control of IBKE (Wyo.), or he reasonably should have foreseen that occurring.

231.    Coats' failure to disclose material facts to Mr. Le Souef and Dr. Mohanty induced them to cause the Partnership to enter into agreements relating to the Hydrogen Technology, which they would not have done had they disclosed all of the material facts.

232.    As a direct and proximate result of the foregoing, Mr. Le Souef and Dr. Mohanty have suffered damages in an amount to be proven at trial.

## COUNT XVIII
*Promissory Estoppel*
*(Dr. Mohanty and Mr. Le Souef against Coats)*

233.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

234.    Among other things, Coats promised Dr. Mohanty and Mr. Le Souef that he would maintain information regarding the Partnership, including its technology, finances and deliberations, confidential.

235.    When Coats made his promises, he expected to induce Dr. Mohanty and Mr. Le Souef to act or forbear from acting based on his promises.

236.    Dr. Mohanty and Mr. Le Souef reasonably relied on Coats' promises to their detriment by continuing their partnership with Coats and by disclosing confidential and proprietary information to him regarding the Partnership.

237.    Coats' promises are binding because injustice to Dr. Mohanty and Mr. Le Souef only can be avoided by enforcement of his promises.

238.    Since making them, Coats has broken his as alleged herein.

239.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

**COUNT XIX**
*Conversion*
*(Dr. Mohanty and Mr. Le Souef against Coats)*

240.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

241.    As partners in the Partnership, Dr. Mohanty and Mr. Le Souef had, and continue to have, an ownership or right to possess the Confidential Recordings and other property of the Partnership as of the time Coats withdrew from it.

242.    Despite his withdrawal from the Partnership, Coats intended to, and did, continue to exercise dominion and control over the property of the Partnership, including the Confidential Recordings, in ways and manners that are inconsistent with the rights of Dr. Mohanty and Mr. Le Souef as his former partners.

243.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

## COUNT XX
*Replevin Under M.C.L.A. 600.2920*
*(Dr. Mohanty and Mr. Le Souef against Coats, Weston and Engineering Interests)*

244.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

245.    Dr. Mohanty and Mr. Le Souef bring this claim to recover possession of the Confidential Recordings and other property of the Partnership that Coats, Weston, and Engineering Interests have unlawfully taken and detained and to recover their damages sustained as a result of such unlawful taking and detention by Coats and Weston.

246.    The Confidential Recordings and other Partnership property were not taken by Coats, Weston, or Engineering Interests by virtue of a warrant for the collection of a tax, assessment, or fine, nor have they been seized by virtue of an execution or attachment.

247.    Coats, Weston and Engineering Interests have wrongfully and unlawfully retained possession of the Confidential Recordings and other Partnership property for their own purposes and to his own financial benefit

248.    Dr. Mohanty and Mr. Le Souef have a right to immediate possession of the Confidential Recordings and other property of the Partnership taken and detained by Coats and Weston, and the wrongful retention of the Confidential Recordings and other Partnership property by Coats, Weston, and Engineering Interests has harmed and is continuing to harm Dr. Mohanty and Mr. Le Souef.

## COUNT XXI
*Unjust Enrichment and Constructive Trust*
*(Dr. Mohanty and Mr. Le Souef against Coats and IBKE (Wyo.))*

249.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

250.     By, among other acts and omissions, engaging in the conduct alleged herein, Coats and IBKE (Wyo.) obtained and retained money and other value to which they are not entitled and that rightfully belongs to Dr. Mohanty and Mr. Le Souef.

251.     Coats and IBKE (Wyo.) have not compensated Dr. Mohanty and Mr. Le Souef for the money and other value they improperly retained, despite the requirements of justice and equity. Coats and IBKE (Wyo.) therefore have been unjustly enriched and Dr. Mohanty and Mr. Le Souef are entitled to recover their interest in all property and other value obtained and retained by Coats and IBKE (Wyo.) as a result of the acts and omissions alleged herein.

252.     Imposition of a constructive trust and an accounting therefore is necessary to prevent Coats and IBKE (Wyo.) from unfairly and unjustly profiting as a result of their improper conduct as alleged herein.

253.     Alternatively or additionally, Coats and IBKE (Wyo.) should be ordered to pay restitution to Dr. Mohanty and Mr. Le Souef.

### COUNT XXII
*Declaratory Judgment – Alter Ego*
*(All Plaintiffs against Coats and IBKE (Wyo.))*

254.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

255.     An actual controversy exists between HMR, Dr. Mohanty and Mr. Le Souef on one hand and Coats and IBKE (Wyo.) on the other hand regarding whether the required separateness between Coats and IBKE (Wyo.) has ceased to exist such that adherence to the fiction of IBKE (Wyo.)'s separate existence would lead to injustice, fundamental unfairness, or inequity.

256.   HMR's, Mr. Mohanty's and Mr. Le Souef's interest in piercing IBKE (Wyo.)'s corporate veil is real and adverse to Coats and IBKE (Wyo.)'s interest in maintaining IBKE (Wyo.)'s corporate veil, and whether the required separateness between Coats and IBKE (Wyo.) has ceased to exist such that Coats is personally liable for the debts and obligations of IBKE (Wyo.) and IBKE (Wyo.) is personally liable for the debts and obligations of Coats.

### COUNT XXIII
*Trade Secret Misappropriation Under the Defend Trade Secrets Act of 2016*
*Public Law No. 114-153, 130 Stat. 376*
*(Dr. Mohanty and Mr. Le Souef against Weston and Engineering Interests)*

257.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

258.   The confidential communications among partners in the Partnership, including those embodied or reflected in the Confidential Recordings, constitute a trade secret under 18 U.S.C. § 1839.

259.   The Partnership's confidential communications derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

260.   The Partnership's confidential communications are and have been the subject of efforts that are reasonable under the circumstances to maintain their secrecy. Those efforts include, but are not limited to, the fiduciary and other duties owed by partners in the Partnership to the Partnership and his partners, Coats' express promises to maintain the Partnership's confidential communications and other proprietary information as secret, and the exclusion of disputes, claims, controversies and causes of action arising out of or resulting from acts,

omissions or events occurring as a result of a breach of confidentiality from the Mutual General Release.

261.    As a partner in the Partnership, Coats had a confidential relationship with the Partnership and his partners, including Dr. Mohanty and Mr. Le Souef. Coats further promised and agreed to maintain information regarding the Partnership, including its technology, finances and deliberations, confidential.

262.    Coats acquired knowledge of the confidential and trade secret information contained in the Confidential Recordings in confidence and as a result of his contractual, confidential and fiduciary relationship with, and his promises to and agreements with, the Partnership and his partners.

263.    Weston has disclosed Dr. Mohanty's and Mr. Le Souef's trade secrets to Engineering Interests, and Weston and Engineering Interests have used and disclosed, and continue to use and disclose, Dr. Mohanty's and Mr. Le Souef's trade secrets by, among other things, filing their complaint in the Michigan Action and prosecuting their claims in the Michigan Action and by using and disclosing them to others for the purpose of obtaining additional, related information from third parties.

264.    Weston misappropriated, and continues to misappropriate, Dr. Mohanty's and Mr. Le Souef's trade secrets by, among other acts and omissions, engaging in the conduct alleged herein, including:

    (a)    acquiring them with knowledge, or with reason to know, that he was acquiring their trade secrets in breach of Coats' duty to Dr. Mohanty and Mr. Le Souef to maintain their secrecy;

(b)     disclosing and using their trade secrets without Dr. Mohanty's and Mr. Le Souef's express or implied consent after acquiring knowledge of such trade secrets by inducing Coats to breach his duty to Dr. Mohanty and Mr. Le Souef to maintain their secrecy;

(c)     disclosing and using their trade secrets without Dr. Mohanty's and Mr. Le Souef's express or implied consent when, at the time of his disclosure and use, Weston knew or had reason to know that his knowledge of HMR's trade secrets was derived from Coats in breach of his duty to Dr. Mohanty and Mr. Le Souef to maintain the secrecy thereof; and,

(d)     disclosing and using their trade secrets without Dr. Mohanty's and Mr. Le Souef's express or implied consent when, at the time of his disclosure and use, Weston knew or had reason to know that Coats owes Dr. Mohanty and Mr. Le Souef a duty to maintain the secrecy and limit the use thereof.

265.   Engineering Interests has misappropriated, and continues to misappropriate, Dr. Mohanty's and Mr. Le Souef's trade secrets by, among other acts and omissions, engaging in the conduct alleged herein, including:

(a)     acquiring them from Weston with knowledge, or with reason to know, that Weston acquired Dr. Mohanty's and Mr. Le Souef's trade secrets by inducing Coats to breach his duty to Dr. Mohanty and Mr. Le Souef to maintain their secrecy;

(b)     disclosing and using their trade secrets without Dr. Mohanty's and Mr. Le Souef's express or implied consent after acquiring knowledge of such trade secrets through Weston, who as the Sellers' assignee, owes HMR a duty to maintain their secrecy; and,

(c)     disclosing and using their trade secrets without Dr. Mohanty's and Mr. Le

Souef's express or implied consent when, at the time of its disclosure and use,

Engineering Interests knew or had reason to know that its knowledge of HMR's trade

secrets was derived from Weston after Weston induced Coats to breach his duty to Dr.

Mohanty and Mr. Le Souef to maintain their secrecy.

266.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef

have suffered damages in an amount to be proven at trial.

267.    Moreover, Dr. Mohanty and Mr. Le Souef have suffered irreparable harm for

which there is no adequate remedy at law, and will continue to suffer irreparable harm unless this

Court enjoins Coats, Weston and Engineering Interests from further misappropriating their trade

secrets.

**COUNT XXIV**
*Trade Secret Misappropriation Under the Defend Trade Secrets Act of 2016*
*Public Law No. 114-153, 130 Stat. 376*
*(HMR against Weston and Engineering Interests)*

268.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent

paragraphs of this Complaint as if fully rewritten herein.

269.    The Hydrogen Technology and the terms and conditions of the Purchase

Agreement and the Mutual Cooperation Agreement constitute trade secrets under 18 U.S.C. §

1839.

270.    The Hydrogen Technology and the terms and conditions of the Purchase

Agreement and the Mutual Cooperation Agreement derive independent economic value, actual or

potential, from not being generally known to, and not being readily ascertainable through proper

means by, other persons who can obtain economic value from their disclosure or use.

271.   The Hydrogen Technology and the terms and conditions of the Purchase Agreement and the Mutual Cooperation Agreement are and have been the subject of efforts that are reasonable under the circumstances to maintain their secrecy. Those reasonable efforts include, but are not limited to, the confidentiality provisions of the Purchase Agreement and the Mutual Cooperation Agreement, and the fiduciary and other duties owed by partners in the Partnership to the Partnership and its members.

272.   Weston has disclosed HMR's trade secrets to Engineering Interests, and Weston and Engineering Interests have used and disclosed, and continue to use and disclose, HMR's trade secrets by, among other things, filing their complaint in the Michigan Action and prosecuting their claims in the Michigan Action.

273.   Weston misappropriated, and continues to misappropriate, HMR's trade secrets by, among other acts and omissions, engaging in the conduct alleged herein, including:

   (a)   acquiring them with knowledge, or with reason to know, that he was acquiring HMR's trade secrets in breach of the Sellers' duty to HMR to maintain their secrecy;

   (b)   disclosing and using HMR's trade secrets without HMR's express or implied consent after acquiring knowledge of such trade secrets by inducing the Sellers to breach their duty to HMR to maintain their secrecy;

   (c)   disclosing and using HMR's trade secrets without HMR's express or implied consent after acquiring knowledge of such trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use;

(d)     disclosing and using HMR's trade secrets without HMR's express or implied consent in breach of his duty to HMR as the Sellers' assignee to maintain their secrecy;

(e)     disclosing and using HMR's trade secrets without HMR's express or implied consent when, at the time of his disclosure and use, Weston knew or had reason to know that his knowledge of HMR's trade secrets was derived from the Sellers in breach of their duty to HMR to maintain the secrecy thereof; and,

(f)     disclosing and using HMR's trade secrets without HMR's express or implied consent when, at the time of his disclosure and use, Weston knew or had reason to know that the Sellers owe HMR a duty to maintain the secrecy and limit the use thereof.

274.    Engineering Interests has misappropriated, and continues to misappropriate, HMR's trade secrets by, among other acts and omissions, engaging in the conduct alleged herein, including:

(a)     acquiring them from Weston with knowledge, or with reason to know, that Weston acquired HMR's trade secrets by inducing the Sellers to breach their duty to HMR to maintain their secrecy;

(b)     disclosing and using HMR's trade secrets without HMR's express or implied consent after acquiring knowledge of such trade secrets through Weston, who as the Sellers' assignee, owes HMR a duty to maintain their secrecy;

(c)     disclosing and using HMR's trade secrets without HMR's express or implied consent when, at the time of its disclosure and use, Engineering Interests knew or had reason to know that its knowledge of HMR's trade secrets was derived from the

49

Weston after Weston induced the Sellers to breach their duty to HMR to maintain their secrecy and in breach of Weston's duty to HMR as the Sellers' assignee to maintain their secrecy; and,

(d)    disclosing and using HMR's trade secrets without HMR's express or implied consent when, at the time of its disclosure and use, Engineering Interests knew or had reason to know that Weston owes HMR a duty to maintain the secrecy and limit the use thereof.

275.    As a direct and proximate result of the foregoing, HMR has suffered damages in an amount to be proven at trial.

276.    Moreover, HMR has suffered irreparable harm for which there is no adequate remedy at law, and it will continue to suffer irreparable harm unless this Court enjoins Weston and Engineering Interests from further misappropriating its trade secrets.

### COUNT XXV
*Trade Secret Misappropriation Under Ohio, Michigan and Delaware Law*
*(All Plaintiffs against All Defendants)*

277.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

278.    The Hydrogen Technology, the terms and conditions of the Purchase Agreement, the terms and conditions of the Mutual Cooperation Agreement, the confidential communications among partners in the Partnership, including those embodied or reflected in the Confidential Recordings, constitute trade secrets under the laws of Ohio, Michigan, and Delaware.

279.    Coats misappropriated the Partnership's trade secrets by, among other acts and omissions, disclosing and using the Confidential Recordings without the consent of the Partnership in violation of his duty to maintain their secrecy and limit their use.

280.    The Defendant Sellers misappropriated HMR's trade secrets by, among other acts and omissions, disclosing the terms and conditions of the Purchase Agreement to Weston without HMR's express or implied consent in violation of their duty to maintain their secrecy and limit their use.

281.    Weston and Engineering Interests further have misappropriated the Partnership's and HMR's trade secrets by, among other acts and omissions, disclosing and using them to initiate and prosecute the Michigan Action.

282.    The Defendants' misappropriation has been willful and malicious.

283.    As a direct and proximate result of the foregoing, Dr. Mohanty, Mr. Le Souef, and HMR have suffered damages in an amount to be proven at trial.

284.    Moreover, Dr. Mohanty, Mr. Le Souef, and HMR have suffered irreparable harm for which there is no adequate remedy at law, and will continue to suffer such harm unless this Court enjoins all Defendants from further misappropriating their trade secrets.

## COUNT XXVI
### *Extortion*
### *(All Plaintiffs against Weston)*

285.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

286.    Weston maliciously threatened to accuse HMR, Dr. Mohanty and Mr. Le Souef of criminal offences with the intent to extort money and other pecuniary advantages from them and to compel them to assign, or cause third parties to assign, valuable assets to him against their will.

287.    Additionally, Weston maliciously threatened reputational and other injury to Dr. Mohanty and Mr. Le Souef with the intent of extorting money and other pecuniary advantages

from them and to compel them to assign, or cause third parties to assign, assets to him against their will.

288.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.

### COUNT XXVII
*Invasion of Privacy*
*(Dr. Mohanty and Mr. Le Souef against Coats and Weston)*

289.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

290.    Coats acquired private and secret information about Dr. Mohanty and Mr. Le Souef, including by making the Confidential Recordings, and Weston acquired the private and secret information about Dr. Mohanty and Mr. Le Souef from Coats.

291.    Dr. Mohanty and Mr. Le Souef had a right to keep the subject matter of the information that Coats acquired and disclosed to Weston private.

292.    Coats invaded Dr. Mohanty's and Mr. Le Souef's privacy by obtaining their private and secret information through methods objectionable to a reasonable person, including by, among other things, secretly recording conversations involving Dr. Mohanty and Mr. Le Souef without seeking or obtaining their consent.

293.    Weston invaded Dr. Mohanty's and Mr. Le Souef's privacy by obtaining their private and secret information through methods objectionable to a reasonable person, including by, among other things, obtaining the Confidential Recordings from Coats as part of a conspiracy and in violation of Coats' continuing fiduciaries to the Partnership and his former partners Dr. Mohanty and Mr. Le Souef.

294.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

### COUNT XXVIII
*Intentional Infliction of Emotional Distress*
*(Dr. Mohanty and Mr. Le Souef against Coats and Weston)*

295.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

296.    As set forth herein, Weston and Coats have engaged in extreme and outrageous behavior with respect to Dr. Mohanty and Mr. Le Souef, including but not limited to: creating, disseminating and using the Confidential Recordings; attempting to extort Dr. Mohanty and Mr. Le Souef; threatening to publicly disclose the Confidential Recordings; threatening criminal prosecution; threatening revocation of citizenship; threatening to publicly disclose private and secret information concerning Dr. Mohanty and Mr. Le Souef; and conspiring to do the foregoing.

297.    Coats and Weston intentionally engaged in their extreme and outrageous behavior intending to cause emotional distress to Dr. Mohanty and Mr. Le Souef. Alternatively, Coats and Weston engaged in their outrageous behavior recklessly and without regard to the emotional distress that any reasonable person would know would result therefrom.

298.    As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have suffered severe emotional distress and have otherwise been harmed in an amount to be proven at trial.

### COUNT XXIX
*Abuse of Process*
*(All Plaintiffs against Weston and Engineering Interests)*

299.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

300.   Weston and Engineering Interests filed the Michigan Action in furtherance of their conspiracy with Coats for the ulterior and improper purposes of trying to legitimize Weston's extortionate conduct and to further the extortion of Dr. Mohanty and Mr. Le Souef.

301.   In so doing, Weston and Engineering Interests have taken advantage of an otherwise proper legal procedure, namely the filing and prosecution of a civil action, for a purpose collateral to the intended use of that procedure.

302.    As a direct and proximate result of the foregoing, HMR, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

### COUNT XXX
*Civil Conspiracy*
*(All Plaintiffs against Coats, Weston, Manos and Engineering Interests)*

303.   Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

304.   Upon information and belief, Coats, Weston, Manos and Engineering Interests have worked together, pursuant to a meeting of the minds among them, with the objective of causing HMR, Dr. Mohanty and Mr. Le Souef to pay them money and assign over to them other valuable assets to which they have no rightful claim or entitlement.

305.   In the course of their conspiracy, Coats, Weston, Manos and Engineering Interests engaged in unlawful acts, including the wrongful acts set forth herein.

306.    Coats', Weston's, Manos' and Engineering Interests' joint conduct and concerted action has caused injury to HMR, Dr. Mohanty and Mr. Le Souef.

307.    Coats, Weston, Manos and Engineering Interests have worked together with specific intent to harm HMR, Dr. Mohanty and Mr. Le Souef.

308.    Coats, Weston, Manos and Engineering Interests have participated in a civil conspiracy against HMR, Dr. Mohanty and Mr. Le Souef, which renders each of them liable as if each had committed all of the wrongful acts and omissions himself, in the case of Coats, Weston and Manos, and itself, in the case of Engineering Interests.

309.    As a direct and proximate result of the foregoing, HMR, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

### COUNT XXXI
*Aiding and Abetting*
*(All Plaintiffs against all Defendants)*

310.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

*311.*    The Defendants intentionally aided and abetted each other in committing wrongful acts and omissions against HMR, Dr. Mohanty and Mr. Le Souef by providing each other with substantial assistance, means, and encouragement to carry out those acts and omissions.

312.    The Defendants aided and abetted each other with full knowledge of their ultimate acts and omissions and their tortious character, and with intent that the acts and omissions would harm HMR, Dr. Mohanty and Mr. Le Souef.

313.    By aiding and abetting each other's wrongdoing, each Defendant is liable as if it had committed all of the wrongful acts and omissions itself.

314.    As a direct and proximate result of the foregoing, HMR, Dr. Mohanty and Mr. Le Souef have suffered damages in an amount to be proven at trial.

## COUNT XXXII
*Declaratory Relief – Duty to Indemnify*
*(HMR against Manos, Significan, Significan AUS, and Weston)*

315.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

316.    An actual controversy exists between HMR and the Defendant Sellers regarding whether the Defendant Sellers are obligated to indemnify HMR with respect to the claims asserted by Weston in the Michigan action and any counterclaims that Weston may assert in this action arising out of or relating to transactions entered into by the Defendant Sellers concerning the Hydrogen Technology.

317.    An actual controversy exists between HMR and Weston regarding whether Weston, as an assignee of the Sellers, is obligated to indemnify HMR with respect to the claims asserted by Weston in the Michigan action and any counterclaims that Weston may assert in this action arising out of or relating to transactions entered into by the Sellers concerning the Hydrogen Technology.

318.    HMR has a claim and legal interest in being indemnified by the Sellers and Weston, and the Defendant Sellers and Weston have an interest in contesting HMR's claim and interest in being so indemnified.

319.    HMR's interest in being indemnified by the Sellers and Weston is real and adverse to the Sellers and Weston, and whether the Sellers and Weston are obligated to indemnify HMR as set forth herein is ripe for judicial determination.

### Prayer for Relief

WHEREFORE, Plaintiffs prays for judgment against the Defendants, jointly and severally, as follows:

(A)     compensatory damages in an amount to be determined at trial.

(B)     An accounting and disgorgement of each Defendant's ill-gotten profits.

(C)     A constructive trust in favor of Dr. Mohanty and Mr. Le Souef on all property and other value obtained and retained by Coats and IBKE (Wyo.), including all amounts paid to IBKE (Wyo.) under the Exclusive Option Agreement or the Exclusive Representation Agreement with respect to transactions involving or relating in any way to the Partnership or any of its individual partners.

(D)     A constructive trust in favor of HMR, Dr. Mohanty, and Mr. Le Souef on all property and other value obtained and retained by the Defendant Sellers, including all amounts paid to the Defendant Sellers under the Purchase Agreement.

(E)     Exemplary and punitive damages.

(F)     Attorneys' fees.

(G)     Pre-judgment and post-judgment interest.

(H)     Costs of this action.

(I)     Preliminary and permanent injunctive relief.

(J)     An order compelling Coats to deliver to Mr. Le Souef and Dr. Mohanty all copies of the Confidential Recordings (or portions thereof) and all other property of the Partnership in his respective possession, custody or control, including all materials comprising, memorializing, summarizing, paraphrasing, reflecting, or otherwise embodying the Confidential Recordings.

(K)     An order compelling Weston and Engineering Interests to deliver to Plaintiffs all copies of the Confidential Recordings (or portions thereof) in their respective possession,

custody or control, including all materials comprising, memorializing, summarizing, paraphrasing, reflecting, or otherwise embodying the Confidential Recordings.

(L)   An order that the Defendant Sellers and their agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms, and corporations in active concert or participation with them, be enjoined and be restrained, both preliminarily and permanently, from disclosing or using any information that constitutes "Confidential Information" under the Purchase Agreement for any purpose, and further compelling the Defendant Sellers to specifically perform all of their continuing obligations under the Purchase Agreement.

(M)   An order that Weston, Engineering Interests, and their respective agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms, and corporations in active concert or participation with them, be enjoined and be restrained, both preliminarily and permanently, from:

(1)   further prosecution of the Michigan Action in violation of the exclusive forum selection clause in the Purchase Agreement and requiring Weston and Engineering Interests to take all actions necessary to remove all trade secret information from the public record in the Michigan Action, including any and all disclosures made by Weston in violation of the Purchase Agreement or the Mutual Cooperation Agreement;

(2)   disclosing, threatening to disclose, or using any information that constitutes "Confidential Information" under the Purchase Agreement for any purpose;

(3)   disclosing, threatening to disclose, or using any information comprising or relating to the Hydrogen Technology, including the aspects of the Hydrogen Technology

disclosed to Weston by or on behalf of Manos and Picot and all technical data and know-how of a confidential or proprietary nature relating to the Technology;

(4)    disclosing, threatening to disclose, or using for any purpose any information regarding the Partnership, HMR, Dr. Mohanty or Mr. Le Souef disclosed or otherwise made available to them by Coats, including the Confidential Recordings;

(5)    misappropriating, disclosing, threatening to disclose, or using any of the Plaintiffs' trade secrets;

(6)    disclosing or threatening to disclose any private or secret information regarding any of the Plaintiffs;

(7)    disseminating or disclosing to third parties the complaint filed by Weston in the Michigan Action;

(8)    specifically performing the Mutual Cooperation Agreement and his promises to not disclose confidential and proprietary information relating to the Hydrogen Technology; and,

(9)    initiating or further prosecuting any legal action or process against any or all of the Plaintiffs without leave of this Court.

(N)    An order that Coats and his agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms, and corporations in active concert or participation with them, be enjoined and be restrained, both preliminarily and permanently, from:

(1)    disclosing or using any information that constitutes "Confidential Information" under the Purchase Agreement for any purpose;

(2)     disclosing or using for any purpose the Confidential Recordings and any other information in his possession, custody or control arising out of, relating to, or disclosed to him by the Partnership, the Hydrogen Technology, Dr. Mohanty or Mr. Le Souef;

(3)     misappropriating, using or disclosing Dr. Mohanty's or Mr. Le Souef's trade secrets;

(4)     disclosing or threatening to disclose any private or secret information regarding Dr. Mohanty or Mr. Le Souef; and

(5)     compelling him to specifically perform his promises and agreements to maintain information regarding the Partnership, including its technology, finances and deliberations, confidential.

(O)     A declaration that:

(1)     Coats is personally liable for the debts and obligations of IBKE (Wyo.) and IBKE (Wyo.) is personally liable for the debts and obligations of Coats;

(2)     the Defendant Sellers are obligated to indemnify and hold HMR harmless with respect to the claims asserted by Weston in the Michigan action and any counterclaims that Weston may assert in this action arising out of or relating to transactions entered into by the Sellers concerning the Hydrogen Technology; and

(3)     Weston, as the Sellers' assignee, is obligated to indemnify and hold HMR harmless with respect to the claims asserted by Weston in the Michigan action and any counterclaims that Weston may assert in this action arising out of or relating to transactions entered into by the Sellers concerning the Hydrogen Technology.

(P)     Such other and further relief as allowed at law or in equity that the Court deems to

be appropriate.


Dated: June 22, 2016                              CONNOLLY GALLAGHER LLP

                                                  /s/Arthur G. Connolly III
                                                  Arthur G. Connolly, III (#2667)
                                                  Mary I. Akhimien (#5448)
                                                  The Brandywine Building
                                                  1000 West Street, Suite 1400
                                                  Wilmington, DE 19801
                                                  (302) 757-7300
                                                  aconnolly@connollygallagher.com
                                                  makhimien@connollygallagher.com

                                                  *Attorneys for Plaintiffs*
                                                  *Hydrogen Master Rights, Ltd.,*
                                                  *Pravansu Mohanty, Ph.D., and Carl Le Souef*


OF COUNSEL:

David T. Movius
McDonald Hopkins LLC
600 Superior Avenue,  East
Suite 2100
Cleveland, OH 44114
(216) 348-5400
dmovius@mcdonaldhopkins.com

## Jury Demand

Plaintiffs Hydrogen Master Rights, Ltd., Pravansu Mohanty, Ph.D., and Carl Le Souef hereby demand a jury trial on all matters triable thereby.

Dated: June 22, 2016

CONNOLLY GALLAGHER LLP

/s/ *Arthur G. Connolly, III*
Arthur G. Connolly, III (#2667)
Mary I. Akhimien (#5448)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
makhimien@connollygallagher.com

*Attorneys for Plaintiffs*
*Hydrogen Master Rights, Ltd.,*
*Pravansu Mohanty, Ph.D., and Carl Le Souef*

OF COUNSEL:

David T. Movius
McDonald Hopkins LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114
(216) 348-5400
dmovius@mcdonaldhopkins.com