UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **HYDROGEN MASTER RIGHTS, LTD., CARL LE SOUEF and PRAVANSU MOHANTY, PH.D.,** | |
| **Plaintiffs,** | **Case No. 1:16-cv-00474-RGA** |
| **v.** | |
| **DEAN WESTON, ENGINEERING INTERESTS, LLC, PAUL DAVID MANOS, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, TRACY COATS, and THE CLIENT IS EVERYTHING, LTD.,** | |
| **Defendants.** | |

**OPENING BRIEF BY DEFENDANTS TRACY COATS AND THE CLIENT IS EVERYTHING, LTD.
IN SUPPORT OF THEIR MOTION TO DISMISS**

Dated: August 22, 2016

George Pazuniak (No. 478)
O'KELLY & ERNST, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
sokelly@oeblegal.com
gp@del-iplaw.com
dmurray@oeblegal.com

*Attorneys for Defendants Tracy Coats and
The Client is Everything, Ltd.*

## TABLE OF CONTENTS

**NATURE AND STAGE OF THE PROCEEDING** ..................................................... 1

**SUMMARY OF ARGUMENT** ................................................................................ 1

**STATEMENT OF FACTS** ....................................................................................... 3

**LEGAL STANDARDS** ............................................................................................ 3

    A.   RULE 12(B)(1) ...................................................................................... 3
    B.   RULE 12(B)(2) ...................................................................................... 4
    C.   RULE 12(B)(6) ...................................................................................... 4

**ARGUMENT** .......................................................................................................... 5

    A.   COURT HAS NO PERSONAL JURISDICTION OF COATS OR IBKE ..................... 5

    B.   COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION ........................... 9

    C.   PLAINTIFFS' ARE BARRED BY THE MUTUAL GENERAL RELEASE ................. 11

    D.   MOST COUNTS ARE BARRED BY THE STATUTE OF LIMITATIONS ..................... 14

    E.   COUNT XV FOR FRAUD SHOULD BE DISMISSED ............................... 14

    F.   COUNT XVI FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED ..................... 15

    G.   COUNT XXI FOR UNJUST ENRICHMENT SHOULD BE DISMISSED ......................... 16

    H.   COUNT XXVII FOR INVASION OF PRIVACY SHOULD BE DISMISSED ................................. 16

    I.   "EMOTIONAL DISTRESS" COUNT XXVIII SHOULD BE DISMISSED ..................................... 17

    J.   COUNTS XXX AND XXXI FOR CONSPIRACY AND ABETTING SHOULD BE DISMISSED ....... 18

**CONCLUSION** ...................................................................................................... 19

## TABLE OF CITATIONS

**CASES**

*Agostino v. Hicks,*

    845 A.2d 1110 (Del.Ch. 2004) ............................................................................. 10

*Atcom Support LP v. Maria,*

    2016 WL 4118914 (D.Del. 2016) ............................................................................. 6

*Barker v. Huang,*

    610 A.2d 1341 (Del.1992) ...................................................................................... 16

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007) .................................................................................................. 4

*Bell v. Hood,*

    327 U.S. 678 (1946) .................................................................................................. 3

*Brodzki v. Fox News,*

    2010 WL 5150202 (D.Del. 2010) ........................................................................... 16

*Charlton v. C.I.R.,*

    2015 WL 1909759 (3d Cir. 2015) ............................................................................ 3

*Chase Bank USA N.A. v. Consumer Law Ctr. of DelRay Beach LLC,*

    2015 WL 4556650 (D.Del. 2015) ........................................................................... 19

*Citigroup Inc. v. AHW Inv. P'ship,*

    2016 WL 2994902 (Del. 2016) ............................................................................... 10

*Constitution Party of Pa. v. Aichele,*

    757 F.3d 347 (3d Cir. 2014) ..................................................................................... 3

*Cornell Glasgow, LLC v. La Grange Properties, LLC,*

    2012 WL 2106945 (Del.Super. 2012).................................................................. 19

*Davis v. Abington Mem'l Hosp.,*

    765 F.3d 236 (3d Cir. 2014)........................................................................... 4

*Eastman Chemical Co. v. AlphaPet Inc.,*

    2011 WL 6004079 (D.Del. 2011) .................................................................. 6

*Fid. Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC,*

    2016 WL 1650763 (D.Del. 2016) ............................................................. 6, 10

*Fortis Advisors LLC v. Dialog Semiconductor PLC,*

    2015 WL 401371 (Del.Ch. 2015) .......................................................... 14, 15

*Gotha v. United States,*

    115 F.3d 176 (3d Cir. 1997).......................................................................... 4

*Greenly v. Davis,*

    486 A.2d 669 (Del. 1984) ........................................................................... 6

*Grunstein v. Silva,*

    2009 WL 4698541(Del.Ch. 2009) ............................................................. 15

*Hartsel v. Vanguard Grp., Inc.,*

    2011 WL 2421003 (Del. Ch. 2011), *aff'd,* Del.Supr., 38 A.3d 1254 (2012)............................ 7

*Higher Educ. Mgmt. Gp., Inc. v. Mathews,*

    2014 WL 5573325 (Del.Ch. 2014) .......................................................... 16

*IM2 Merch. & Mfg., Inc. v. Tirex Corp.,*

    2000 WL 1664168 (Del.Ch. 2000) ........................................................... 6

*In re Cencom Cable Income Partners,*

    2000 WL 130629 (Del.Ch. 2000) ........................................................... 10

*In re Gen. Motors (Hughes) S'holder Litig.*,

    2005 WL 1089021 (Del.Ch. 2005), aff'd, 897 A.2d 162 (Del. 2006)........................................ 6

*In re Schering Plough Corp.*,

    678 F.3d 235 (3d Cir. 2012).......................................................................................... 3

*International Shoe Co. v. Washington*,

    326 U.S. 310, 316 (1945)............................................................................................. 8

*Istituto Bancario Italiano Spa v. Hunter Eng'g Co.*,

    449 A.2d 210 (Del.1982) ............................................................................................. 8

*Johnson v. City of Shelby*,

    _U.S._, 135 S.Ct. 346 (2014)....................................................................................... 5

*Jordan v. Delaware*,

    433 F.Supp.2d 433 (D.Del. 2006)................................................................................ 18

*KBZ Commc'ns Inc. v. CBE Techs. LLC*,

    634 F. App'x 908 (3d Cir. 2015).................................................................................... 5

*Kehr Packages, Inc. v. Fidelcor, Inc.*,

    926 F.2d 1406 (3d Cir. 1991)................................................................................... 3, 4

*Khushaim v. Tullow Inc.*,

    2016 WL 3594752 (Del.Super. 2016).......................................................................... 16

*Kuroda v. SPJS Hldgs., L.L.C.*,

    971 A.2d 872 (Del.Ch. 2009)....................................................................................... 18

*LaNuova D & B, S.p.A. v. Bowe Co.*,

    513 A.2d 764 (Del. 1986) ........................................................................................... 5

*Martin v. Baehler*,

    1993 WL 258843 (Del.Super. 1993)............................................................................ 16

*Morse v. Lower Merion Sch. Dist.*,

    132 F.3d 902 (3d Cir. 1997) ........................................................................... 5

*Mortensen v. First Fed. Sav. and Loan Ass'n*,

    549 F.2d 884 (3d Cir. 1977) ...................................................................... 3, 4

*My Size, Inc. v. Mizrahi*,

    2016 Wl 3398405 (D.Del. 2016) ................................................................. 8

*Nemec v. Shrader*,

    991 A.2d 1120 (Del. 2010) ........................................................................ 16

*Newspan, Inc. v. Hearthstone Funding Corp.*,

    1994 WL 198721 (Del. Ch. 1994) ............................................................... 7

*Nutt v. A.C. & S. Co.*,

    517 A.2d 690 (Del.Super. 1986) ............................................................... 19

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,

    819 F.2d 434 (3d Cir. 1987) ....................................................................... 4

*Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.*,

    1991 WL 129174 (Del. Ch. 1991) ............................................................... 7

*Republic Bus. Credit, LLC v. Metro Design USA, LLC*,

    2016 WL 3640349 (Del.Super. 2016) ........................................................ 6

*Santiago v. Warminster Twp.*,

    629 F.3d 121 (3d Cir. 2010) ....................................................................... 5

*Senju Pharm. Co., Ltd. v. Apotex, Inc.*,

    921 F. Supp. 2d 297 (D.Del. 2013) ............................................................ 5

*Shaffer v. Heitner*,

    433 U.S. 186 (1977) ................................................................................... 9

*Spence v. Cherian*,

    135 A.3d 1282 (Del.Super. 2016) ................................................................. 16, 17

*Sternberg v. O'Neil*, Del.Supr.,

    550 A.2d 1105 (1988) ................................................................................. 9

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,

    735 F.2d 61 (3d Cir. 1984) ......................................................................... 4

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,

    845 A.2d 1031 (Del. 2004) ......................................................................... 10

*Traynor v. Liu*,

    495 F.Supp.2d 444 (D.Del. 2007) ................................................................ 4

*Trinity Logistics, Inc. v. Aurilius LLC*,

    2013 WL 1092133 (Del. Super. 2013) ......................................................... 6

*Vichi v. Koninklijke Philips Elecs. N.V.*,

    2009 WL 4345724 (Del. Ch. 2009) ............................................................. 6

*Wooleyhan v. Cape Henlopen Sch. Dist.*,

    2011 WL 1875710 (D.Del. 2011) ............................................................... 18

**STATUTES**

10 Del. C. § 3104 ............................................................................................ 6, 7

10 Del. C. § 8106 ............................................................................................ 14

10 Del. C. § 8119 ............................................................................................ 14

6 Del.C. § 15-201(a) ....................................................................................... 11

6 Del.C. § 15-405(a) ....................................................................................... 11

6 Del.C. § 15-405(b) ....................................................................................... 11

**OTHER AUTHORITIES**

Restatement (2d) of Torts Section 46 ............................................................................................ 17

**RULES**

Federal Rules of Civil Procedure Rule 12(b)(1) ......................................................................... 1, 3

Federal Rules of Civil Procedure Rule 12(b)(2) ......................................................................... 1, 4

Federal Rules of Civil Procedure Rule 12(b)(6) .................................................................. 1, 3, 4, 5

## NATURE AND STAGE OF THE PROCEEDING

This is the opening brief of Defendants Tracy Coats ("Coats") and The Client is Everything, Ltd. ("IBKE (Wyo.)" or "IBKE") in support of their motion pursuant to Fed.R.Civ.P. Rules 12(b)(1), 12(b)(2) and 12(b)(6), to dismiss the Complaint in this action.

## SUMMARY OF ARGUMENT

Plaintiffs Hydrogen Master Rights, Ltd. ("HMR"), Carl Le Souef ("Le Souef ") and Pravansu Mohanty ("Mohanty") filed a Complaint asserting fifteen (15) counts against Defendants Coats and IBKE (Wyo.).[1]  Local Rules limit opening briefs to 20 pages and, thus, Defendants can detail only part of the utter bankruptcy of the Complaint's factual and legal allegations.  The Complaint must be dismissed, because the Court does not have personal jurisdiction over either Coats or IBKE, does not have subject matter jurisdiction, and Plaintiffs fail to state any cause of action against Defendants.

No Personal Jurisdiction:  Neither Coats nor IBKE ever set foot in Delaware or did any business in this State, and neither has caused harm in Delaware.  Neither has consented to jurisdiction here.  IBKE has no contact whatsoever with Delware, and Coats' only contact is that he caused five Delaware companies to be formed.  Established law, however, precludes hailing a non-resident into litigation in Delaware on the sole basis that the person has caused incorporation of companies in Delaware, when the formation of the companies is not the basis for a cause of action.  Nor can the Court exercise jurisdiction on the basis of bald allegations of "conspiracy,"

---

[1]  Counts XIII for Breach of Fiduciary Duty; XIV for Breach of Contract; XV for Fraudulent Inducement;  XVI for Negligent Misrepresentation; XVII for Intentional and Negligent Non-Disclosure; XVIII for Promissory Estoppel; XIX for Conversion; XX for Replevin; XXI for Unjust Enrichment and Constructive Trust;  XXII for Declaratory Judgment - Alter Ego; XXV for Trade Secret Misappropriation Under Ohio, Michigan and Delaware Law; XXVII for Invasion of Privacy; XXVIII for Intentional Infliction of Emotional Distress; XXX for Civil Conspiracy; and XXXI for Aiding and Abetting.

much less where the alleged conspiracy is with another non-resident and occurred outside of Delaware.  Thus, the Court cannot exercise either specific or general personal jurisdiction over Coats or IBKE.

No Subject Matter Jurisdiction:  Le Souef and Mohanty aver that Coats violated duties to them as a former partner of an alleged "Partnership."  But, the Complaint never identifies the "Partnership" as a legal entity, because there is none.  The "Partnership" was incorporated as Plaintiff HMR, and, although the beneficial owners of HMR sometimes subsequently referred to themselves as "partners," such colloquial expression does not create a legal relationship existing beyond the incorporated entity.  Indeed, the Complaint admits that only HMR owned all rights to the so-called "Hydrogen Technology," which is the only relevant asset in this action.  Plaintiffs cite no basis – and none exists – for allowing Plaintiffs to sue individually for partnership claims, much less to newly create "Partnership" obligations.  Thus, the individual Plaintiffs have no standing to sue.

Release:  The Complaint itself pleads that HMR and Coats entered into an agreement by which the parties mutually released all claims any of them could have against each other – save for any claims of breach of any confidentiality obligations.  Plaintiffs attempt to circumvent the release by positing that only HMR and not the alleged "Partnership" was a party to the release. This gamesmanship is sabotaged, however, by Plaintiffs' own Complaint which confirms that the mutual release marked Coats' withdrawal from the alleged Partnership.  HMR was the sole owner of the Hydrogen Technology, and HMR's admitted release covers all persons and entities claiming an interest related to that Hydrogen Technology.

Statute of Limitations:  The Complaint pleads alleged causes of action that would have arisen more than three years prior to the filing of the Complaint.  Thus, the claims are barred by Delaware's statute of limitations.

## STATEMENT OF FACTS

Although the Complaint is innocent of any material relationship to reality, Rule 12(b) largely requires that Plaintiffs' factual pleadings be accepted as true.  Thus, Defendants cannot challenge the factual allegations of the Complaint, but, to avoid any ambiguity, remark that the Complaint allegations are untrue or materially incomplete, as will be verified upon Defendants' filing of their Rule 11 motion or when the facts can be presented.  Any facts necessary for the consideration of this motion will be discussed in connection with the specific arguments.

## LEGAL STANDARDS

### A. <u>Rule 12(b)(1)</u>

Fed.R.Civ.P. Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction."  A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  See *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014); *Charlton v. C.I.R.*, 2015 WL 1909759 at *2 (3d Cir. 2015).  In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," and the standards relevant to Rule 12(b)(6) apply. (*Id.* at 358) (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).  Dismissal is proper when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint.  *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Instead, the Court may consider evidence outside the pleadings, including

affidavits, depositions and testimony, to resolve any factual issues bearing on-jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Kehr Packages, Inc.* at 1409.

### B. <u>Rule 12(b)(2)</u>

Fed.R.Civ.P. Rule 12(b)(2) directs the court to dismiss a case when it lacks personal jurisdiction over defendant.  When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all well-pleaded allegations of jurisdictional fact made by plaintiff and resolve all factual disputes in plaintiff's favor. *Traynor v. Liu*, 495 F.Supp.2d 444, 448 (D.Del. 2007). But, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between defendant and the forum to support jurisdiction. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  To meet this burden, plaintiff must produce "sworn affidavits or other competent evidence," as a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd*., 735 F.2d 61, 67 n.9 (3d Cir. 1984).

### C. <u>Rule 12(b)(6)</u>

Fed.R.Civ.P. Rule 12(b)(6) provides that claims must be dismissed if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most  favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Davis v. Abington Mem'l Hosp*., 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  In addition, a plaintiff must

plead-facts sufficient to show that a claim has substantive plausibility:  See *Johnson v. City of Shelby*, _U.S._, 135 S.Ct. 346, 347 (2014).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Only "well-pleaded factual allegations" are considered on a Rule 12(b)(6) motion, and conclusory allegations must be identified and rejected.  *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010); *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997).  A proper pleading "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Senju Pharm. Co., Ltd. v. Apotex, Inc*., 921 F. Supp. 2d 297, 301 (D.Del. 2013) (internal citations omitted).  A "court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse*, 132 F.3d at 906; *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 910 (3d Cir. 2015)

## ARGUMENT

### A.  COURT HAS NO PERSONAL  JURISDICTION  OF  COATS  OR  IBKE

#### 1.  Personal Jurisdiction and Plaintiffs' Arguments

Plaintiffs admit that Coats and IBKE are not residents of Delaware.  (D.I. 1 at ¶¶ 9, 10). Coats and IBKE filed a declaration demonstrating that neither Defendant has any contacts with the Delaware, except that, from outside the State, Coats had authorized a third-party to file incorporation papers in Delaware and had paid annual franchise taxes on behalf of those corporations.  These acts, however, do not form any part of any claim in the Complaint.

In determining personal jurisdiction, a "two-step analysis is applied.  First, the court must consider whether the Delaware Long Arm Statute applies, and then evaluate whether subjecting a defendant to jurisdiction in Delaware violates the due process clause of the fourteenth amendment." *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986); *Republic*

*Bus. Credit, LLC v. Metro Design USA, LLC*, 2016 WL 3640349 at *5 (Del.Super. 2016).

Delaware's statute, in relevant part, confers personal jurisdiction over any nonresident who:

1.   Transacts any business or performs any character of work or service in the State;

2.   Contracts to supply services or things in this State;

3.   Causes tortious injury in the State by an act or omission in this State;

4.   Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

10 Del. C. § 3104(c)(1)–(4).  Plaintiff bears the burden of showing that the statute

applies. *Fid. Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC,* 2016 WL 1650763

at *2 (D.Del. 2016); *Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984).

## 2.   <u>Incorporation in Delaware Does Not Support Personal Jurisdiction</u>

Plaintiffs assert that Coats had "caused" the incorporation in Delaware of HMR and other

legal entities.  (D.I. 1 at ¶ 15).  But, the causing incorporation does not constitute doing business

in Delaware so as to support personal jurisdiction, at least where the incorporation is not part of

the cause of action.[2]  This result is compelled by the Delaware statute, because causing

---

[2]  *Atcom Support LP v. Maria*, 2016 WL 4118914 at *5 (D.Del. 2016) ("this court has held the subsidiary's incorporation in Delaware has no bearing on the general jurisdiction analysis"); *Eastman Chemical Co. v. AlphaPet Inc.*, 2011 WL 6004079 at *14 (D.Del. 2011) ("The fact that one of IRP's subsidiaries is incorporated in Delaware ... has no bearing on the § 3104(c)(4) analysis"); *In re Gen. Motors (Hughes) S'holder Litig.*, 2005 WL 1089021 at *22 (Del.Ch. 2005), <u>aff'd</u>, 897 A.2d 162 (Del. 2006) ("it is clear that NPAL was not created for the purpose of consummating the Hughes transactions.  It then necessarily follows that the cause of action in this case does not and cannot arise from the act of filing the certificate of incorporation within Delaware that created NPAL. Therefore, this alone does not suffice to establish personal jurisdiction over NPAL's parent, News.  In addition, personal jurisdiction over News does not exist merely because it wholly owns NPAL."); *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724 at *8 n. 54 (Del. Ch. 2009) (noting that it is "undisputed as a legal matter that the mere presence of subsidiaries or agents in Delaware is not sufficient to support personal jurisdiction over the parent or principal"); *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168 at *4 n. 15 (Del.Ch. 2000). See also *Trinity Logistics, Inc. v. Aurilius LLC*, 2013 WL 1092133 at *2-3 (Del.Super. 2013) ("The

incorporation from outside of Delaware constitutes neither a transaction of business or

performance of any character of work or service "<u>in the State</u>"; or the contracting to supply

services or things "<u>in this State</u>"; and, further, does not cause tortious injury in the State "<u>by an</u>

<u>act or omission in this State</u>."  § 3104(c)(1)-(3).  To find specific personal jurisdiction under §

3104(c), there must be some act or omission that takes place in Delaware.  *See Hartsel v.*

*Vanguard Grp., Inc.*, 2011 WL 2421003 at *14 (Del. Ch. 2011), *aff'd*, 38 A.3d 1254 (Del. 2012)

(no basis for asserting long-arm jurisdiction when plaintiffs fail to allege conduct occurring in

Delaware that would satisfy the act or omission requirement of Section 3104(c)(3)).

Plaintiffs also allege that "Coats … (iv) caused tortious injury to one or more of the

Plaintiffs in Delaware by his acts and omissions both in and outside the State of Delaware as

alleged herein."  This is a conclusory pleading, and, thus cannot be considered.  Moreover, even

if it were well-pleaded, the averment is insufficient to support jurisdiction under any provision of

§ 3104(c).  The pleading does not invoke § 3104(c)(4), because that subsection applies only if

the Defendant "regularly does or solicits business, engages in any other persistent course of

conduct in the State or derives substantial revenue from services, or things used or consumed in

the State…."  Plaintiffs have not alleged – and cannot plead – the statutorily-required extensive

and continuing contacts with Delaware.  *See Red Sail Easter Ltd. Partners, L.P. v. Radio City*

*Music Hall Prods., Inc.*, 1991 WL 129174 at *3 (Del. Ch. 1991) (§ 3104(c)(4) applies only

---

single act of being a party to a contract is insufficient for jurisdiction to be established under § 3104(c)(1).…"); *Newspan, Inc. v. Hearthstone Funding Corp.,* 1994 WL 198721 at *6 (Del. Ch. 1994) ("Plainly, I would have thought, a contract between a Delaware corporation and a nonresident. . .to transact business outside Delaware, which has been negotiated without any contacts in this state, cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of that contract.").

"when a defendant has had contacts with this state that are so extensive and continuing that it is

fair and consistent with state policy to require that the defendant appear here and defend a claim

even when that claim arose outside of this state and causes injury outside of this state.").

### 3.  "Conspiracy" Is Not A Basis for Personal Jurisdiction

Plaintiffs also argue a "conspiracy" basis for jurisdiction. (D.I. 1 at ¶ 15).  Plaintiffs fail

to justify personal jurisdiction, because their bare conclusory allegations do not even argue,

much less support, the necessary factual showing.  Particularly, to support personal jurisdiction

under this concept, Plaintiffs had to support a pleading of a conspiracy, and that:

> (3) a substantial act or substantial effect in furtherance of the conspiracy occurred
> in [Delaware]; (4) the defendant knew or had reason to know of the act in the
> forum state or that acts outside the forum state would have an effect in
> [Delaware]; and (5) the act in, or effect on, [Delaware] was a direct and
> foreseeable result of the conduct in furtherance of the conspiracy.

*Republic Bus. Credit, LLC v. Metro Design USA, LLC*, 2016 WL 3640349 at *5 (Del.Super.

2016) (citing and quoting *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225

(Del.1982).  Plaintiffs do not allege, and cannot allege, these facts.  Therefore, Plaintiffs have not

demonstrated that the *Instituto Bancario* test for establishing conspiracy jurisdiction is met and

cannot use a conspiracy theory to establish personal jurisdiction.  *My Size, Inc. v. Mizrahi*, 2016

WL 3398405 at *4–5 (D.Del. 2016).

Finally, there is nothing in the pleadings that suggests that Coats has "certain minimum

contacts with [the forum], such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945).  In order to support an exercise of specific jurisdiction, the nonresident

defendant's minimum contacts with the forum must give rise to the particular controversy. *Id*. at

317-18.  Thus, whether the requisite minimum contacts exist is determined by examining the

relationship between the defendant, the forum and the litigation.  *Shaffer v. Heitner*, 433 U.S.

186, 204 (1977); *Sternberg v. O'Neil*, Del.Supr., 550 A.2d 1105, 1118 (1988).

## B.  COURT  DOES  NOT  HAVE  SUBJECT  MATTER  JURISDICTION

With the exception of Counts XXVII and XXVIII, Le Souef's and Mohanty's claims against Coats are based on alleged duties they say Coats owed them as a present or former "partner" in a "Partnership" in relation to so-called "Hydrogen Technology."[3]

The Court has no subject matter jurisdiction as to these "partnership" claims:

1.       Neither Le Souef nor Mohanty have any rights to Hydrogen Technology as individuals.  The Complaint admits that the "Hydrogen Technology" was purchased and is still owned by Plaintiff HMR. (D.I. 1 at 18, 54).  HMR's purchase and ownership of the Hydrogen Technology is reflected in Exhibit A, which is a relevant portion of the "December 12, 2011 Agreement for Sale of Certain Assets (the 'Purchase Agreement')" referenced in ¶ 54 of the Complaint.  Le Souef and Mohanty have not explained how they can have any individual rights relating to an HMR asset.

2.       The alleged "Partnership" is not named as a Plaintiff, and, in fact, the Complaint never suggests that the "Partnership" existed as a legal entity. Moreover, any formal or informal "Partnership" was incorporated or merged into HMR, which was beneficially owned by four individuals, including Le Souef, Mohanty, Rodney Adler and Coats.  (D.I. 1 at ¶ 28).   That the four beneficial owners of HMR sometimes colloquially referred to themselves as "partners" does

---

[3]  See for example:  "As a partner in the Partnership, Coats owed the Partnership and his partners, including Dr. Mohanty and Mr. Le Souef, fiduciary and other duties, including duties of loyalty, utmost good faith, and integrity." (D.I. 1 at ¶ 200).    "Coats intended for Mr. Le Souef and Dr. Mohanty to rely upon the materially incomplete facts so that they would cause the Partnership to invest in the Hydrogen Technology so that he would benefit personally through his ownership and control of IBKE (Wyo.), or he reasonably should have foreseen that occurring. … Coats' failure to disclose material facts to Mr. Le Souef and Dr. Mohanty induced them to cause the Partnership to enter into agreements relating to the Hydrogen Technology, which they would not have done had they disclosed all of the material facts." (D.I. 1 at ¶¶230-31)

not create any separate individual or "Partnership" rights beyond those of HMR.

3.     The Complaint itself states that, to the extent that a "Partnership" ever existed, "Coats withdrew from the Partnership" in June 2014.  (D.I. 1 at ¶ 82).  Therefore, if there ever was a "Partnership," Coats has not been partners, or associated, with Plaintiffs since June 2014. In light of these facts, Plaintiffs Le Souef and Mohanty have no standing to sue.  First, Le Souef and Mohanty may not sue for any alleged harm to Hydrogen Technology, because they have rights to that asset.  Only HMR can sue.  Corporations have an existence separate and distinct from that of their shareholders, and an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation.  The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue.[4] Yet, all the Counts asserted by Le Souef and Mohanty either directly or indirectly involve harm to Hydrogen Technology, which is an HMR asset.  Le Souef and Mohanty have not stated a direct claim.

Second, Le Souef and Mohanty cannot circumvent HMR's established ownership of the

---

[4]  See, e.g. *Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 9437530 at *2 (D.Del. 2015) ("The issue of whether a claim is direct or derivative 'must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?' '"A direct claim seeks relief for injuries that fall distinctly upon the individual participants in the business association or involve the participants' contractual rights.' A derivative claim, however, states an injury against the business association as a whole, and any relief flowing to the individual participants only comes to them indirectly, by way of their pro-rata share in the association.") (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004); *In re Cencom Cable Income Partners*, 2000 WL 130629 at *3 (Del.Ch. 2000)); *Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del.Ch. 2004) ("In other words, the inquiry should focus on whether an injury is suffered by the shareholder that is not dependent on a prior injury to the corporation."); *Citigroup Inc. v. AHW Inv. P'ship*, 2016 WL 2994902 at *9 (Del. 2016).

Hydrogen Technology by postulating some nebulous supervening "Partnership" claim.  The Complaint pleads that the "Partnership" was formed solely to acquire and commercialize the Hydrogen Technology. (D.I. 1 at ¶ 28, 48).  The Complaint then pleads that the "Partnership" was effectively merged into HMR:

> The Partnership, **through HMR**, purchased all rights, titles and interests in and to the Hydrogen Technology … pursuant to the December 12, 2011 Agreement for Sale of Certain Assets (the "Purchase Agreement").

(D.I. 1 at ¶ 54; emphases supplied).  The Complaint fails to explain, and cannot explain, what would be left of the "Partnership" once the "Partners" created HMR to acquire and commercialize the Hydrogen Technology.

Finally, even if one could fashion some alleged "Partnership" that is distinct from HMR, it is the "partnership" that must file the action.  Delaware law provides that the "partnership is a separate legal entity which is an entity distinct from its partners…."  6 Del.C. § 15-201(a).  And, further, only that distinct partnership "may maintain an action against a partner for a breach of the partnership agreement, or for the violation of a duty to the partnership, causing harm to the partnership."  6 Del.C. § 15-405(a).  Delaware law does not afford individual partners any standing to sue a former partner.  6 Del.C. § 15-405(b).

In short, with the exception of Counts XXVII and XXVIII, Le Souef and Mohanty have failed to establish any standing to assert their asserted claims against Coats and IBKE in this action, and, consequently, the Court lacks subject matter jurisdiction.

### C.  PLAINTIFFS' ARE BARRED  BY THE MUTUAL GENERAL RELEASE

Plaintiffs' need to concoct the meritless individual claims by Le Souef and Mohanty is explained by Plaintiff's admission that HMR had already released Coats and IBKE from essentially all claims now posited by Le Souef and  Mohanty.  HMR admittedly could not sue Coats or IBKE, and, thus, Plaintiffs created "Partnership" claims which they hoped Le Souef and

Mohanty could carry to avoid HMR's release.  Plaintiff's contrived attempt fails.

The Complaint admits that HMR and Coats entered into a release that precludes HMR from filing most of the claims now asserted by Le Souef and Mohanty:

> 83.  As part of his withdrawal, Coats … agreed to sell their entire right, title and interest in and to HMR (to the extent they had any) and other Partnership entities, and entered into a Mutual General Release and Indemnity (the "Mutual General Release") ….

(D.I 1 at ¶ 83).  The actual Mutual General Release, which was prepared by HMR and its related entities (the "Company"), is in the record as Exhibit B.  The Mutual General Release states that "[Coats] and Company, and *each of them individually* intend to generally release and hold each other harmless"; and that

> The Parties and Company hereby mutually WAIVES, RELEASES ACQUITS, AND FOREVER DISCHARGES each other, collectively and individually, and all their affiliated companies and the administrators, agents, representatives, directors, employees, assigns, officers, owners, parent corporations, partners, subsidiaries, predecessors-in-business or interest, and other successor and related companies of any and all of them, from all "Claims" related to the Company.

(Exh. B at p. 1).  The term "Claims" is specifically defined, and is about as broad as possible, and specifically includes any liabilities based on "whether in *contract, tort, or any other legal theory*, or based upon *fraud or misrepresentation*, *breach of duty* or common law, … for past, present, future, known, and unknown injuries … or … damage … of any kind…." (*Id.*)  The only exception to this very broad release is that

> "Claims" DOES NOT INCLUDE any disputes, claims, controversies and causes of action arising out of or resulting from acts, omissions, or events occurring as a result of a breach of confidential information by the Parties regarding the Company.

(Exh. B at p. 2).

Recognizing the preclusive effect of this Mutual General Release, Plaintiffs attempt to circumvent the release by hatching a "Partnership" which is different than HMR and which "did

not release any claims against Coats." (D.I. 1 at ¶ 84)   Plaintiffs' devise is defeated, however, because the Complaint admitted that the Mutual General Release constituted Coats' <u>withdrawal</u> <u>"from the Partnership</u>." *(id*. at ¶ 82); and that by the Mutual General Release, Coats had "agreed to release HMR, <u>Dr. Mohanty and Mr. Le Souef</u>." (*id*. at ¶ 83).   The factual admissions are dispositive, because the release plainly and only released HMR and certain other entities owned by the Plaintiffs, and individuals associated with those companies.  If, as the Complaint alleges, the Mutual General Release effected Coats' withdrawal from the "Partnership" (that was distinct from HMR) and released the individual; Plaintiffs <u>as Coats' former partners</u>, then, by definition the "Partnership" was a party to the Mutual General Release as a matter of judicial admission by Plaintiffs in their Complaint.

The Mutual General Release is by definition "mutual" in both terms and substance, and Plaintiffs cannot possibly argue that Coats' signing of the Mutual General Release effected a withdrawal from the Partnership and a release of all Claims against the Partnership, but that the Partnership did not mutually undertake any release.  Plaintiffs cannot state a cause of action that is contradicted by the plain terms of a written agreement that is incorporated into the pleadings and negated by express pleadings of fact in the Complaint.

Finally, even if it were correct that Plaintiffs had successfully "hoodwinked" Coats into signing a Mutual General Release that released all of Coats' claims against HMR, the alleged "Partnership" and the individual Plaintiffs, but not *vice-versa*, the fact remains that HMR was the owner of all Hydrogen Technology and other related rights, and the Complaint fails to delineate what rights were retained by the individual Plaintiffs after HMR's release of all rights related to those assets (subject, of course, to the stated exception in the document).  Mohanty and Le Souef still have not plausibly pled standing to sue in light of the release by HMR.

The Mutual General Release therefore clearly, unequivocally and without any ambiguity

released both Coats and IBKE from all "Claims" set forth in the Counts asserted against them, except for any claim of alleged "breach of confidential information by [Coats] regarding [HMR]."

### D.  Most Counts Are Barred By the Statute of Limitations

Counts XIII, XIV, XV, XVI, XVII, XVIII, XXI, XXV, XXVII, XXVIII, XXX and XXXI allege only, or at least in major part, actions occurring more than three years prior to the filing of the Complaint.  For example, ¶ 218 of the Complaint argues liability based on emails written during the period of January 2011 through January 2012, a period that began 5 and half years, and ended four and half years, prior to the filing of the Complaint.

These Counts are barred by the three-year statute of limitations. 10 Del. C. § 8106. Plaintiffs do not specify any dates with respect to Counts XXVII and XXVIII, directed to Invasion of Privacy and Intentional Infliction of Emotional Distress, but the Counts incorporate by reference all the prior allegations, which rest on actions occurring more than 3 years ago.  (D.I. 1 at ¶¶ 289, 295).  Therefore, these Counts are barred by the two-year statute of limitations. 10 Del. C. § 8119.

### E.  Count XV for Fraud Should be Dismissed

In Count XV, Plaintiffs assert claims for Fraudulent Inducement.  "In order for a fraud claim to survive a motion to dismiss, a plaintiff needs to allege: (1) that defendant made a false representation, usually one of fact; (2) with the knowledge or belief that the representation was false, or with reckless indifference to the truth; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) that plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of her reliance on the representation." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371 at *6 (Del.Ch. 2015).

Given that this is a motion to dismiss under Rule 12(b), Coats cannot argue the falsity of the allegations in the Complaint, but they still fail to state a cause of action.  Plaintiffs do not assert that Coats stated a false fact or omitted a critical fact, but only assert that Coats

misrepresented as to how "he would act" in the future.  (D.I. 215).  This cannot constitute fraud, because the general rule is that "statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud," and "the putative misrepresentation must involve either a past or contemporaneous fact or a future event that falsely implies an existing fact." *Grunstein v. Silva*, 2009 WL 4698541 at *12–14 (Del.Ch. 2009).  Plaintiffs have not suggested that Coats was misrepresenting his state of mind, or had no intention of performing as promised, at the time he made the alleged statements.  Count XV should be dismissed.

### F.  Count XVI for Negligent Misrepresentation Should be Dismissed

Count XVI asserts claims for Negligent Misrepresentation based on the same allegations cited in support of its fraudulent inducement claim in Count XV, and should be dismissed for the same reason.  "A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except 'that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly.'" *Fortis Advisors, supra,* 2015 WL 401371 at *9.

Because Plaintiffs failed to plead that Coats made any misrepresentation or omitted any fact, Plaintiffs' negligent misrepresentation claim fails for the same reason.  Further, as in *Fortis*, Plaintiffs' negligent misrepresentation claim fails to state a claim for a second, independent reason.  "This Court has held that an equitable fraud or negligent misrepresentation claim lies only if there is either: (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford." *Fortis*, *supra.*  Here, Plaintiffs allegations appear to be statements made in arms-length negotiation between sophisticated parties, and preparatory to the formation of any joint-venture or "partnership."  Such activities cannot constitute negligent misrepresentations.

## G.  Count XXI for Unjust Enrichment Should be Dismissed

In Count XXI, Plaintiffs assert claims for Unjust Enrichment and Constructive Trust.

"The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation

between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence

of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). "A claim

for unjust enrichment is not available if there is a contract that governs the relationship between

parties that gives rise to the unjust enrichment claim." *Khushaim v. Tullow Inc*., 2016 WL

3594752 at *8 (Del.Super. 2016).  Here, Plaintiffs have not pled any of the required elements of

unjust enrichment and constructive trust.  "Failure to plead an element of a claim precludes

entitlement to relief and, therefore, is grounds to dismiss that claim." *Higher Educ. Mgmt. Gp.,

Inc. v. Mathews*, 2014 WL 5573325 at *4 (Del.Ch. 2014).  Plaintiffs here have merely

indiscriminately incorporated by reference the prior 248 paragraphs of the Complaint (D.I. 1 at ¶

249), and then boldly asserted that a constructive trust and/or restitution is required.  (D.I. 1 at ¶¶

252-53).  Such conclusory allegations do not state a cause of action, and should be dismissed.

## H.  Count XXVII for Invasion of Privacy Should be Dismissed

Count XXVII pleads Invasion of Privacy.  "Under Delaware law one who gives publicity

to a matter concerning the private life of another is subject to liability to the other for invasion of

privacy, if the matter publicized is of a kind that: (1) would be highly offensive to a reasonable

person; and (2) is not of legitimate concern to the public." *Brodzki v. Fox News*, 2010 WL

5150202 at *2 (D.Del. 2010) (citing *Barker v. Huang*, 610 A.2d 1341 (Del.1992)).

The key requirement of Invasion of Privacy action is that the allegedly private

information was published.  "It is not an invasion of privacy to communicate a fact concerning

one's private life to just one person, or even to a small group." *Spence v. Cherian*, 135 A.3d

1282, 1287–88 (Del.Super. 2016); *Martin v. Baehler*, 1993 WL 258843, at *2 (Del.Super. 1993).

Plaintiffs do not allege, and cannot allege, the critical elements of an invasion of privacy cause of action.  There are no allegations as to what the allegedly private information was, much less that the information "would be highly offensive to a reasonable person."  Plaintiffs do not plead that the allegedly private information was publically disclosed.  The Complaint simply states that Coats disclosed certain recordings to Defendant Dean Weston, and impliedly admits that there was no further distribution of the information.  This is insufficient to state a cause of action for invasion of privacy.

Even if Plaintiffs were correct that Coats surreptitiously recorded conversations without Plaintiffs; consent, no authority supports the creation of an entirely new cause of action that such recordings, which are never publicized, constitute a tort of invasion of privacy.

## I.   "Emotional Distress" Count XXVIII Should be Dismissed

Count XXVIII pleads Intentional Infliction of Emotional Distress, based on the same allegations as Count XXVII.  The elements of the tort of intentional infliction of emotional distress ("IIED") are defined by Section 46 of the Restatement (2d) of Torts.  *Spence v. Cherian*, *supra*, 135 A.3d at 1288.  "According to the Restatement, an IIED claim arises when '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'"  (*Id.*)  Extreme and outrageous conduct is that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community."  (*Id.* at 1289)  The Court cited the definition of outrageous conduct from the Restatement:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'

(*Id.*)  Plaintiffs' pleadings do not remotely approach the specification required to state an IIED claim against Coats.  Again, as to Coats, Plaintiffs plead only that Coats recorded conversations allegedly without consent, and disclosed them to Dean Weston.  There are no well-pleaded allegations of any other action by Coats.  Moreover, even if Plaintiffs' unfounded allegations were accepted as true, there is no pleading that the conversations were distributed beyond Weston and the Plaintiffs, and certainly nothing that would meet the publicity requirements of set forth in the law.  *Jordan v. Delaware*, 433 F.Supp.2d 433, 444 (D.Del. 2006).

The Court is responsible for determining whether the alleged conduct is sufficiently extreme and outrageous in the first instance. *Wooleyhan v. Cape Henlopen Sch. Dist.*, 2011 WL 1875710 at *14–15 (D.Del. 2011).  "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  IIED does not exist to provide a cause of action against poor judgment, it exists to hold accountable someone who does something atrocious and intolerable."  (*Id.*)   Count XXXVIII should be dismissed, because Plaintiffs could not have suffered "emotional distress" from hearing their own words being played back to themselves and to one other person, Dean Weston.

### J.   Counts XXX and XXXI for Conspiracy and Abetting Should be Dismissed

Counts XXX and XXXI make various egregious, but profoundly unsupported and false, allegations that Coats is part of a conspiracy to extort money from Plaintiffs, and that he has aided and abetted such alleged misconduct.  "Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong.  Thus, if plaintiff fails to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed." *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 892 (Del.Ch. 2009).  Under Delaware law, to prevail on a conspiracy claim, a plaintiff must prove the combination of two or more persons or entities for an unlawful purpose, or for accomplishing a lawful purpose by unlawful means, resulting in

- 18 -

damages. See *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 694 (Del.Super. 1986). See also *Chase Bank USA N.A. v. Consumer Law Ctr. of DelRay Beach LLC*, 2015 WL 4556650 at *5 (D.Del. 2015) ("Civil conspiracy requires an underlying wrong which would be actionable absent the conspiracy; there is no independent action for civil conspiracy under Delaware law.")

"Like civil conspiracy, aiding and abetting is a derivative tort, there must be an actionable underlying wrong to which the claim of aiding and abetting can attach." *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945 at *11 (Del.Super. 2012)..

None of the acts alleged in the complaint constitute an underlying wrong on which a claim of conspiracy or aiding and abetting could be based. There is a pending lawsuit by Defendant Weston against Plaintiffs in the Michigan state court, which the Complaint refers to as the "Michigan Action." (D.I 1 at ¶ 116; and see the Complaint in that action, Exhibit C, which is a public judicial record). Weston's counsel requested certain recordings from Coats for use in the litigation, and Coats complied. Weston's filing of a lawsuit is not prima facie case of an underlying actionable wrong, notwithstanding Plaintiffs' derisive reference to it as an "extortion." More importantly, as a matter of law and public policy, Coats' providing of the recordings to Weston's counsel in connection with the lawsuit cannot be termed a conspiracy or aiding and abetting.

## CONCLUSION

On the basis of the foregoing analysis of fact and law, Defendants respectfully request that their motion to dismiss be granted.

Dated: August 22, 2016                              Respectfully submitted,

_/s/ George Pazuniak_
George Pazuniak (No. 478)
O'KELLY & ERNST, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
gp@del-iplaw.com

_Attorneys for Attorneys for Defendants Tracy_
_Coats and The Client is Everything, Ltd._