# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HYDROGEN MASTER RIGHTS, LTD., CARL LE SOUEF and PRAVANSU MOHANTY, PH.D., <br><br> Plaintiffs, <br><br> v. <br><br> DEAN WESTON, ENGINEERING INTERESTS, LLC, PAUL DAVID MANOS, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, TRACY COATS, and THE CLIENT IS EVERYTHING, LTD., <br><br> Defendants. | Case No. 1:16-cv-00474-RGA |

## OPENING BRIEF BY DEFENDANT TRACY COATS
## IN SUPPORT OF HIS MOTION TO DISQUALIFY COUNSEL

Dated: August 22, 2016

George Pazuniak (No. 478)
O'KELLY & ERNST, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
sokelly@oeblegal.com
gp@del-iplaw.com
dmurray@oeblegal.com

*Attorneys for Defendants Tracy Coats*

# **TABLE OF CONTENTS**

**NATURE AND STAGE OF THE PROCEEDING** ................................................................ 1

**SUMMARY OF ARGUMENT** .............................................................................................. 1

**STATEMENT OF FACTS** ..................................................................................................... 2

    A.   THE COMPLAINT ACCUSES COATS OF COMMITTING FRAUD IN ........................................... 2
          THE COURSE OF PREPARING AND EXECUTING THE PURCHASE AGREEMENT ....................... 2

    B.   MOVIUS REPRESENTED COATS AS COUNSEL .................................................................... 4
          IN THE ACTIVITIES THAT THE COMPLAINT ALLEGES WERE FRAUDULENT ........................ 4

    C.   MOVIUS WILL BE A CRITICAL WITNESS .......................................................................... 5

**LEGAL STANDARD** ............................................................................................................ 6

**ARGUMENT -- MOVIUS MUST BE DISQUALIFIED** ....................................................... 7

    A.   MOVIUS IS VIOLATING MODEL RULE 1.9(A) AND SHOULD BE DISQUALIFIED ..................... 7

    B.   MOVIUS AND HIS FIRM MUST BE DISQUALIFIED UNDER MODEL RULE 3.7 ........................ 9

    C.   COATS DID NOT WAIVE CONFLICT AND THERE WAS NO INFORMED CONSENT ................. 10

**CONCLUSION** ................................................................................................................... 10

# **TABLE OF CITATIONS**

**CASES**

*Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*,

  660 F. Supp. 2d 557 (D.Del. 2009) .................................................................................. 6, 8

*Cardona v. General Motors Corp.*,

  942 F. Supp. 968 (D.N.J. 1996) ........................................................................................... 7

*Conley v. Chaffinch*,

  431 F. Supp. 2d 494 (D.Del. 2006) ...................................................................................... 6

*In re Corn Derivatives Antitrust Litig.*,

  748 F.2d 157 (3d Cir. 1984) ................................................................................................. 6

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*,

  803 F. Supp. 957 (D. Del. 1992) .......................................................................................... 6

*Laker Airways, Ltd. v. Pan American World Airways*,

  103 F.R.D. 22 (D.D.C. 1984) ............................................................................................... 7

*Nemours Found, v. Gilbane, Aetna, Fed. Ins. Co.*,

  632 F. Supp. 418 (D.Del. 1986) ........................................................................................... 7

*Satellite Fin. Planning Corp, v. First Nat'l Bank of Wilmington*,

  652 F. Supp. 1281, 1283 (D. Del. 1987) .............................................................................. 7

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,

  491 F. Supp. 2d 510, 513 (D. Del. 2007) .......................................................................... 6, 7

*Tolliver v. Trinity Par. Found.*,

  2016 WL 4071954 (D.Del. 2016) ..................................................................................... 6, 8

*United States v. Miller*,

    624 F.2d 1198 (3d Cir. 1980)................................................................................................ 6

**RULES**

D. Del. Local Rule 83.6(d)......................................................................................................... 6

Model Rules of Professional Conduct of the American Bar Association Rule 1.0(e).................. 10

Model Rules of Professional Conduct of the American Bar Association Rule 3.7 ................... 9, 10

Model Rules of Professional Conduct of the American Bar Association Rule l.9(a)............ passim

**NATURE AND STAGE OF THE PROCEEDING**

Plaintiffs Hydrogen Master Rights, Ltd. ("HMR"), Carl Le Souef ("Le Souef ") and Pravansu Mohanty ("Mohanty") filed this action against numerous Defendants. Defendant Tracy Coats ("Coats") has now moved to disqualify David T. Movius ("Movius") from acting as counsel on behalf of Plaintiffs, and this is Coats' opening brief of in support thereof.

**SUMMARY OF ARGUMENT**

Attorney Movius has entered his appearance in this case and filed on behalf of the Plaintiffs a Complaint asserting fifteen (15) counts against Defendant Coats. Movius and his firm, McDonald Hopkins LLC, however, must be disqualified from representing Plaintiffs pursuant to Rules l.9(a) and 3.7 of the Model Rules of Professional Conduct of the American Bar Association.

Movius and his firm are now barred from representing Plaintiffs against Coats, because they had represented Coats in the preparation and execution of the Purchase Agreement, which is the heart of Plaintiffs' claims against Coats. Specifically:

    (a)    Movius had an attorney-client relationship with Coats, confirmed in a written engagement letter, by which Coats engaged Movius to represent him and connection with the Purchase Agreement;

    (b)    The Complaint directly alleges that Coats committed fraud in connection with the Purchase Agreement, and, thus, Movius and Plaintiffs are arguing that Coats committed fraud in the very transaction where Movius had represented Coats;

    (c)    The Plaintiffs' interests are materially adverse to Coats' interest; and

    (d)    Coats has not given informed consent for Movius to represent Plaintiffs.

Further, Model Rule 3.7 requires the disqualification of Movius, because he will be a critical witness in the trial of this matter.

## STATEMENT OF FACTS

The Complaint in this case was filed on June 22, 2016, and on June 30, 2016, attorney David T. Movius filed a motion for *Pro Hac Vice* Appearance of Attorney on behalf of all Plaintiffs. (D.I. 1, 4)  The Court "So Ordered" the appearance the same day, as is usual in such cases.  At the time Movius filed his *pro hac vice* motion and the Court "So Ordered," Defendant Coats had not yet been served and was not a party to the action.  Coats is now a party and has entered an appearance in this case by filing a motion to dismiss.  Coats objects to Movius acting as Plaintiffs' counsel, and seeks an order of disqualification.

### A. The Complaint Accuses Coats Of Committing Fraud In The Course of Preparing and Executing The Purchase Agreement

This action relates to the acquisition of rights to the so-called "Hydrogen Technology." Plaintiff HMR purchased the Hydrogen Technology and all rights related thereto, and remains the owner. (Complaint, D.I. 1 at 18, 54).  The Complaint accurately states HMR acquired these rights through what the Complaint identifies as the "December 12, 2011 Agreement for Sale of Certain Assets (the 'Purchase Agreement')." (¶ 54).  Exhibit A comprises a relevant portion of that Purchase Agreement.

In the Complaint, Movius and the Plaintiffs allege, *inter alia*, that Coats committed fraud against Plaintiffs Le Souef and Mohanty in connection with the execution of that Purchase Agreement.  Specifically, Counts XIII through XVII of the Complaint accuse Coats of various breaches, but most critically, of fraudulently inducing Le Souef and Mohanty to enter into the Purchase Agreement, by failing to disclose Coats' relationship with the sellers.  Movius and Plaintiffs allege, for example that:

> 201. Coats breached and otherwise failed to observe his fiduciary and other duties to Mr. Le Souef by … continuing to represent the Hydrogen Technology on behalf of Manos and Picot and IBKE (Wyo.) without adequately disclosing the benefits he stood to receive through his ownership and control of IBKE (Wyo.)

from any investment by the Partnership in the Hydrogen Technology and by personally benefitting from commissions received by IBKE (Wyo.) as a result of payments made by or on behalf of the Partnership.

*** 

220.  Coats used IBKE (Wyo.) as an instrumentality to perpetuate his fraudulent conduct by, for example, … using IBKE (Wyo.) to conceal the payment of such commissions from his partners to induce Mr. Le Souef and Dr. Mohanty to continue as partners in the Partnership with him.

221.  Mr. Le Souef and Dr. Mohanty did not know that Mr. Coats' representations were false ….

222.  Coats made his misrepresentations to Mr. Le Souef and Dr. Mohanty with the specific intent of inducing them to rely upon them…..

***

225.  … Coats knew or should have known that he did not intend to honor his representations and promises to Mr. Le Souef and Dr. Mohanty based on, for example, his ongoing contractual and other relationships with third parties including Manos, Picot, Weston and IBKE (Wyo.)….

***

228.  During the time he was a partner in the Partnership, Coats knew that, based on his agreement to represent the Hydrogen Technology on behalf of Manos and Picot through IBKE (Wyo.), he stood to benefit personally through his ownership and control of IBKE (Wyo.) from any investment by the Partnership in the Hydrogen Technology, which are material facts that, in equity and good conscience, they were required to disclose to Mr. Le Souef, Dr. Mohanty and HMR.

229.  Coats knowingly or negligently failed to disclose these materials fact to Mr. Le Souef and Dr. Mohanty, who were ignorant of those facts.

230.  Coats intended for Mr. Le Souef and Dr. Mohanty to rely upon the materially incomplete facts so that they would cause the Partnership to invest in the Hydrogen Technology so that he would benefit personally through his ownership and control of IBKE (Wyo.), or he reasonably should have foreseen that occurring.

231.  Coats' failure to disclose material facts to Mr. Le Souef and Dr. Mohanty induced them to cause the Partnership to enter into agreements relating to the Hydrogen Technology, which they would not have done had they disclosed all of the material facts.

(D.I. 1 at ¶¶ 201, 220-22, 225, and 228-31).

## B. Movius Represented Coats As Counsel In the Activities That The Complaint Alleges Were Fraudulent

As previously noted, the averments of ¶¶ 201, 220-22, 225 and 228-31 of the Complaint relate to the preparation and execution of the Purchase Agreement, by which the "Hydrogen Technology" was sold to HMR. Coats was one of HMR's beneficial owners. In connection with the transaction, Coats had personally retained Movius to act on behalf of all four beneficial owners of HMR, including Coats. (Coats Decl. ¶ 21). In fact, Coats had personally paid one-half of the invoice presented by Movius and his firm for their services in the preparation and execution of the Purchase Agreement. (Coats Decl. ¶ 27).

In furtherance of his representation of Coats in connection with the Purchase Agreement, Movius prepared and delivered to Coats a signed engagement letter agreement, which Coats counter-signed, returned to movius and thus retained Movius as his counsel. (Coats Decl. ¶ 23). The engagement agreement is in the record as Exhibit D. (*Id*.) The engagement letter states that the "scope of this engagement initially involves *representation of the four Owners* as a group in the formation of the Entity." (Exhibit D, emphases supplied).

In accordance with the above engagement, Movius did prepare both drafts and the final version of the Purchase Agreement. The Purchase Agreement states that HMR was not only purchasing the Hydrogen Technology, but was also purchasing the following agreements:

> (ii) the "Exclusive License Agreement" dated January 14, 2011, by and between Significan Australia Energy Intellectual Property Trust as "Licensor" and International Business Knowledge Exchange, Ltd., as "Licensee"; [and] (iii) the "Supply Agreement" dated January 14, 2011, by and between Bernard Picot and Paul David Manos as "Vendors" and International Business Knowledge Exchange, Ltd., as "Purchaser".….

Exhibit A at ¶ 5.2. "International Business Knowledge Exchange, Ltd" referenced in the Purchase Agreement is the Defendant IBKE (Wyo.), and is the same IBKE (Wyo.) that is referenced throughout the Complaint. (See, for example, D.I. ¶¶ 16, 24-27, 32, 34-48, 201, 220,

225, 228-30 and 250; Coats Decl. ¶ 29). Thus, Movius and the Plaintiffs knew about Coats' relationship with the sellers of the Hydrogen Technology, and, yet, are now arguing that Coats committed fraud in failing to disclose information to Plaintiffs, when that very information is reflected in the Purchase Agreement itself.

Further, independently of the representations in the Purchase Agreement, Coats had discussed and disclosed to Movius and the Plaintiffs his relationship with IBKE (Wyo.) and the sellers of the Hydrogen Technology. (Coats Decl. ¶¶ 28-30).

In short, attorney Movius is asserting that his former client committed fraud in connection with a transaction where the attorney had represented Coats as his counsel, and is arguing fraudulent conduct, even though the fraud allegations are contradicted by the very agreement that the attorney Movius had himself drafted.

### C. Movius Will Be A Critical Witness

Movius will be an important witness in this action. Movius will need to testify about his knowledge and review of the agreements referenced in Exhibit A at ¶ 5.2; he will testify about his discussions with Le Souef and Mohanty at the time that he prepared the Purchase Agreement and had it executed; he will testify about what information he received from the sellers in the course of the transaction; and he will testify as to whether the various allegations in the Complaint, particularly the paragraphs cited above, are true.

Movius would be a critical witness even if he had been merely a passive attorney in the transaction subject to the Complaint. But, he was more than that. As shown by his retainer of $20,000 as part of his engagement Agreement and the significant invoice that he thereafter sent to HMR, he was intimately involved in the entire negotiation, preparation and execution of the Purchase Agreement.

## LEGAL STANDARD

The relevant legal standard was recently set forth in detail and completely by Judge Stark in *Tolliver v. Trinity Par. Found.*, 2016 WL 4071954 at *2 (D.Del. 2016), and is as follows:

> The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. See *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007); see also *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D.Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992).
>
> Attorney conduct is governed by the ethical standards of the court before which the attorney appears. See *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct of the American Bar Association ("M.R.P.C."). See D. Del. LR 83.6(d). M.R.P.C. Rule 1.9(a) provides:
>
>> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> Rule 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162.
>
> To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D.Del. 2009).
>
> To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under

Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp, v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987); see also *Talecris*, 491 F. Supp. 2d at 514.  When attempting to determine whether a "substantial relationship" exists, disqualification may be proper "when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996).

***

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found, v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D.Del. 1986).  "[W]hether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D.Del. 2009).

Finally, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27-28 (D.D.C. 1984).

(*Id*.)

## ARGUMENT -- MOVIUS MUST BE DISQUALIFIED

### A. Movius is Violating Model Rule 1.9(a) and Should be Disqualified

It is hard to imagine a more compelling case for disqualification of adverse counsel.  The complete text of governing Model Rule 1.9(a) is as follows:

Rule 1.9 Duties To Former Clients

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(Model Rules, Rule 1.9(a)). The Comments to Rule 1.9(a) state that, after termination of a client-lawyer relationship, a lawyer cannot act against his former client, and, for example, "a lawyer

could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client," and:

> Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent.

The Comment further continues in terms fully applicable here:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited.

Under the present facts, the application of Rule 1.9(a) is straightforward. No dispute exists that

(1) Movius had an attorney-client relationship with Coats. Exhibit D. Moreover, Movius had sent his invoices to Coats' home, and Coats personally paid at least part of Movius' invoices. (Coats Decl. ¶ 27).

(2) The Complaint directly and specifically involves the Purchase Agreement, which was the subject matter of the prior representation. Thus, the present client matter is the same as the matter on which Movius worked on for Coats.

(3) The Plaintiffs' interests are materially adverse to Coats' interest, because Movius and his Plaintiff clients are suing Coats. And,

(4) Coats has not consented to Movius' representing Plaintiff after consultation.

In light of these obvious and indisputable facts, Rule 1.9(a) mandates disqualification. *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D.Del. 2009); *Tolliver v. Trinity Par. Found.*, 2016 WL 4071954 at *2 (D.Del. 2016).

### B. **Movius And His Firm Must Be Disqualified Under Model Rule 3.7**

Movius must additionally and alternatively be disqualified, because he will be a witness in this action, and Rule 3.7 of the Model Rules of Professional Conduct of the American Bar Association prohibits his appearance as both lawyer and as witness. Model Rule 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

(Rule 3.7).

Movius is a central actor with respect to the various claims by Plaintiffs that Coats committed fraud, or is otherwise liable for failing to disclose information during the preparation and execution of the Purchase Agreement. Movius will be called to testify about what he had discussed with the owners of HMR, with the sellers of the Hydrogen Technology, and particularly what he knew about the agreements that he cited in the Purchase Agreement which demonstrably contradict the averments of the Complaint that he drafted. Even if Coats were to have erred in his belief that Movius, and the other Plaintiffs had been well-advised and knew of Coats' relationship with the Hydrogen Technology sellers, the agreements that Movius referenced in the Purchase Agreement at ¶ 5.2 clearly informed Movius about IBKE (Wyo.), and necessarily establish that Movius knew, or at least should have known, of the facts the Complaint alleges were not disclosed to the Plaintiffs. Thus, if somehow it could be established – however unlikely – that the Plaintiffs did not know about Coats' relationship with the sellers, then it

would have been Movius who had failed to disclose the information to the Plaintiffs, when he should have done so.

In all events, it cannot be challenged or disputed that Movius is a critical witness, and Rule 3.7 prohibits Movius and his firm from acting as counsel in this case.

### C. Coats Did Not Waive Conflict and There Was No Informed Consent

The prohibitions of Rule 1.9(a) may be waived, but only upon "informed consent." Coats did not waive his rights to preclude Movius and his firm from representing the Plaintiffs in this action where Movius and the Plaintiffs are alleging that Coats committed fraud. (Coats Decl. ¶ 31).

Further, even if somehow Movius could argue that there was a waiver, neither Movius, his firm nor Plaintiffs can show "informed consent." "Informed consent" means

> the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

(Model Rules of Professional Conduct of the American Bar Association Rule 1.0(e)).

### CONCLUSION

On the basis of the foregoing analysis of fact and law, Coats respectfully requests that his motion to disqualify be granted.

Dated: August 22, 2016                             Respectfully submitted,

*/s/ George Pazuniak*
George Pazuniak (No. 478)
O'KELLY & ERNST, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
gp@del-iplaw.com

*Attorneys for Attorneys for Defendant Tracy Coats*