# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **HYDROGEN MASTER RIGHTS, LTD., CARL LE SOUEF and PRAVANSU MOHANTY, PH.D.,**<br><br>             **Plaintiffs,**<br><br>       **v.**<br><br>**DEAN WESTON, ENGINEERING INTERESTS, LLC, PAUL DAVID MANOS, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, TRACY COATS, and THE CLIENT IS EVERYTHING, LTD.,**<br><br>             **Defendants.** | **Case No. 1:16-cv-00474-RGA** |

## OPENING BRIEF BY DEFENDANT PAUL DAVID MANOS
## IN SUPPORT OF HIS MOTION TO DISMISS
## THE AMENDED COMPLAINT

Dated: September 30, 2016

George Pazuniak (DE Bar No. 478)
O'Kelly & Ernst, LLC
901 N. Market Street
Suite 1000
Wilmington, Delaware 19801
(302) 478-4230
gp@del-iplaw.com

*Attorneys for Defendant Paul David Manos*

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING ................................................................... 1

SUMMARY OF ARGUMENT .............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.   THE TECHNOLOGY AND EARLY DEVELOPMENT ..................................................... 2
    B.   HMR IS FORMED AND PURCHASES THE HYDROGEN TECHNOLOGY ....................... 4
    C.   MOHANTY KNEW WESTON WAS MAKING THE "SECRET FORMULA" ................... 4
    D.   DAVID MOVIUS ASSERTS BREACH OF CONTRACT AND FRAUD IN MARCH 2012 ................. 6
    E.   WESTON ACQUIRES THE SELLERS' INTEREST IN THE PURCHASE AGREEMENT ..................... 7
    F.   ALLEGED "PARTNERSHIP" ...................................................................................... 7

LEGAL STANDARDS ........................................................................................................... 8

    A.   RULE 12(B)(1) ....................................................................................................... 8
    B.   RULE 12(B)(6) ....................................................................................................... 9
    C.   RULE 12(D) AND RULE 56 ................................................................................... 10

ARGUMENT ........................................................................................................................ 11

    A.   COUNTS II, IV, VI-VIII, XXV AND XXX-XXXI SHOULD BE DISMISSED ..................... 11
        1.   *Manos Owed No Duty to the Individual Plaintiffs or to "the Partnership"* ................. 11
        2.   *Le Souef and Mohanty Cannot Sue as Owners of HMR* ................................ 13
        3.   *Plaintiffs Have Not Plausibly Pled Any "Partnership"* ............................. 14
    B.   COUNTS I-IX AGAINST MANOS ARE BARRED BY THE STATUTE OF LIMITATIONS ............. 14
    C.   COUNT XXV FOR TRADE SECRET MISAPPROPRIATION SHOULD BE DISMISSED ................. 17
    D.   COUNTS XXX AND XXXI FOR CONSPIRACY AND ABETTING SHOULD BE DISMISSED ....... 18
    E.   COUNT XXXII FOR INDEMNITY SHOULD BE DISMISSED ...................................... 19

CONCLUSION ..................................................................................................................... 19

# TABLE OF CITATIONS

## CASES

*Agostino v. Hicks,*

845 A.2d 1110 (Del.Ch. 2004) ................................................................. 14

*AM Gen. Holdings LLC v. The Renco Grp., Inc.,*

2016 WL 4440476 (Del.Ch. 2016) ........................................................... 17

*Bell Atl. Corp. v. Twombly,*

550 U.S. 544 (2007) .................................................................................. 9

*Bruni v. City of Pittsburgh,*

824 F.3d 353 (3d Cir. 2016) ..................................................................... 10

*Charlton v. C.I.R.,*

2015 WL 1909759 (3d Cir. 2015) ............................................................. 8

*Chase Bank USA N.A. v. Consumer Law Ctr. of DelRay Beach LLC,*

2015 WL 4556650 (D.Del. 2015) ............................................................. 18

*Citigroup Inc. v. AHW Inv. P'ship,*

2016 WL 2994902 (Del. 2016) ................................................................. 14

*Constitution Party of Pa. v. Aichele,*

757 F.3d 347 (3d Cir. 2014) ..................................................................... 8

*Cornell Glasgow, LLC v. La Grange Properties, LLC,*

2012 WL 2106945 (Del.Super. 2012) ....................................................... 19

*Davis v. Abington Mem'l Hosp.,*

765 F.3d 236 (3d Cir. 2014) ..................................................................... 9

*Ecotone Farm LLC v. Ward,*

639 F. App'x 118 (3d Cir. 2016) ........................................................................................... 10

*Fike v. Ruger*,

754 A.2d 254 (Del.Ch. 1999), <u>aff'd</u>, 752 A.2d 112 (Del. 2000 ................................................ 17

*Gotha v. United States*,

115 F.3d 176 (3d Cir. 1997)..................................................................................................... 9

*In re Asbestos Prod. Liab. Litig. (No. VI)*,

822 F.3d 125 (3d Cir. 2016)................................................................................................... 11

*In re Cencom Cable Income Partners*,

2000 WL 130629 (Del.Ch. 2000) ........................................................................................... 14

*Kehr Packages, Inc. v. Fidelcor, Inc.*,

926 F.2d 1406 (3d Cir. 1991)................................................................................................... 9

*Kuroda v. SPJS Hldgs., L.L.C.*,

971 A.2d 872 (Del.Ch. 2009)................................................................................................. 18

*Lunn v. Prudential Ins. Co. of Am.*,

283 F. App'x 940 (3d Cir. 2008) ........................................................................................... 10

*Mortensen v. First Fed. Sav. and Loan Ass'n*,

549 F.2d 884 (3d Cir. 1977)..................................................................................................... 9

*Norfolk S. Ry. Co. v. Basell USA Inc.*,

512 F.3d 86 (3d Cir.2008)...................................................................................................... 11

*Nutt v. A.C. & S. Co.*,

517 A.2d 690 (Del.Super. 1986)............................................................................................ 18

*Oneida Motor Freight, Inc. v. United Jersey Bank*,

848 F.2d 414 (3d Cir. 1988).................................................................................................. 10

*Oshiver v. Levin, Fishbein, Sedran & Berman*,

38 F.3d 1380 (3d Cir. 1994) ................................................................................. 10

*Prowel v. Wise Bus. Forms, Inc.*,

579 F.3d 285 (3d Cir.2009) ................................................................................. 11

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,

845 A.2d 1031 (Del. 2004) ................................................................................. 14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,

2016 WL 4373698 (D. Del. 2016) ....................................................................... 10

## STATUTES

10 Del. C. § 8106 ................................................................................................. 14

## OTHER AUTHORITIES

5C Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ..................................... 10

## RULES

Fed.R.Civ.P. Rule 12(d) ...................................................................................... 10

Federal Rules of Civil Procedure Rule 12(b)(1) ......................................................... 1, 8

Federal Rules of Civil Procedure Rule 12(b)(2) ........................................................... 1

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................... 1, 8, 9, 10

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Hydrogen Master Rights, Ltd. ("HMR"), Carl le Souef ("le Souef ") and

Pravansu Mohanty ("Mohanty") originally filed this action on June 22, 2016, against Defendants

Tracy Coats ("Coats"), The Client is Everything, Ltd. ("IBKE"), Dean Weston ("Weston"),

Engineering Interests, LLC ("Engineering"), Paul David Manos ("Manos") and two Nevada

Intellectual property trusts ("Significan Trusts").

On August 22, 2016, Coats and IBKE filed a motion to dismiss the original complaint as

to them (D.I. 13, 14), and also filed a motion to disqualify David T. Movius as counsel for the

Plaintiffs.  (D.I. 15, 16).  The parties thereafter stipulated that Plaintiff could file an amended

complaint, to which the Defendants would respond.  (D.I. 21).  Plaintiffs filed an Amended

Complaint on September 19, 2016.  (D.I. 22; hereafter "Complaint").  The Complaint presents

thirty-two separate Counts.  This is the opening brief of Defendant Paul David Manos ("Manos")

in support of his motion pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6), to dismiss the

Amended Complaint (D.I. 22) in this action ("Complaint"), and under Fed.R.Civ.P. Rules 12(d)

and 56 for partial summary judgment.

## SUMMARY OF ARGUMENT

Plaintiffs filed the Complaint asserting thirteen (13) counts against Manos.  All of the

asserted Counts relate, directly or indirectly, to the so-called Purchase Agreement, by which

Manos sold his rights in Hydrogen Technology to Defendant HMR in December 2011.

Plaintiffs' claims are entirely without any legal merit.

No Subject Matter Jurisdiction:  Of the thirteen Counts asserted against Manos, eight

Counts are by Defendants le Souef and Mohanty who bring action "both as individuals and on

behalf of the Partnership," in connection with the Purchase Agreement.  However, the parties to

the Purchase Agreement were HMR and Manos (and the other Sellers).  Neither le Souef nor

Mohanty were parties to the Purchase Agreement, either as individuals or on behalf of any alleged Partnership.  Le Souef and Mohanty are strangers who have no right of action against Manos and have not plausibly pled any duty owed by Manos to them.

Statute of Limitations:  Even if the individual Plaintiffs had a right of action, all but three of the Counts asserted against Manos are barred by Delaware's three-year statute of limitations.[1] The Complaint pleads only alleged causes of action that arose more than three years prior to the filing of the Complaint.  Indeed, Plaintiffs and their counsel, David Movius, had threatened to bring suit on the very matter sued upon here as early as March 2012, or more than four years before this action was filed.  The parties had agreed to toll the statute of limitations, but the tolling extension expired more than three years before this action was filed.  Thus, all claims against Manos must be dismissed on the basis of the statute of limitations.

## STATEMENT OF FACTS

Although Plaintiffs' Amended Complaint is innocent of any material relationship to reality, Rule 12(b) requires that Plaintiffs' well-pleaded factual pleadings be accepted as true. The following, nevertheless, is a short factual background to place in some perspective the issues being presented by the Complaint, as well as to support Manos' reliance on Rules 12(d) and 56 to support dismissal of certain Counts.

### A.  The Technology and Early Development

Manos is the inventor of the "Hydrogen Technology" identified in the Complaint. (D.I. 22 at ¶¶ 18, 21).  A key element of the Hydrogen Technology is an electrolyte liquid that could be used for multiple purposes.  To develop the technology in the 2009-10 time period, Manos

---

[1] The only Counts not subject to the statute of limitations are the meritless "civil conspiracy" and "aiding and abetting" Counts XXX and XXXI, which should otherwise be dismissed for failure to state any cause of action.

engaged several individuals, including:

Non-party Bernard Picot, a resident of California, who was basically a business person. As stated in the Complaint, Manos and Picot formed DBHS LLC, a Nevada limited liability company ("DBHS"), in 2009 to, among other things, facilitate the development of, and attract investment in, the Hydrogen Technology. (D.I. 22 at ¶ 19)

Plaintiff Dr. Pravansu S. Mohanty, a professor of Engineering at University of Michigan, whose expertise was in coatings and who knew nothing of fluids, but managed a laboratory at the University and at a separate private company, who could assist in the technology's development;

Defendant Dean Weston, a Michigan engineer, who specialized in the auto industry and led the development of the Hydrogen Technology in automobiles. And

Defendant Tracy Coats, who, as pled in the Complaint, was retained to find additional investors to fund development of the Hydrogen Technology. (D.I. 22 at ¶¶ 24-27). Coats also contributed his own funds as an investment in the Hydrogen Technology. Coats also formed a Wyoming company, Defendant The Client is Everything, Ltd. ("IBKE") on October 8, 2009. (A-054).[2]

In September 2010, Coats travelled to Australia, where he met with a business investor, Rodney Adler ("Adler"). Adler became interested in the project, and, in December, 2010, also introduced Coats to another Australian investor, Plaintiff Carl le Souef ("le Souef"). Coats began and continued through 2011 the long process of first interesting Adler and le Souef in the technology, and then negotiating an investment from Adler and le Souef. In the meantime, Coats

---

[2] To avoid burdening the Court with multiple filings of the same exhibits, the Defendants have compiled the various agreements and other documents cited by the Defendants in their respective Opening Briefs in a single joint Appendix, which is concurrently being filed. The pages of the Appendix are referenced as "A-" followed by the page number of the Appendix.

invested his own funds in creating a marketing and investment presentation for prospective investors and obtained funding for the project from other sources. Coats also assisted in creating a series of companies for future commercialization. The companies included Defendants Significan Global Energy Intellectual Property Trust and Significan Australia Energy Intellectual Property Trust, which were off public record entities to whom Manos and Picot deeded their rights in the Hydrogen Technology. On the technical side, Manos, Weston and Mohanty continued development of the technology.

## B. HMR Is Formed and Purchases the Hydrogen Technology

As pled in the Complaint, about December 12, 2011, after months of due diligence and extensive negotiations, an "Agreement For Sale Of Certain Assets" ("Purchase Agreement") was executed. (D.I. 22 at ¶61). The relevant portions of the Purchase Agreement are of record in the Appendix. (A-001-053). Manos, Picot and the two Significan trusts ("Sellers") sold their interest in the Hydrogen Technology to a newly-created entity, Plaintiff Hydrogen Master Rights, Ltd., a Delaware corporation ("HMR"). The equity of HMR was equally shared by le Souef, who was the company President, Adler, Mohanty and Coats. The Purchase Agreement was written by an attorney for HMR, David T. Movius, and by le Souef.

## C. Mohanty Knew Weston Was Making the "Secret Formula"

After the Purchase Agreement was executed, the Complaint pleads that "Weston contacted Dr. Mohanty," and "claimed to know the Secret Formula" and "at Dr. Mohanty's request, Weston confirmed his knowledge of the Secret Formula by correctly telling it to Dr. Mohanty." (D.I. 22 at ¶¶ 71-72). Plaintiffs claim that Weston's knowledge of the "Secret Formula" was not known to HMR, Mohanty or the alleged "Partnership" at the time of the Purchase Agreement.

In fact, Weston had been deeply involved in the Hydrogen Technology development

process from the outset.  Weston had invested not only his time, but had also invested his own money in the development of Hydrogen Technology, and had obtained other investors for the project prior to Adler and le Souef entering the scene.

Weston did know the "Secret Formula," but it could not haven a surprise to the Plaintiffs. This was because Weston had been deeply working with Plaintiff Mohanty and had much the same information as Mohanty.  In fact, Weston was the person who had been formulating the "Secret Formula" for Mohanty to use in his experiments, and, thus, obviously have had to know the "Secret Formula."  See, for example, the emails between Mohanty and Weston, which demonstrate that Mohanty knew that Weston was formulating the "Secret Formula," or what they had called "juju powder" and "30 amp fluid."[3] (A-061-65).  If le Souef or others associated with HMR or the "partnership" did not know about Weston or his knowledge of the "Secret formula," it was only because Mohanty had not informed them.

Weston, however, had never disclosed or misused his knowledge of the "Secret Formula."  Weston had a written agreement with DBHS to maintain the confidentiality of all his knowledge of Hydrogen Technology.  (A-055-060).[4]  Plaintiffs have not pled, and cannot plead, that Weston had ever disclosed the "Secret Formula" to any other person.  Weston also had never used his knowledge of the "Secret Formula" for any purpose other than advancing the

---

[3]  All persons involved with the Hydrogen Technology recognized the need for confidentiality, and, thus, the fluid was never described in any writing between the parties.  Weston formulated the fluid in different concentrations which were referenced as, for example, "30 amp" and "60 amp" fluids.  Weston had to make the formulations, because Manos lived in Nevada, and it was Weston and Mohanty that were performing all experiments and doing the development in Michigan, where they both resided and worked.

[4]  The confidentiality agreement was signed with DBHS LLC, a Nevada company.  As pled in the Complaint, Manos and Picot had been developing the Hydrogen Technology under the DBHS LLC umbrella of (D.I. 22 at ¶ 19).

development of Hydrogen Technology.

### D.  David Movius Asserts Breach of Contract and Fraud in March 2012

After Weston learned that Manos and Picot had sold the Hydrogen Technology to HMR, Weston questioned Manos, Picot and Mohanty about his being squeezed out of the process, and not sharing in any benefit of the sale of the technology to HMR, even though Weston had contributed years of time and money to the development of the Hydrogen Technology.  Weston and Mohanty had worked together for years jointly developing the Hydrogen Technology, and, thus, Weston naturally turned to Mohanty seeking an explanation of the transaction and how it was that he was the only person involved in the development of the technology that neither shared in the benefit of the Purchase Agreement nor was part of HMR.  Mohanty knew that Weston had been highly involved in the development and had contributed both time and money to the project, and had brought other investors into the process to support the development.  In the course of the discussions between Weston and Mohanty, the "Secret Formula" was discussed.

As noted above, Weston's knowledge of the "Secret Formula" was not new information to Mohanty, but Mohanty did not want to address the issue, and turned the matter over to HMR's counsel, David Movius.  David Movius immediately had le Souef assert to Manos and Picot that they had breached certain representations in the Purchase Agreement, and, thus, had defrauded HMR.  (A-069-071).  Thereafter, Movius had a number of communications asserting both breach and fraud by the Sellers.  (A-072-084).

Moreover, the Complaint pleads that "HMR and the Sellers entered into a tolling agreement." (D.I. 22 at ¶ 83).  The original Tolling Agreement and its two extensions are in the record as A-085-092).  The most recent extension of the Tolling Agreement expired by its own terms on April 1, 2013, or more than three years before this action was filed.  (A-092).  No

resolution of any kind was reached, but Movius and his clients appeared to drop the entire subject until the filing of the present action more than four years after the dispute first arose.

### E.  Weston Acquires the Sellers' Interest in the Purchase Agreement

In the meantime, Weston maintained his claims that he was entitled to a share of the "Seller's" benefit under the Purchase Agreement in view of his financial and technical contributions to the Hydrogen Technology, and what he viewed as the Sellers' oral promises to him.  The dispute resulted in a declaratory judgment action being filed by Manos and Picot against Weston in a California federal court.  That suit was dismissed for lack of personal jurisdiction.[5]

After the declaratory judgment suit was dismissed, and as stated in the Complaint, Weston and the Sellers resolved their dispute by an agreement dated September 17, 2015, by which all the Sellers assigned to Weston their entire right and interest under the Purchase Agreement, as well as any other rights they might have in the Hydrogen Technology.  (D.I. 22 at ¶90; A-132-140).  Thus, as of September 17, 2015, Weston has "stood in the shoes" of Manos, Picot and the Significan Trusts with respect to the Purchase Agreement.

### F.  Alleged "Partnership"

The Complaint alleges the continued existence of a "Partnership" that was formed in 2010 and extend through the present.  (D.I. 22 at ¶ 28).  Most of the thirty-two Counts in the Complaint are being asserted by le Souef and Mohanty individually and on behalf of the alleged "Partnership."

---

[5]  The legal proceedings are set forth in *Bernard Picot et al. v Dean D. Weston*, 780 F.3d 1206 (9th Cir. 2015).

The "Partnership" is not a legal entity, and there is no evidence that the "Partnership" had ever presented itself as a distinct legal entity, such as by entering into agreements, signing documents, filing tax returns or the like.  To the extent that some informal association may have existed among the persons who became the shareholders of HMR to create and effectuate the acquisition of the Hydrogen Technology, that technology was admittedly acquired solely by HMR, and HMR is the sole owner of all relevant Hydrogen Technology. (D.I. 22 at ¶ 18; A-001-53).  Thus, any "Partnership" that might have existed to acquire the Hydrogen Technology, that partnership was folded or merged into HMR upon HMR's acquisition of the business that the partnership had been formed to acquire.

Further, neither le Souef, Mohanty nor any alleged "Partnership" are parties to any of the agreements that are the subject of the Complaint, and, in fact, the agreements preclude any of them from claiming rights or benefits under the agreements.  Le Souef and Mohanty have not pled their standing to bring any action against any of the Defendants.

Any other facts necessary for the consideration of this motion will be discussed in connection with the specific arguments.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Dismissal of an action under Fed.R.Civ.P. Rule 12(b)(1) for "lack of subject matter jurisdiction" may be treated as either a facial or factual challenge. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014); *Charlton v. C.I.R.*, 2015 WL 1909759 at *2 (3d Cir. 2015).  In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," and the standards relevant to Rule 12(b)(6) apply. (*Id.* at 358).  Dismissal is proper when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or ... is wholly insubstantial and frivolous.'"

In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B.  Rule 12(b)(6)

Fed.R.Civ.P. Rule 12(b)(6) provides that claims must be dismissed if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("Twombly"). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Iqbal") (quoting *Twombly*, 550 U.S. at 570). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Though "detailed factual allegations" are not required, only "well-pleaded factual allegations" are considered, and conclusory allegations, "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are insufficient to survive a Rule 12(b)(6) motion. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014).

The Court may take judicial notice of matters of public record, such as prior court

proceedings and authentic documents upon which the complaint relies, without converting the Rule 12(b)(6) motion into one for summary judgment. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 2016 WL 4373698 at *1 (D. Del. 2016) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) and *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)). The court must "draw on its judicial experience and common sense" to make the determination whether plaintiff failed to state a claim upon which relief can be granted. (*Id.*)  Finally, "It is possible for plaintiffs to plead themselves out of court." *Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 124–25 (3d Cir. 2016).

### C. <u>Rule 12(d) and Rule 56</u>

Pursuant to Fed.R.Civ.P. Rule 12(d), if other "matters outside the pleadings are presented to and not excluded by the court," the motion to dismiss must be treated as one for summary judgment under Fed.R.Civ.P. Rule 56.  When that occurs, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. "The element that triggers the conversion [from a Rule 12(b)(6) dismissal motion into a Rule 56 motion for summary judgment] is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material."  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360–61 (3d Cir. 2016) (citing 5C Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1366 (3d ed.)).  "The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond." (*Id.*)

Statute of Limitations defense may be raised under Rules 12(d) and 56 at the pleading stage.  *Lunn v. Prudential Ins. Co. of Am.*, 283 F. App'x 940, 942 (3d Cir. 2008).

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law. In making this determination, the Court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir.2009) (internal quotation marks and citations omitted) (quoting *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir.2008)). The movant bears the burden of establishing the undisputed facts and entitlement to judgment as a matter of law. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 135 (3d Cir. 2016).

## ARGUMENT

### A. Counts II, IV, VI-VIII, XXV and XXX-XXXI Should Be Dismissed

Plaintiffs have pled thirteen Counts against Manos. Seven Counts, II, IV, VI-VIII, XXV, XXX and XXXI, are by le Souef and Mohanty who are suing Manos "both as individuals and on behalf of the Partnership." (D.I. 22 at ¶¶ 154, 169, 178, 191, 195, 313, 340, 348). Yet, Plaintiffs never identify any duty that Manos owed to the individual Plaintiffs or to any alleged "Partnership," and do not explain or support any standing to sue Manos. Therefore, le Souef and Mohanty state no cause of action against Manos and the Court has no subject matter jurisdiction as to these individual or "partnership" claims for reasons detailed below.

#### 1. Manos Owed No Duty to the Individual Plaintiffs or to "the Partnership"

Counts II, IV, VI-VIII, XXV, XXX and XXXI are based on the common core that Manos and the other Sellers had misrepresented in the Purchase Agreement that

> they had not disclosed the Secret Formula to anyone other than Dr. Mohanty, that no third party other than the Sellers ever had any right, title or interest in or to the Hydrogen Technology, that the Sellers had good and marketable title to the Hydrogen Technology, that no third party claimed or contested their exclusive ownership of the Hydrogen Technology, and that they would not disclose the terms and conditions of the Purchase Agreement without HMR's consent.

(D.I. 22 at ¶ 155). Plaintiffs also restated the same allegation by pleading that Sellers had:

- 11 -

> falsely represented …, both prior to entering into the Purchase Agreement and
> then again to HMR in the Purchase Agreement, that they had sole and exclusive
> ownership of the Hydrogen Technology, that they had maintained the Hydrogen
> Technology as confidential, and that no third party claimed or contested their
> exclusive ownership of the Hydrogen Technology.

(D.I. 22 at ¶ 179).[6]

Plaintiffs, however, never plead any facts that can plausibly suggest that Manos had ever made representations to le Souef, Mohanty or the alleged "Partnership." The Complaint alleges only that Manos and the other Sellers had misrepresented facts or omitted disclosing facts in the "Representation" portion of the Purchase Agreement. (A-012-16). But, the Purchase Agreement was signed by, and involved only, the Sellers and HMR. (A-001-53). Neither the individual Plaintiffs nor any "Partnership" is mentioned anywhere in the Purchase Agreement.

Not only are the individual Plaintiffs and the Partnership not identified, the Purchase Agreement affirmatively prohibits Plaintiffs from claiming any rights under, or related to, the Purchase Agreement:

> No Third Party Beneficiaries.
>
> Nothing in this AGREEMENT is intended to confer on any person or entity, other
> than the parties hereto, any rights, benefits or remedies under or by reason of this
> AGREEMENT, and there are no intended third-party beneficiaries to this
> AGREEMENT.

(A-020 at § 29). And, further, the Purchase Agreement includes a specific and detailed integration clause that prohibits Plaintiffs from asserting or relying upon any representations or statements that are not incorporated in the Purchase Agreement:

> Entire Agreement.
>
> 31.1 Other than this AGREEMENT, there are no agreements, whether written,

---

[6] The same allegations are worded somewhat differently in the other Counts, and sometimes the Plaintiffs simply repeat the mantra that Manos had "engag[ed] in the conduct alleged herein." (See, for example, D.I. 22 at ¶¶ 170, 192, 197, 316).

oral, or implied, pertaining to the subject matter hereof.

31.2 This AGREEMENT supersedes all prior and contemporaneous oral or written representations, warranties, and agreements covering the subject matter hereof not expressly contained herein.

31.3 Any amendment or modification to this AGREEMENT must be consented to in writing by all parties hereto to be effective for any purpose.

31.4 This AGREEMENT supersedes all other prior agreements by and between all of the parties whether verbal or in writing.

(A-020 at § 31).

Thus, the Purchase Agreement, which was written by David Movius, as HMR's counsel, manifestly and unambiguously precludes le Souef and Mohanty from pleading any right related to Hydrogen Technology as individuals or as "Partners."

## 2. Le Souef and Mohanty Cannot Sue as Owners of HMR

Le Souef and Mohanty have no standing to sue Manos or anyone else as the beneficial owners of HMR, or as the persons actually aggrieved by any alleged fraud in connection with the purchase of the Hydrogen Technology.  Corporations have an existence separate and distinct from that of their shareholders, and an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation.  Having created the legal HMR entity, for their own purposes and reasons, to acquire and hold the Hydrogen Technology, the individuals and the alleged "Partnership" lost any rights that they may have had with respect to that technology.  The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue.[7]  Yet, all the Counts asserted by le Souef and Mohanty

---

[7]  See, e.g. *Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 9437530 at *2 (D.Del. 2015) ("The issue of whether a claim is direct or derivative 'must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?' '"A direct claim seeks relief for injuries that fall

- 13 -

either directly or indirectly involve harm to Hydrogen Technology, which is an HMR asset.

### 3.  Plaintiffs Have Not Plausibly Pled Any "Partnership"

Manos is not aware of any alleged "Partnership" as pled in the Complaint.  Rather than burdening the Court with an argument which is fully presented by one of the other Defendants, Manos incorporates by reference the arguments made in Defendant Coats' Opening Brief with respect to the lack of right for le Souef and Mohanty to proceed as alleged partners of a "Partnership."

Having failed to set forth any duty by Manos to the individual Plaintiffs, and having failed to plead any misrepresentation or withholding of information other than in the representations in the Purchase Agreement, neither le Souef nor Mohanty, individually or on behalf of an alleged "Partnership" have stated a cause of action against Manos or established subject matter jurisdiction by the Court.

### B.  Counts I-IX Against Manos Are Barred by the Statute of Limitations

Pursuant to Fed.R.Civ.P. Rules 12(d) and 56, Manos requests summary judgment dismissing all the claims alleged against him in Counts I-IX, because there is no genuine dispute as to any material fact and Manos is entitled to judgment as a matter of law, because Counts I-IX are barred by Delaware's 3-year Statute of Limitations.  10 Del. C. § 8106.

---

distinctly upon the individual participants in the business association or involve the participants' contractual rights.' A derivative claim, however, states an injury against the business association as a whole, and any relief flowing to the individual participants only comes to them indirectly, by way of their pro-rata share in the association.") (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004); *In re Cencom Cable Income Partners*, 2000 WL 130629 at *3 (Del.Ch. 2000)); *Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del.Ch. 2004) ("In other words, the inquiry should focus on whether an injury is suffered by the shareholder that is not dependent on a prior injury to the corporation."); *Citigroup Inc. v. AHW Inv. P'ship*, 2016 WL 2994902 at *9 (Del. 2016).

Thus, for example, HMR alleges in Count I that

> Manos, Significan and Significan AUS (the "Defendant Sellers") materially breached, and continue to breach, the Purchase Agreement by, among other acts and omissions alleged herein, including falsely representing and warranting, among other things, that they had not disclosed the Secret Formula to anyone other than Dr. Mohanty, that (other than the Assumed Agreements, none of which concerns or relates to Weston) no third party other than the Sellers ever had any right, title or interest in or to the Hydrogen Technology, that the Sellers had good and marketable title to the Hydrogen Technology, and that no third party claimed or contested their exclusive ownership of the Hydrogen Technology.

(D.I. 22 at ¶ 143).  All Plaintiffs' claims against Manos in Counts I-IX are based on these same allegations or immaterial variations of the above.  (See p. 11, *supra*; and D.I. 22 at ¶¶ 164, 175, 356).

Yet, HMR, le Souef, Mohanty and HMR's lawyer, David Movius, had made these very same allegations against Manos by letter of March 7, 2012, which asserted:

> [HMR] has learned that, contrary to your express representations and warranties in our December 12, 2011, Agreement …, the specific electrolyte chemistry was previously disclosed to Mr Dean Weston and other third parties.
>
> In the Agreement, Sellers unconditionally warranted that they had not disclosed any of the trade secret technology HMR purchased to anyone other than Dr Mohanty. That warranty specifically covers "the identity of the electrolyte(s) for and chemistry relating to the proprietary fluids, proprietary electrolyte concentrates and proprietary commercial fluids and fuels included as a part of the ASSETS." Moreover, Sellers identified Mr Weston by name on Schedule 15.5 of the Agreement as someone to whom they had not disclosed the electrolyte chemistry. Thus, there can be no legitimate question that the disclosures to Mr Weston and others constitute serious breaches of the Agreement that require your immediate attention.

(A-069-71).  HMR also asserted that it "could immediately seek relief from a court process." (*id.*)

The above communication was followed by a series of further communications with David Movius over the next few months.  (A-072-84).  Thus, on March 26, 2012, Movius wrote that

> Mr. Manos's and Mr. Picot's acts and omissions constitute material breaches of their obligations to HMR. At a minimum, their representations, warranties and certifications were knowingly false when they executed the Agreement, and further constitute fraud under controlling Delaware law.  See *Abry Partners V,*

> *L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1061-64 (Del. Ch. 2006).  HMR
> therefore is entitled to recover at least the difference in the value of the assets that
> Mr. Manos and Mr. Picot promised to sell and the actual value of the assets HMR
> received, along with punitive damages and its attorneys' fees and costs. See
> *Duncan v. Theratx*, 775 A.2d 1019, 1022 (Del. 2001); *Reiver v. Murdoch &*
> *Walsh, P.C.*, 625 F.Supp. 998, 1014 (D. Del. 1985).

(A-074).

By letter of January 21, 2013, Movius attempted to extract concessions and reduced

payments under the Purchase Agreement.  (A-080-82).  Movius also threatened prompt legal

action:

> If … an acceptable resolution cannot be reached, HMR will not hesitate to pursue
> all of its rights and remedies, which include recovery of the Initial Payment under
> the Asset Agreement, its legal fees and expenses to date and its development costs
> relating to the electrolyte formula. I also have been informed that IBKE would
> strongly consider seeking similar relief for the amounts it paid for the Australia
> and New Zealand territorial rights.

(A-082)

Recognizing that Delaware's 3-year limitations period was running, the parties also entered

into a Tolling Agreement that was twice extended.  (A-085-92)  By its own terms, the last extension

expired April 1, 2013. (A-092).  This action was filed on June 22, 2016, or well over four years

after the dispute first arose, and well over three years after the Tolling Agreement, as extended,

had long expired.

Given that HMR, le Souef, Mohanty and Movius had repeatedly asserted that Manos had

breached contract and committed fraud against HMR for exactly the same reasons as now pled in

the Complaint, there can be no question that Delaware's three year statute of limitations bars the

present action.[8]

---

[8]  There is no pleading, and can be none, that Manos owed any fiduciary duty to Plaintiffs.
Thus, all the claims against Manos are in law.  However, even if an equitable claims could possibly
be made against Manos by any one or more of the Plaintiffs, Delaware law is that "equity follows
the law and, in appropriate circumstances, applies the statute of limitations by analogy, denying

**C.   <u>Count XXV for Trade Secret Misappropriation Should be Dismissed</u>**

Count XXV pleads "Trade Secret Misappropriation Under Ohio, Michigan and Delaware Law." Plaintiffs specifically allege that Manos misappropriated Plaintiffs' trade secrets by assigning the Purchase Agreement to Weston:

> The Defendant Sellers misappropriated HMR's trade secrets by, among other acts and omissions, disclosing the terms and conditions of the Purchase Agreement and other information regarding the Hydrogen Technology to Weston without HMR's express or implied consent in violation of their duty to maintain their secrecy and limit their use.

(D.I. 22 at ¶ 316).

The first problem with Plaintiff's allegation is that HMR and Movius in particular had specifically authorized Manos to disclose the Purchase Agreement and any related documents to Weston. (A-93-95). Movius' words were

> HMR does not object to Dean Weston having access to the HMR-related materials identified below under point number 2 (which include the HMR asset purchase agreement and the IBKE license agreement), provided that such materials are designated and maintained as "CONFIDENTIAL" …..

(A-93). There is no allegation, and can be none, that Manos' counsel or Weston failed to comply with the confidentiality restrictions specified in Movius' letter.

Secondly, the Purchase Agreement manifestly and specifically allowed Manos and the other Sellers to assign the Agreement to others without any obligation to seek HMR's approval or consent. For example, the Purchase Agreement specifically states that:

> This AGREEMENT shall inure to and bind the parties hereto and their successors, permitted assigns and legal representatives.

(A-020 at § 27). Moreover, the Purchase Agreement repeatedly refers to the Sellers' "assigns"

---

relief when claims are brought after the analogous statutory period." *AM Gen. Holdings LLC v. The Renco Grp., Inc.*, 2016 WL 4440476 at *7 (Del.Ch. 2016) (citing, *inter alia*, *Fike v. Ruger*, 754 A.2d 254, 260 (Del. 1999), <u>aff'd</u>, 752 A.2d 112 (Del. 2000)). Thus, the claims are barred even if the laches concept were applied.

of the Purchase Agreement.  (A-001, 017 at §§ 1.2, 2.2, 19).

The Purchase Agreement, and all its related covenants, assignments and agreements, were written by Movius.  Nowhere in any of those documents is there any requirement that Manos or any Seller seek HMR's consent to an assignment of the Agreement.

As a general commentary on Plaintiffs' pleadings, the Complaint pretends that Weston is a stranger to Hydrogen Technology, and that is clearly incorrect.  Weston had been working on developing the Hydrogen Technology from the outset and until Manos sold his rights to HMR. Weston had worked with Manos and Mohanty, and had much of the same information as were known to Manos and Mohanty. (See, for example, pp. 4-5, *supra*).

### D.  Counts XXX and XXXI for Conspiracy and Abetting Should be Dismissed

Counts XXX and XXXI make various egregious, but profoundly unsupported, allegations that Defendants have conspire to extort money from Plaintiffs, and that each has aided and abetted such alleged misconduct.  The Count fails to state a cause of action as a matter of law.

"Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong.  Thus, if plaintiff fails to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed." *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 892 (Del.Ch. 2009).  Under Delaware law, to prevail on a conspiracy claim, a plaintiff must prove the combination of two or more persons or entities for an unlawful purpose, or for accomplishing a lawful purpose by unlawful means, resulting in damages. See *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 694 (Del.Super. 1986). See also *Chase Bank USA N.A. v. Consumer Law Ctr. of DelRay Beach LLC*, 2015 WL 4556650 at *5 (D.Del. 2015) ("Civil conspiracy requires an underlying wrong which would be actionable absent the conspiracy; there is no independent action for civil conspiracy under Delaware law.")

"Like civil conspiracy, aiding and abetting is a derivative tort, there must be an actionable

underlying wrong to which the claim of aiding and abetting can attach." *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945 at *11 (Del.Super. 2012)..

Plaintiffs do not identify any underlying wrong. Plaintiffs merely allege that

> In the course of their conspiracy, Coats, Weston, Manos and Engineering Interests engaged in unlawful acts, including the wrongful acts set forth herein.

(D.I. 22 at ¶ 342).

Given that the causes of action of conspiracy and abetting required a combination of persons who perform an unlawful act, Plaintiffs must plead the specific unlawful acts that all the alleged conspirators conspired to do. It is insufficient to simply assert "the wrongful acts set forth herein," when none are set forth.

### E.  Count XXXII for Indemnity Should be Dismissed

Count XXXII seeks declaratory judgment claiming that an "actual controversy exists between HMR and the Defendant Sellers regarding whether the Defendant Sellers are obligated to indemnify HMR with respect to the claims asserted by Weston in the Michigan action and any counterclaims that Weston may assert in this action arising out of or relating to transactions entered into by the Defendant Sellers concerning the Hydrogen Technology" a claim for indemnity." But, HMR needs to do more than just allege a controversy. HMR must plausibly plead the facts on the basis of which HMR assert that Manos has to indemnify HMR.

HMR has failed to state a cause of action.

### CONCLUSION

On the basis of the foregoing analysis of fact and law, Manos respectfully request that his motion to dismiss be granted.

 Dated: September 30, 2016                              Respectfully submitted,

_/s/ George Pazuniak_
George Pazuniak (DE Bar No. 478)
O'Kelly & Ernst, LLC
901 N. Market Street
Suite 1000
Wilmington, Delaware  19801
(302) 478-4230
gp@del-iplaw.com

_Attorneys for Attorneys for Defendant  Paul
David Manos_