# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **HYDROGEN MASTER RIGHTS, LTD., CARL LE SOUEF and PRAVANSU MOHANTY, PH.D.,** | |
| **Plaintiffs,** | **Case No. 1:16-cv-00474-RGA** |
| **v.** | |
| **DEAN WESTON, ENGINEERING INTERESTS, LLC, PAUL DAVID MANOS, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, TRACY COATS, and THE CLIENT IS EVERYTHING, LTD.,** | |
| **Defendants.** | |

## REPLY BRIEF BY DEFENDANT TRACY COATS
## IN SUPPORT OF HIS MOTION TO DISQUALIFY COUNSEL

Dated: October 3, 2016

George Pazuniak (No. 478)
O'KELLY & ERNST, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
sokelly@oeblegal.com
gp@del-iplaw.com
dmurray@oeblegal.com

*Attorneys for Defendants Tracy Coats*

## TABLE OF CONTENTS

**NATURE AND STAGE OF THE PROCEEDING** ..................................................... 1

**SUMMARY OF ARGUMENT** ............................................................................... 1

**ARGUMENT -- MOVIUS MUST BE DISQUALIFIED** .......................................... 2

    A.   COURT SHOULD AVOID ANY POSSIBILITY OF CONFLICT ...................................... 2

    B.   COATS WAS A CLIENT ................................................................................. 3

    C.   THIS LITIGATION IS DIRECTLY RELATED TO MOVIUS' REPRESENTATION OF COATS ........... 6

    D.   COATS DID NOT WAIVE CONFLICT AND THERE WAS NO INFORMED CONSENT ................. 7

    E.   MOVIUS AND HIS FIRM MUST BE DISQUALIFIED UNDER MODEL RULE 3.7 ....................... 9

**CONCLUSION** ..................................................................................................... 10

## TABLE OF CITATIONS

**CASES**

*Cardona v. General Motors Corp.*,

    942 F.Supp. 968 (D.N.J.1996) ................................................................... 3

*Del-Chapel Associates v. Ruger*,

    2000 WL 488562  (Del.Ch. 2000) .............................................................. 7

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*,

    142 F. Supp. 2d 579 (D. Del. 2001) ......................................................... 8

*Enzo Life Scis., Inc. v. Adipogen Corp.*,

    2013 WL 6138791 (D.Del. 2013) .............................................................. 2

*Gieder v. Waxman*,

    1983 WL 21397 (Del.Ch. 1983) ............................................................... 7

*In re Corn Derivatives Antitrust Litig.*,

    748 F.2d 157 (3d Cir.1984)................................................................... 2, 8

*In re Meridian Auto. Sys.-Composite Operations, Inc.*,

    340 B.R. 740 (Bankr. D. Del. 2006) ......................................................... 7

*INA Underwriters v. Nalibotsky*,

    594 F.Supp. 1199 (E.D.Pa.1984) .............................................................. 3

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,

    2011 WL 2692968 (D.Del. 2011)............................................................... 3

*SBC Interactive, Inc. v. Corp. Media Partners*,

1997 WL 770715 (Del.Ch. 1997) ............................................................................................... 3

**RULES**

Model Rules of Professional Conduct, Rule 1.9 ........................................................................ 2, 8

Model Rules of Professional conduct,  Rule 1.13 ........................................................................ 5

Model Rules of Professional Conduct,  Rule 1.7 ........................................................................ 8

Model Rules of Professional Conduct, Rule 3.7 ........................................................................ 9

Model Rules of Professional Conduct, Rule l.13 ........................................................................ 3

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Hydrogen Master Rights, Ltd. ("HMR"), Carl le Souef ("le Souef ") and

Pravansu Mohanty ("Mohanty") filed this action against numerous Defendants.  Defendant Tracy

Coats ("Coats") has now moved to disqualify David T. Movius ("Movius") from acting as

counsel on behalf of Plaintiffs, and this is Coats' reply brief of in support thereof.

## SUMMARY OF ARGUMENT

Plaintiffs' response to Coats' motion to disqualify Movius as counsel builds factual

fiction upon legal fiction.  Plaintiffs' entire argument rests on the argument that –

notwithstanding the actual words and terms of the Engagement Letter – Movius had been

retained by a "Partnership" and had no relationship with, or duties to, the clients who were

parties to the Engagement Letter.

But, the "Partnership" did not yet exist, and, even if it did, the Engagement Letter states

unequivocally that Coats and the other Owners were the joint clients.  Disqualification is

resolved on the basis of the Engagement Letter, if there is one, and there was one here.  That

Engagement Letter directly contradicts Plaintiffs' arguments.  In fact, Plaintiffs' response rests

on the false premise that their parol evidence can and should rewrite actual history and,

particularly, the actual Engagement Letter which Movius wrote and Coats signed.

Plaintiffs' false premises and legal arguments cannot overcome the plain facts that Coats

hired Movius as attorney for him and the other Owners, and shared all his confidences with

Movius.  Coats would never had done so if he knew that, when an potentially remunerative

opportunity arose, Movius would turn-around and accuse Coats of fraud in the very transactions

for which Coats hired Movius to represent him.

Further, the Complaint and Amended Complaint belie Plaintiffs' incredible assertion that

this matter is not related to Movius' representation.  Coats is accused of fraud arising from his

alleged failure to disclose information in the course of the sale of Hydrogen Technology from the "Sellers" (Paul David Manos, Bernard Picot and the Significan trusts) to HMR.  That entire transaction was handled by Movius and is the transaction for which Coats had hired Movius.

Further, Coats did not waive his rights or authorize Movius to accuse him of fraud.  The plain words of the waiver provision that Movius wrote and included in the Engagement Letter, and upon which Plaintiffs rely, actually say the opposite of what Plaintiffs and Movius argue.

Finally, Movius was admittedly deeply involved in the transaction that is now at issue, and where Plaintiffs are accusing Coats of fraud.  Movius admits that he is a person with personal factual knowledge of the events that are the basis of the Amended Complaint. Plaintiffs' assertion that Movius' involvement as a fact witness is speculative is controverted by Plaintiffs' own declarations and common sense, and is contrary to the Model Rules.

## ARGUMENT -- MOVIUS MUST BE DISQUALIFIED

### A.  Court Should Avoid Any Possibility of Conflict

Plaintiffs argue "a litigant's right to counsel of its choice" and that the Court should approach the motion "with careful scrutiny" as it is "disfavored." (D.I. 23 at p.9).  Those rules are applicable where there is a question as to the attorney-client relationship.  That is not this case.  As noted in the opening brief, and not challenged by Plaintiffs, Rule 1.9(a) of the Model Rules of Professional Conduct of the American Bar Association ("M.R.P.C.") "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir.1984).  "[T]he rule is important for the maintenance of public confidence in the integrity of the bar." (Id.)  Therefore, "any doubts which the court may have regarding the appropriateness of disqualification should be resolved in favor of disqualifying the former counsel and, thus, preserving the confidences of the former client." *Enzo Life Scis., Inc. v. Adipogen Corp.*, 2013 WL 6138791 at *2 (D.Del. 2013).

- 2 -

Thus, for example, "While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 2011 WL 2692968 at *5 (D.Del. 2011).[1]

## B. Coats Was a Client

Plaintiffs' argument that Coats was not Movius' client is based entirely on the proposition that Movius sole and exclusive client was an alleged "Partnership," and Coats was a mere cog in the "Partnership" deserving of individual consideration. Plaintiffs then cite M.R.P.C. Rule l.13(a) and *SBC Interactive, Inc. v. Corporate Media Partners* for the proposition that Coats has no rights.

But, the relationship between Movius and Coats is determined by the Engagement Letter, and not by Plaintiffs' *post hoc* rewrites and reformation of that Engagement Letter. Thus, *SBC Interactive* held that "whether an attorney-client relationship arises depends upon the facts and circumstances of the case" and "[n]ormally the most critical fact or circumstance is a formal agreement that the attorney giving the advice is or will be the lawyer for the party involved." *SBC Interactive, Inc. v. Corp. Media Partners*, 1997 WL 770715 at *4 (Del.Ch. 1997). Plaintiffs concede that "[w]hen, like here, there is a written engagement letter, it normally is the most critical evidence for determining whether an attorney-client relationship exists." (D.I. 23 at p. 11).

---

[1]  The case cited for the proposition cases in other jurisdictions within the Third Circuit, *Cardona v. General Motors Corp.*, 942 F.Supp. 968, 973 (D.N.J.1996); *INA Underwriters v. Nalibotsky*, 594 F.Supp. 1199, 1207 (E.D.Pa.1984); *Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408 at *7 (E.D.Pa. 2007).

The actual terms of that Engagement Letter contradicts every aspect of Plaintiffs' argument.  (D.I. 18-4, Engagement Letter).   Thus, Plaintiffs first misrepresent that the Engagement Letter "memorializes that the Partnership and then HMR was Mr. Movius's {*sic*} client, not Coats."  (D.I. 23 at p. 11).   But, neither the word "partner" nor "Partnership" appear anywhere in the document.  The actual Engagement Letter was directed to four individuals. Movius wrote these four individuals that he was representing <u>them</u>:

> Thank you for choosing McDonald Hopkins LLC <u>to represent **all of you**</u> in the formation and operation of a new legal entity (the "Entity") that will be owned beneficially by all of you (the "Owner<u>s</u>").

(D.I. 18-4, Engagement Letter at p. 1). The fact that Movius used the plural "Owner<u>s</u>," rather than the singular "Owner," reflects that he was representing the four individuals and not any purported "Partnership" that would be the singular "owner."

Movius then further amplified that, although he was jointly representing the four "Owners" as a group, he was still representing all four as their counsel "individually," and would cease representing them individually and represent the formed legal entity only after the legal entity was "formed":

> The scope of this engagement initially involves representation of the four Owners as a group in the formation of the Entity.  Once the Entity has been formed, we will no longer <u>represent the Owners individually</u> with respect to any Entity matters.

(*Id*.)  Movius further added that by jointly representing the four individual owners, he could not keep secrets as between the four individuals, because this was a group joint representation:

> Each of you should also consider that, if we represent all four Owners as a group, no one of you can assume that anything that you tell us will be held secret from the others or will not otherwise become known to the others.  In other words, you will need separate counsel if you want independent advice or to discuss matters in complete privacy.  By participating in this <u>joint representation</u>, the protection of the attorney client privilege will not apply among you as the jointly represented clients with regard to the subject of this engagement.

(*Id.*)

The Engagement Letter was signed by the four individuals, each of whom "Agreed and Accepted" the representation individually. (D.I. 18-4, Engagement Letter).

Plaintiffs cannot overcome the plain language of the Engagement Letter by parol evidence or *post hoc* revision of the engagement.  As Coats confirms in his Third Declaration, he was acting on behalf of his expectant "partners" with the intention that Movius would assist the four in forming the "Partnership" and other legal vehicles to effectuate their desired goal.  But, as Plaintiffs concede, the realization of the "Partnership" proved difficult, and there no "Partnership" was formed or organized.  (Coats Decl.  ¶¶ 4-7).

Not only was the word "Partnership" never mentioned in the Engagement Letter, but nothing in the Letter is consistent with Movius allegedly representing a non-existent "Partnership."  For example, if a "Partnership" had been the client, only one signature on behalf of the "Partnership" would have been required, or the four individuals would have signed as "partners" on behalf of a "Partnership," and not as individuals.  The plain lack of evidence and substance to Plaintiffs' arguments cannot be overcome by gratuitous repetition of the work "Partnership" in almost every sentence of Plaintiffs' briefs and declarations.  Quantity does not make up for lack of substance, and zero multiplied by any number still equals zero.

Moreover, even if Movius represented a "Partnership" and/or HMR, representation is not a zero-sum game.  Movius could simultaneously represent a "Partnership," HMR and Coats, as well as the other Owners.  The Model Rules recognize joint representation:

> (g) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7.

M.R.P.C. Rule 1.13(g).

Movius never terminated the Engagement Letter.  Yet, Plaintiffs assert that at some point

le Souef and Coats "designated" HMR as the "the entity."  To be sure, le Souef and Coats

advised Movius in late November that HMR would be the purchaser of the Hydrogen

Technology.  However, that "designation" did not in any way diminish the attorney-client

relationship that existed until that time, or modify the Engagement Letter.  Movius agreed to

"represent the Owners individually" until a "new legal Entity" "was formed."  Nothing in the

record shows when the "new legal "Entity" was deemed to have been "formed."  And, if it was

formed, Movius never terminated the Engagement Letter or advise Coats that he would no longer

represent him as one of the Owners.

     In all events, nothing in the Model Rules is dependent on the length of the attorney-client

relationship.  It is enough that there was such a relationship.  Thus, Movius was counsel to Coats.

## C.  <u>This Litigation Is Directly Related to Movius' Representation of Coats</u>

     Plaintiffs erroneously argue that "Coats offers just a single conclusory sentence on [the]

essential element of …substantial relationship."  (D.I. 23 at 16).  In fact, Coats' opening brief

recites Plaintiffs' many accusations of Coats  having committed fraud by withholding

information from Movius (as counsel for all four owners), le Souef and Mohanty during the

period of time leading to the execution of the Purchase Agreement in December 2011.  (D.I. 16

at pp. 2-4).  Plaintiffs now demand the right for Movius to argue to the jury – "My former client,

Coats, committed fraud in a matter that I handled for him."  That is an actual and substantial

relationship between the prior representation and the present litigation.  There can be no question

the present matter is at least "substantially related" to the matter handled by Movius under the

Engagement Agreement.

     Plaintiffs nevertheless argue that "Coats has not identified even a single confidence that

he claims to have shared with Mr. Movius that could be relevant to his action," and that Coats

"agreed in the Engagement Letter that anything he told Mr. Movius would not be kept secret

from Coats' partners."  But, "while the risk of a breach of client confidences is a sufficient

condition for 'relatedness,' it is not a necessary one" and "disqualification may be proper even if

access to the former client's confidential information is not a concern."  *In re Meridian Auto.*

*Sys.-Composite Operations, Inc.*, 340 B.R. 740, 747 (Bankr. D. Del. 2006); *Del-Chapel*

*Associates v. Ruger*, 2000 WL 488562 at *5 (Del.Ch. 2000) ("disqualification may be proper

even if access to the former client's confidential information is not a concern.  Rather, in the

interest of avoiding the appearance of impropriety, it is "more appropriate to err on the side

which would protect the integrity of the profession and promote a favorable impression with the

general public."); *Gieder v. Waxman*, 1983 WL 21397 at *4 (Del.Ch. 1983) (ruling that on a

motion to disqualify, the "court is not to weigh the circumstances with hair-splitting nicety" and

should "resolve all doubts in favor of disqualification.").

Plaintiffs do not challenge Movius' own time-records, filed with Coats' opening brief,

that show Movius had many discussions with Coats after the Engagement Letter was executed

and through execution of the Purchase Agreement.  (Exhibit E, D.I. 18-5).  Le Souef's,

Dimitrios', Mohanty's and Movius' declarations point to privileged meetings involving both

Movius and Coats.  (le Souef Declaration at ¶ 7;  Mohanty Declaration at ¶ 7; Dimitrios

Declaration at ¶ 4; Movius Declaration at ¶ 9).  Nothing demeans the judicial system and the

legal profession more than to have an attorney assert that his client had committed fraud while

that attorney was representing that client.

### D.  Coats Did Not Waive Conflict and There Was No Informed Consent

Plaintiffs and Movius bear the burden of proving that Coats provided "informed consent"

to Movius' proposed representation of the Plaintiffs against Coats in the present action:

> [T]he burden of showing consent is on [counsel], and there is no indication in any
> of the papers or affidavits submitted that [former client] consented to [counsel's]
> continued representation of Pan-O-Gold during this appeal.   Further we note that

- 7 -

this disqualification motion was brought, *inter alia*, by [former client's] attorney and we must infer that [former client] wishes [counsel] to be disqualified.

*In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984).

Plaintiffs and Movius attempt to meet their burden by quoting a two-line "forever waiver" sentence in the Engagement Letter, and cite *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001).  Plaintiffs and Movius distort the law and the case.

The governing law are the Model Rules and they require not only "consent," but "underlined informed consent." The Comments to M.R.P.C. Rule 1.9 state that "With regard to the effectiveness of an advance waiver, see Comment [22] to Rule 1.7."  That Comment to M.R.P.C. Rule 1.7 provides:

> The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails.  The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. … If the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved.

Consistent with the above Commentary, the Court in the case cited by Plaintiffs explained the nature of the required showing to demonstrate waiver:

> A prospective waiver should identify the potential opposing party, the nature of the likely subject matter in dispute, and permit the client to appreciate the potential effect of the waiver.

*Elonex I.P. Holdings, supra*, 142 F. Supp. 2d at 583.

Plaintiffs have not shown waiver.  The language relied upon by Plaintiffs epitomizes the "general and open-ended" waiver that the M.R.P.C. rejects as an "informed waiver," and which fails the *Elonex I.P. Holdings* standard.  The language of the Engagement Letter merely says that Movius can represent Owners individually and may represent the "Entity."  But nowhere does

- 8 -

the Engagement Letter say that Movius can sue Coats.  The problem is not Movius'

representation of the Owners or any entity, but his filing of a defamatory and derisive lawsuit

against Coats, in which Movius alleges Coats committed fraud.  Any alleged waiver that does

not say that Movius could sue Coats for fraud is not "informed consent."  See, generally, Coats'

Third Declaration, contemporaneously filed, at ¶¶ 8-15.

### E.  Movius And His Firm Must Be Disqualified Under Model Rule 3.7

Plaintiffs argue that it is unlikely that Movius will be a necessary witness at trial, and the

issue should be deferred.  That is not a proper objection.  First, as the case goes forward,

disqualification of counsel late in the case will prejudice both the Court and the Defendants.  For

example, in response to a future M.R.P.C. Rule 3.7 motion, Plaintiffs will cite Rule 3.7(a)(3) and

argue that "disqualification of the lawyer would work substantial hardship on the client."  Further,

requiring motion to be brought in the future will inevitably result in requests for extension for new

counsel to become familiar with the case, to the prejudice of both the Court and Defendants.

Second, delaying the issue will prejudice the presentation of the parties' cases.  This case

will involve videotape depositions, which will be played at trial.  Unless the matter is resolved at

the outset of the case, Movius will appear in the videotape depositions as both a witness and as

counsel.  The videotape depositions played at trial are the same as witnesses testifying at trial.

Therefore, the issue of Movius being both a witness and an advocate is ripe as of the first

deposition.

Plaintiffs do not substantively challenge Coats' argument that Movius will be a necessary

witness.  To the contrary, Plaintiffs only reinforce the point.  Thus, one of the key issues in this

case was whether there was, in fact, any legally-recognizable "Partnership" with rights to sue Coats

and the other Defendants.  Movius' declaration filed with Plaintiffs' opposition to the

disqualification motion devotes significant effort to presenting Movius participation in the events

that Movius and Plaintiffs argue demonstrate that there was a "Partnership" and that it is the real party in interest.  (D.I. 23-1 at Exhibit 3 at ¶¶ 8-11).

Considering that

i)     Coats has argued and will argue that he had disclosed "everything" to Movius

ii)    Movius admits that any information to him was subject to disclosure to le Souef and Mohanty

iii)   Movius' declaration establishes his recall and participation in the important November 2011meeting with Coats and the other "Owners,"

iv)    Movius' time records show Movius and Coats had hours of discussions regarding the Purchase Agreement in the weeks leading to its finalization and execution of the Purchase Agreement, and

v)     Movius and Plaintiffs are now arguing that Coats had withheld or misrepresented critical information in dealing with Movius, le Souef and Mohanty,

how is it possible for Movius to deny that he is a necessary witness?

## CONCLUSION

On the basis of the foregoing analysis of fact and law, Coats respectfully requests that his motion to disqualify be granted.


 Dated: October 3, 2016                            Respectfully submitted,

*/s/ George Pazuniak*
George Pazuniak (No. 478)
O'KELLY & ERNST, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
gp@del-iplaw.com

*Attorneys for Attorneys for Defendant*
*Tracy Coats*