IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HYDROGEN MASTER RIGHTS, LTD., CARL LE SOUEF and PRAVANSU MOHANTY, PH.D., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civ. No. 16-474-RGA |
| v. | ) ) ) | |
| DEAN WESTON, ENGINEERING INTERESTS, LLC, PAUL DAVID MANOS, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, TRACY COATS, and THE CLIENT IS EVERYTHING, LTD., | ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

Arthur G. Connolly, III, Esquire and Mary I. Akhimien, Esquire of Connolly Gallagher, LLP, Wilmington, Delaware.  Counsel for Plaintiffs.  Of Counsel: David T. Movius, Esquire of McDonald Hopkins LLC, Cleveland, Ohio.

George Pazuniak, Esquire of O'Kelly & Ernst, LLC, Wilmington, Delaware.  Counsel for Defendants Dean Weston, Engineering Interests, LLC, Paul David Manos, Tracy Coats, and The Client is Everything, Ltd.

**MEMORANDUM OPINION**

Dated: January _____, 2017
Wilmington, Delaware

ANDREWS, United States District Judge:

Per the amended complaint (D.I. 22), defendant Tracy Coats is a former partner of plaintiffs Carl Le Souef and Dr. Pravansu Mohanty.[1]  (D.I. 22 at ¶¶ 28, 49).  While acting as partners, they used plaintiff Hydrogen Master Rights, Ltd. ("HMR") as an acquisition vehicle to purchase certain hydrogen technology (the "Hydrogen Technology") from defendants Paul David Manos, Significan Global Energy Intellectual Property Trust, and Significan Australia Energy Intellectual Property Trust, and non-party Bernard Picot (collectively, the "Sellers").[2]  (D.I. 16 at 1).  That transaction is memorialized in an Agreement for Sale of Certain Assets (the "Purchase Agreement") dated December 12, 2011.  (D.I. 22 at ¶ 54).  Defendants Dean Weston and Engineering Interests, LLC are the assignees of some or all of Sellers' rights under the Purchase Agreement.  (Id. at ¶¶ 14, 81).  Defendant The Client is Everything (a/k/a International Business Knowledge Exchange, Ltd.) ("IBKE (Wyo.)") is a Wyoming corporation that purportedly operates as the alter-ego of Coats.  (Id. at ¶¶ 10, 26).

Pending before the court are several motions by various defendants.  Manos has filed a motion to dismiss and for partial summary judgment.  (D.I. 24).  Weston and Engineering Interests have filed a motion to dismiss.  (D.I. 26).  Coats and IBKE (Wyo.) have filed a motion to dismiss and for partial summary judgment.  (D.I. 28).  The motions to dismiss are based on Rule 12(b)(6).  The motions for partial summary judgment are based on the statute of limitations.  For the reasons stated below, the motions are granted in part and denied in part.

---

[1]     Coats has disputed whether a partnership actually exists.  (See, e.g., D.I. 15).

[2]     Defendants Significan Global Energy Intellectual Property Trust and Significan Australia Energy Intellectual Property Trust have not yet made an appearance in this action.

## I. BACKGROUND

According to the complaint, development of the Hydrogen Technology originated with defendant Manos and non-party Picot. (D.I. 22 at ¶ 19). Manos and Picot created Significan Australia Energy Intellectual Property Trust ("Significan AUS") and assigned to it the Australian and New Zealand rights to the Hydrogen Technology. (*Id*. at ¶ 33). Then Manos and Picot created Significan Global Energy Intellectual Property Trust ("Significan") and assigned to it the worldwide rights to the Hydrogen Technology. (*Id*. at ¶ 42). Mohanty assisted with developing the Hydrogen Technology starting in early 2010, but was not an employee or partner of Manos and Picot. (*Id*. at ¶¶ 21-22). Weston also purportedly assisted in the development of the Hydrogen Technology around this time. (D.I. 39, Ex. B ¶¶ 5, 8, 17.1, 19.1).

In September 2010, Manos and Picot entered into an exclusive representation agreement with Coats' company IBKE (Wyo.), under which IBKE (Wyo.) would receive a commission on any sums Manos and Picot received for the licensing of the Hydrogen Technology. (*Id*. at ¶ 26). In late 2010, Coats, Le Souef, and non-party Rodney Adler purportedly formed a general partnership for the purpose of licensing and developing the Hydrogen Technology. (*Id*. at ¶ 28). The partnership does not have a name. Mohanty joined the partnership sometime the following year. (D.I. 23 at 2). The partners used an entity formed by Coats called International Business Knowledge Exchange, Ltd. (Del.) ("IBKE (Del.)") to acquire the Australia and New Zealand licensing rights from Significan AUS in January 2011 and the worldwide licensing rights from Significan in April 2011.[3] (*Id*.). Plaintiffs allege that Coats received, through IBKE (Wyo.), a commission on the payments IBKE (Del.) made to license the Hydrogen Technology. (D.I. 22 at ¶¶ 40, 46). Finally, in August 2011, the partners formed HMR as a vehicle to purchase the

---

[3]     IBKE (Del.) is unrelated to IBKE (Wyo.). (D.I. 22 at ¶ 37).

Hydrogen Technology outright. (D.I. 23 at 2). On December 12, 2011, HMR executed the Purchase Agreement to acquire the Hydrogen Technology from Manos, Picot, Significan, and Significan AUS (collectively, the "Sellers"). (D.I. 16 at 1; D.I. 22 at ¶ 54).

After execution of the Purchase Agreement, Weston told Mohanty that he knew the secret formula underlying the Hydrogen Technology and owned a partial interest in the Hydrogen Technology, granted to him by Sellers before execution of the Purchase Agreement. (D.I. 22 at ¶¶ 71-76). According to the complaint, this was news to Plaintiffs, because the Purchase Agreement included representations and warranties stating that the Hydrogen Technology had been kept confidential and that no one but Sellers had any right, title, or interest in the Hydrogen Technology. (*Id*. at ¶ 64; D.I. 32 at A14). Thereafter, Weston and HMR entered into a Mutual Cooperation Agreement that outlined the rules of engagement while both parties pursued their claims against Sellers regarding ownership of the Hydrogen Technology. (D.I. 22 at ¶ 78). In that agreement, Weston agreed, among other things, "to maintain the technology in the strictest of confidence and to not make any disclosure use thereof for any purpose without HMR's express written consent." (D.I. 32 at A66-67 § 2).

On March 7, 2012, HMR notified Sellers of Weston's assertions. Specifically, Plaintiffs sent Manos a letter stating that "contrary to your express representations and warranties" in the Purchase Agreement, the secret formula was previously disclosed to Weston. (D.I. 32 at A69-71). "Thus, there can be no legitimate question that the [Sellers'] disclosures to Mr. Weston and others constitute serious breaches of the Agreement that require your immediate attention." (*Id*.). This letter was followed a few weeks later by a letter from Plaintiffs' counsel identifying the facts and cases which amounted to "conclusive proof" that Manos had breached certain representations and warranties in the Purchase Agreement. (D.I. 32 at A72-75).

3

On March 23, 2012, Sellers filed suit against Weston in California, asserting claims for declaratory relief and interference with the Purchase Agreement. (D.I. 22 at ¶ 81). As part of that litigation, Manos filed an affidavit (the "May 2012 Affidavit") detailing Weston's work with Manos and Picot in the development of the Hydrogen Technology. Specifically, the affidavit described Weston's "travel to Texas to inspect the [Hydrogen] Technology," "extensive effort to validate the [Hydrogen] Technology," "testing and development of the [Hydrogen] Technology," involvement "in the procurement and delivery of parts, the assembly, and testing of prototypes," assistance with the assembly and testing of the secret formula, demonstration of the Hydrogen Technology to potential purchasers, and "persistent attempts to learn the formula." (*See, e.g.*, D.I. 39, Ex. B ¶¶ 5, 8, 17.1, 19.1, 20-21, 27-32). Nevertheless, what Plaintiffs took away from the affidavit was Manos' attestation that he "never told or otherwise purposefully revealed to Weston the formula." (*Id*. at ¶ 22). On May 3, 2012, HMR and Sellers entered into an agreement to toll the statute of limitations on any disputes "between the parties that relate to or arise out of the [Purchase] Agreement, including allegations by HMR that Sellers have breached certain representations, warranties, and certifications..." (D.I. 39 at A85). The tolling agreement was twice extended and expired by its own terms on April 1, 2013. (D.I. 25 at 16; D.I. 32 at A85-92).

Coats withdrew from the partnership sometime in 2014.[4] (D.I. 22 at ¶ 101). According to Plaintiffs, Coats then entered into a conspiracy with Manos and Weston to extort Plaintiffs. (*Id.* at ¶¶ 101-06). Sellers settled their litigation against Weston by agreeing to assign their rights under the Purchase Agreement to Weston and his company, Engineering Interests. (*Id*. at ¶¶ 90, 96). Then, on March 23, 2016, Weston used recordings made by Coats to threaten Mohanty and Le

---

[4]     Adler has also withdrawn from the partnership, leaving Le Souef and Mohanty as the current partners. (D.I. 22 at ¶¶ 93, 100).

4

Souef with personal and professional embarrassment, criminal convictions, loss of citizenship, and other harms unless Plaintiffs agreed (i) to pay Weston $9.4 million, (ii) to assign him the Hydrogen Technology, and (iii) to assign him multiple unrelated patent-pending technologies. (*Id*. at ¶¶ 108, 121).

On March 29, 2016, Weston filed a complaint in Michigan on behalf of himself and Engineering Interests against Le Souef, Mohanty, and HMR. (*Id*. at ¶ 131). As part of that litigation, Manos filed another affidavit on June 7, 2016, in which he swore, among other things, that at the time the parties were negotiating the Purchase Agreement, Pravansu Mohanty, one of the plaintiffs in this case: (1) "talked [him] into eliminating Dean Weston's interest and involvement with the technology;" (2) "Pravansu, Picot and I were trying to eliminate all [of] Dean Weston's interest;" and (3) "[b]asically Pravansu convinced us to replace Dean Weston with Pravansu as 1/3 owner of the technology." (D.I. 39, Ex. C at ¶¶ 8, 62-63). Plaintiffs claim that the June 2016 affidavit apprised them of the conduct giving rise to their claims and prompted them to file their complaint in this court shortly thereafter.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id*. Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the

5

complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," except a court may consider documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted).

## B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6

## III.   DISCUSSION

The defendants have not presented one overarching reason why dismissal is warranted, generally arguing instead that each of the 32 counts in the complaint fails for a different reason. Accordingly, in what follows, Part A addresses Manos' argument that summary judgment should be granted in his favor on Counts 1-9 based on the statute of limitations. Part B addresses the claims against Weston in Counts 1 and 3. These counts are considered together, because they are both based on the Purchase Agreement. Weston argues that Counts 1 and 3 against him should be dismissed under Rule 12(b)(6) for failure to state a claim. Part C addresses Counts 10-12 against Weston based on the Mutual Cooperation Agreement. Weston argues that these claims should also be dismissed under Rule 12(b)(6) for failure to state a claim. Part D addresses various arguments Coats raises regarding Counts 13-21, which are primarily brought only against him.[5] Most of Coats' arguments assert that the complaint fails to state a claim. He has also requested summary judgment in his favor on certain counts based on the statute of limitations. Part E addresses Counts 23-32, which are various tort claims brought against different combinations of defendants based on events since Weston told Plaintiffs he knew the secret formula. Defendants argue that Counts 23-32 fail to state a claim under Rule 12(b)(6).[6]

### A.   Counts 1-9 Against Manos

Manos has asked that the court grant summary judgment in his favor on Counts 1-9 based on the 3-year statute of limitations set forth in 10 *Del. C.* § 8106(a). (D.I. 25 at 14-16). Those

---

[5]   Count 20 for replevin also names Weston and Engineering Interests as defendants to the extent they possess the property Plaintiffs seek to recover.

[6]   No defendant has raised any argument that Count 22 should be dismissed. That count seeks a declaratory judgment that IBKE (Wyo.) is the alter-ego of Coats under a piercing of the corporate veil analysis. (D.I. 22 ¶¶ 288-90).

claims are breach of the Purchase Agreement (Count 1), promissory estoppel (Count 2), breach of implied covenant of good faith and fair dealing (Count 3), unjust enrichment (Count 4), rescission and restitution (Count 5), fraudulent inducement (Count 6), negligent misrepresentation (Count 7), intentional and negligent non-disclosure (Count 8), and deceptive trade practices (Count 9). The crux of the allegations in Counts 1-9 is that Sellers, including Manos, falsely represented and warranted that they had good and marketable title to the Hydrogen Technology; no third party other than Sellers had any right, title, or interest in the Hydrogen Technology; and Sellers had not disclosed the secret formula to anyone other than Mohanty. (D.I. 22 at ¶¶ 64, 143, 155, 164, 175, 179, 197, 204).

Plaintiffs do not contest that Counts 1-9 can be considered on summary judgment, nor do they request discovery before the court rules on the issue. Plaintiffs also do not dispute that, unless tolled, any three-year statute of limitations for Counts 1-9 has expired. Instead, Plaintiffs assert that Count 1, for breach of the Purchase Agreement, is subject to the twenty-year statute of limitations in Section 8106(c).[7] (D.I. 39 at 9-10). Plaintiffs further assert that any statute of limitations for Counts 1-9 was tolled under the doctrine of fraudulent concealment. (*Id.* at 10-12). In support of their tolling argument, Plaintiffs have submitted the two affidavits by Manos filed previously in other litigation. (D.I. 39 at 11 (citing D.I. 39, Exs. B & C)).

---

[7] Plaintiffs also make a cursory argument that Count 1 is timely based on *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co. of New York*, 484 F. Supp. 1375 (D. Del. 1980). (D.I. 39 at 10). That case is inapplicable, because it addressed the statute of limitations for a continuing duty to defend under an insurance contract, which is not at issue here. *Oliver*, 484 F. Supp. at 1389.

## 1.    Count 1: Twenty Year Statute of Limitations

The three-year statute of limitations in Section 8106(a) applies to the claim for breach of

the Purchase Agreement (Count 1) unless the exception in Section 8106(c) applies. Section

8106(c) states that:

> an action based on a written contract, agreement or undertaking involving at
> least $100,000 may be brought within a period specified in such written contract,
> agreement or undertaking provided it is brought prior to the expiration of 20
> years from the accruing of the cause of such action.

10 *Del. C.* § 8106(c).   Therefore, Section 8106(c) supplants the statute of limitations in Section

8106(a) if: (1) the claims are based on a written contract; (2) involve at least $100,000; and (3) the

contract specifies a period for claims to accrue. There is no dispute that Count 1 is based on a

written contract and involves at least $100,000. The only issue is whether the Purchase Agreement

specified a period.

"Examples of a 'period' that may be specified in a written contract … include, without

limitation, (i) a specific period of time, (ii) a period of time defined by reference to the occurrence

of some other event or action, another document or agreement or another statutory period, and (iii)

an indefinite period of time." Synopsis to House Bill No. 363. "If the contract specified an

indefinite period, then the action nevertheless must be brought 'prior to the expiration of 20 years

from the accruing of the cause of such action.'" *Bear Stearns Mortg. Funding Trust 2006-SL1 v.*

*EMC Mortg. LLC*, 2015 WL 139731, at \*12 (Del. Ch. Jan. 12, 2015) (quoting 10 *Del. C.* §

8106(c)).

In *Bear Stearns*, the only Delaware case so far to analyze Section 8106(c), the court found

that the parties contracted around the three-year statute of limitations. *Id.* at \*15. As the court

explained, a claim for breach of the representations and warranties normally begins to accrue on

the date of closing. *Id.* at \*7. In *Bear Stearns*, however, the contract included a survival clause

9

providing that the representations and warranties "shall survive" the closing. *Id*. at \*15. In addition, the contract contained an accrual provision providing that "a cause of action ... shall accrue" only after the defendant both discovered the breach and failed to take remedial action.[8] *Id*. The court found that the language of the accrual provision "constituted 'a period of time defined by reference to the occurrence of some other event or action' that is a sufficient 'period specified' for purpose of Section 8106(c)." *Id*. As a result, the combination of the survival clause and accrual provision "operated to extend the statute of limitations up to the statutory maximum of twenty years." *Id*.

In *Lehman Brothers Holdings, Inc. v. Universal American Mortgage. Co., LLC*, the Tenth Circuit was asked to consider whether a provision giving the seller a right to cure extended the statute of limitations under *Bear Stearn*'s interpretation of Section 8106(c). 2016 WL 325126, at \*14 (10th Cir. Jan. 27, 2016). The Tenth Circuit answered in the negative. As the court explained, the contract in *Bear Stearns* contained "an express condition precedent on accrual of a claim," whereas the contract in *Lehman Brothers* provided only a procedure for cure. *Id*. at \*15. Because the contract did not expressly "address accrual of a cause of action," the court could not infer an intent to extend the limitations period under Section 8106(c). *Id*.

Here, the Purchase Agreement provides that the representations and warranties survive closing and that that "the breaching party may cure the noticed breach within forty five [45] calendar days from the date of such notice." (D.I. 32 at A9, §13.1 & A17, §18). But the Purchase Agreement does not expressly address accrual of a claim. Accordingly, under *Lehman Brothers*,

---

8       The accrual provision stated that: "Any cause of action against [defendant] or relating to or arising out of a breach by [defendant] of any representations and warranties made in this Section 7 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by [defendant] or notice thereof by the party discovering such breach and (ii) failure by [defendant] to cure such breach." *Id*.

which this court finds persuasive, the court cannot infer an intent to extend the limitations period under Section 8106(c). The three year statute of limitations applies to Count 1.

## 2.   Count 1-9: Fraudulent Concealment

Plaintiffs argue that the three-year statute of limitations for claims 1-9 are tolled under the doctrine of fraudulent concealment. (D.I. 39 at 10-12). To prevail under the doctrine of fraudulent concealment, a plaintiff must show: (1) defendant's knowledge of the alleged wrong and (2) an affirmative act by defendant to conceal the alleged wrong. *Techton Am., Inc. v. GP Chem., Inc.*, 2004 WL 2419129, at *2 (Del. Super. Oct. 25, 2004). Even when fraudulent concealment exists, "the statute is suspended only until [the plaintiff's] rights are discovered or until they could have been discovered by the exercise of reasonable diligence." *Id.* (quoting *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 531 (Del. Ch. 2005)).

Assuming that Plaintiffs have shown fraudulent concealment, the court finds that Plaintiffs' claims were tolled only until March 2012, when Plaintiffs expressly demonstrated actual knowledge of their claims against Manos. Specifically, on March 7, 2012, Plaintiffs sent Manos a letter stating that "there can be no legitimate question that [Sellers'] disclosures to Mr. Weston and others constitute serious breaches of the Agreement that require your immediate attention." (D.I. 32 at A69-71). This letter was followed a few weeks later by a letter from Plaintiffs' counsel identifying the facts and cases which amounted to "conclusive proof" that Manos had breached certain representations and warranties in the Purchase Agreement. (*Id.* at A72-75). The same facts and law are the basis for the claims alleged in Counts 1-9.

Plaintiffs claim that they "held off on filing suit" because Manos swore in the May 2012 Affidavit that he had not disclosed the secret formula to Weston nor granted him an ownership interest in the Hydrogen Technology. (D.I. 39 at 11). But acts occurring after a plaintiff was

11

aware of his rights do not toll the statute of limitations. *First State Towing, LLC v. Div. of State Police*, 2016 WL 2621137, at \*4 (Del. Ch. May 5, 2016) ("[N]o theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong." (quoting *Capano v. Capano*, 2014 WL 2964071, at \*9 (Del. Ch. June 30, 2014))); *Techton*, 2004 WL 2419129, at \*2 ("Defendant's promise to make repairs or remedy the alleged breach is insufficient to toll the statute of limitations"); *Krahmer v. Christie's Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006) (finding actions that occurred after plaintiffs were on notice of their claims, even if fraudulent concealment, did not toll the statute of limitations); *Smith v. Whelan*, 2013 WL 3169373, at \*3 (D. Del. June 21, 2013) (finding that a defendant's "obfuscating statements and behavior" did not change the fact that plaintiff was already on inquiry notice), *aff'd*, 566 F. App'x. 177 (3d. Cir. 2014). Because Plaintiffs were aware of their rights as of March 2012, the May 2012 Affidavit did not toll the statute of limitations.[9] The complaint was filed on June 22, 2016, more than three years after the expiration of the tolling agreement. (D.I. 1). Therefore, the court grants summary judgment in favor of Manos on Counts 1-9 based on the three-year statute of limitations set forth in 10 *Del. C.* § 8106(a).

---

[9] As an aside, the court notes that "[e]ven where a defendant uses every fraudulent device at its disposal to mislead a victim or obfuscate the truth, no sanctuary from the statute will be offered to the dilatory plaintiff who was not or should not have been fooled." *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007). Plaintiffs should not have been fooled by Manos' May 2012 Affidavit, which stated only that Manos "never *told* or otherwise *purposefully* revealed to Weston the formula." (*Id*. at ¶ 22 (emphasis added)). The affidavit details Weston's "persistent attempts to learn the formula" and extensive involvement in developing the Hydrogen Technology, making it difficult to believe that Weston could not have deduced all or part of the secret formula even if Manos did not purposefully reveal it to him. (*See, e.g.*, D.I. 39, Ex. B at ¶¶ 5, 8, 20-21, 27-28, 30, 32).

12

### B. Counts 1 and 3 Against Weston Based on the Purchase Agreement

Counts 1 and 3 contain claims against Weston based on the Purchase Agreement. Specifically, in Count 1, HMR claims that Weston breached the Purchase Agreement "by filing suit ... in Michigan and not Delaware," in contravention of the forum selection clause. (D.I. 22 at ¶ 148). HMR also claims in Count 1 that Weston breached the confidentiality provision of the Purchase Agreement by publicly disclosing confidential information in the Michigan Action. (D.I. 22 at ¶ 149). Count 3 claims that the same actions by Weston breached the implied covenant of good faith and fair dealing. (*Id*. at ¶ 165).

Although Weston asks the court to dismiss Counts 1 and 3 under Rule 12(b)(6), he raises various factual arguments as to why his actions did not amount to a breach of the forum selection clause or breach of the implied covenant. (*See* D.I. 27 at 5-7 (providing factual reasons for why the complaint was filed in Michigan and asserting that HMR tried to seal filings in the Michigan Action)). The court agrees with Plaintiffs that these arguments raise matters outside the pleadings and, therefore, cannot be addressed on a motion to dismiss. (D.I. 41 at 5). Nevertheless, as explained below, there are potential grounds for dismissing Count 1 based on the forum selection clause that the parties should address in the future. In addition, Weston did not raise any argument as to why the claim in Count 1 based on the confidentiality provision should be dismissed. (*See* D.I. 27 at 5-7). Accordingly, all of the claims against Weston in Count 1 survive. Count 3, however, must be dismissed with prejudice under Rule 12(b)(6) for the reasons explained below.

### 1. Count 1: Breach of the Forum Selection Clause

HMR claims that Weston breached the forum selection clause in the Purchase Agreement "by filing suit ... in Michigan and not Delaware." (D.I. 22 at ¶ 148). Under Delaware law, the remedy for breach of a valid forum selection clause is specific performance. In *Carlyle*, the court

13

explained that "monetary damages would not be adequate to compensate the injured party for breach of the forum selection clause" and "any remedy other than specific performance would 'deprive Plaintiffs of the benefit of their bargain.'" *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Grp. (Holding)*, 2012 WL 4847089, at \*12 (Del. Ch. Oct. 11, 2012) (quoting *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Trust*, 2011 WL 4552508, at \*6 (Del. Ch. Sept. 14, 2011)). Plaintiffs admit that they obtained specific performance when the Michigan Court dismissed the Michigan Action for lack of jurisdiction due to the Purchase Agreement's forum selection clause. (D.I. 41 at 5). The court is aware of no case where plaintiffs were allowed to recoup damages in addition to their remedy of specific performance. Accordingly, the court doubts that Plaintiffs have stated a claim in Count 1 based on the forum selection clause but, because the parties have not briefed the issue, the court will not grant Weston's motion to dismiss this claim.

## 2. Counts 1 and 3: Disclosure of Confidential Information

HMR claims that the same actions by Weston—publicly revealing confidential information in the Michigan Action—amounted to a breach of the confidentiality provision in the Purchase Agreement (Count 1) and a breach of the implied covenant of good faith and fair dealing (Count 3). (D.I. 22 at ¶¶ 149, 165). Delaware law "is settled that where the terms of a contract expressly address the terms of a dispute, those express contractual terms—not an implied covenant of good faith and fair dealing—govern the parties' relations." *Sanders v. Devine*, 1997 WL 599539, at \*6 (Del. Ch. Sept. 24, 1997). The Purchase Agreement expressly addresses the confidentiality of the agreement in a legal proceeding. It states, "no part of this agreement shall be quoted, attached or otherwise disclosed in the public record in any filings relating to such proceeding." (D.I. 41 at 6 (quoting D.I. 32 at A19, § 24.2)). This express contractual term bars the claim based on the implied

14

covenant of good faith and fair dealing. Accordingly, Count 3 as to Weston is dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

### C. Count 10, 11, 12 Against Weston Based on the Mutual Cooperation Agreement

Weston asks the court to dismiss Counts 10-12 under Rule 12(b)(6) for failure to state a claim. (D.I. 27 at 7-10). All three counts are based on the Mutual Cooperation Agreement and name only HMR as the plaintiff.

#### 1. Count 10: Breach of Mutual Cooperation Agreement

In Count 10, HMR claims that Weston breached the Mutual Cooperation Agreement by "engaging in the conduct alleged [in the complaint]." (D.I. 22 at ¶ 209). Count 10 itself contains no factual allegations. (*Id*. at ¶¶ 207-11). Thus, survival of Count 10 depends on giving Plaintiffs the benefit of every reasonable inference. In the background section of the complaint, incorporated into Count 10 by reference, HMR alleges that Weston breached the Mutual Cooperation Agreement by disclosing confidential and proprietary information in the complaint filed in the Michigan Action. (D.I. 22 at ¶¶ 137, 207). The court assumes that this is the factual predicate for Count 10.

To state a claim for breach of contract under Delaware law, Plaintiffs must allege facts plausibly demonstrating: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff." *H–M Wexford LLC v. Encorp, Inc*., 832 A.2d 129, 140 (Del. Ch. 2003). A contractual obligation can be inferred, because the Mutual Cooperation Agreement, which would be incorporated by reference, contains a confidentiality provision. (D.I. 41 at 6; D.I. 32 at A67). A breach can be inferred, because Paragraph 137 of the complaint alleges that Weston breached the confidentiality provision by disclosing confidential information in the Michigan Action. (D.I. 22 at ¶ 137). No part of the complaint, however, alleges

15

any facts plausibly showing damages to HMR from the Michigan disclosures. Instead, the complaint alleges in conclusory fashion that "HMR has been damaged." (*Id.* at ¶ 210). This is insufficient to state a claim. *Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 F. App'x 224, 231 (3d Cir. 2007) (affirming dismissal where plaintiff failed to support her conclusory allegation of damages with facts). Accordingly, Count 10 is dismissed without prejudice for failure to state a claim.

### 2.   Count 11: Promissory Estoppel

Count 11 is a claim for promissory estoppel. To state a claim for promissory estoppel, a plaintiff must show by clear and convincing evidence that:

> (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promise; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.

*Harmon v. Del. Harness Racing Comm'n*, 62 A.3d 1198, 1201 (Del. 2013). In Count 11, HMR alleges, "Weston promised to HMR that he would not disclose confidential and proprietary information relating to the Hydrogen Technology." (D.I. 22 at ¶ 213). The remainder of Count 11, however, does nothing more than provide a formulaic recitation of the elements of promissory estoppel. (*Id.* at ¶¶ 212-17). This is insufficient to state a claim. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) ("[D]etailed factual allegations" are not required, but a complaint must do more than simply provide "a formulaic recitation of the elements of a cause of action."); *Iqbal*, 556 U.S. at ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Count 11 is not saved through incorporation by reference, because there are no allegations in the complaint regarding HMR's reasonable reliance or actions HMR took to its detriment. Accordingly, Count 11 is dismissed without prejudice for failure to state a claim.

16

### 3.    Count 12: Implied Covenant of Good Faith and Fair Dealing

In Count 12, HMR alleges that Weston breach the implied covenant of good faith and fair dealing in the Mutual Cooperation Agreement: (1) by disclosing confidential and proprietary information relating to the Hydrogen Technology; (2) by inducing Sellers to assign him their rights under the Purchase Agreement; and (3) by "attempting to extort HMR." (D.I. 22 at ¶ 220). The claims based on the first two grounds are dismissed with prejudice because, as explained above, "where the subject at issue is expressly covered by the contract ... the implied duty to perform in good faith does not come into play." *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992). The Mutual Cooperation Agreement contains an express confidentiality provision, which would bar a claim for breach of the implied covenant based on disclosing confidential information. (D.I. 32 at A66, § 2). The Mutual Cooperation Agreement also expressly states that "neither [party] is required to act or refrain from acting in a manner that it reasonably believes could prejudice its claims and causes of action against Manos and Picot [i.e., Sellers]." (D.I. 32 at A66, § 1.2). Thus, the Mutual Cooperation Agreement allowed Weston to settle his claims against Sellers by having Sellers assign their rights under the Purchase Agreement to him. Finally, neither party addressed whether a tort can serve as a factual predicate for breach of the implied covenant of good faith and fair dealing. Accordingly, although it is doubtful that Plaintiffs can recover under this theory, the court will not dismiss the claim for breach of the implied covenant to the extent it is based on extortion.

### D.    Counts 13 – 21 & 25 Against Coats

Coats makes varied arguments as to why Counts 13-21 and 25 against him should be dismissed. First, according to Coats, Counts 13-14, 18-20, and 25 fail to state a claim under Rule 12(b)(6), because he owns the Confidential Recordings, not Plaintiffs. (D.I. 29 at 6-8). Second,

17

Counts 13, 15-17, and 21 fail to state a claim under Rule 12(b)(6), because the complaint fails to identify the payments that form the basis of the claims. (*Id.* at 8-9). Third, Coats requests summary judgment in his favor on Counts 13, 15-18, and 21 based on the statute of limitations. (*Id.* at 9-10). Finally, Coats argues that Counts 15-16 and 21 should be dismissed under Rule 12(b)(6) for failure to allege essential elements of the claim. (*Id.* at 10-13). Each of these arguments is addressed in turn.

## 1. Counts 13-14, 18-20, & 25: Ownership of the Confidential Recordings

Coats argues that the following claims must be dismissed for failure to state a claim, because Plaintiffs do not allege that they own the recordings: Count 13 (breach of fiduciary duties), Count 14 (breach of contract), Count 18 (promissory estoppel), Count 19 (conversion), Count 20 (replevin under Mich. Comp. Laws Ann. § 600.2920), and Count 25 (misappropriation of trade secrets).[10] (D.I. 29 at 8). Coats has not shown that ownership of the recordings is an essential element of the claims raised in Counts 13, 14, and 18. Instead, those claims consider whether Coats revealed information he promised to keep confidential. Accordingly, Coats' motion to dismiss Counts 13, 14, and 18 on this basis is denied.

Counts 19, 20, and 25 entail an element of ownership. Conversion is "the wrongful possession or disposition of another's property as if the property were one's own." *Jarvis v. Elliott*, 2010 WL 761089, at \*4 (Del. Ch. Mar. 5, 2010). Replevin "is a form of action for recovery of personal property that has been taken or withheld from the owner unlawfully." *Id.* Under Mich.

---

[10]     Counts 13-14 and 18-19 are brought by Mohanty and Le Souef against Coats. Count 20 is brought by Mohanty and Le Souef against Coats, Weston, and Engineering Interests. Weston and Engineering Interests join in Coats' arguments for dismissal of Count 20. (D.I. 27 at 10-11). Count 25 is brought by all plaintiffs against all defendants. Manos and Weston have not joined in Coats' arguments as to Count 25, raising instead their own arguments, which are addressed later in this opinion.

18

Comp. Laws Ann. § 600.2920, a claim for replevin "may not be maintained ... by a person who ... does not have a right to possession of the goods or chattels taken or detained." Misappropriation of a trade secret requires "acquisition of a trade secret of another..." 6 *Del. C.* § 2001(2)(a).

Coats is essentially raising a factual dispute regarding ownership on a motion to dismiss for failure to state a claim. Specifically, Coats argues that he—not the partnership—owns the recordings, because he made them with his own recording equipment. (D.I. 29 at 6-8 (citing 6 *Del. C.* § 15-204(d)). Plaintiffs essentially respond that ownership of the Confidential Recordings is irrelevant, because their conversion and replevin claims "turn on whether the Partnership owns *the contents* of the Confidential Recordings." (D.I. 38 at 10 (emphasis added)). Stated another way, Plaintiffs base their claims on "the Partnership's ownership of the confidential and trade secret information recorded." (*Id.* at 11). Thus, Plaintiffs do not seek to recover the tangible recordings but to assert control over the use and distribution of the intangible information recorded. This clarification is fatal to their conversion and replevin claims.

"An action for conversion has traditionally applied to the wrongful exercise of dominion over tangible goods." *Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc.*, 1995 WL 694397, at *16 (Del. Ch. Nov. 21, 1995). Similarly, "[t]he law of replevin has long held that only tangible and corporeal objects may be replevied." *MAI Basic Four, Inc. v. Generic Bus. Sol., Inc.*, 1990 WL 3665, at *2 (Del. Ch. Jan. 16, 1990). Delaware courts have "tentatively expanded the doctrine [of conversion] to encompass some intangible goods where the intangible property relations are merged into a document." *Carlton*, 1995 WL 694397, at *16. Similarly, "documents or other physical objects containing confidential information, as well as computer disks or tapes containing software are tangible and thus able to be replevied." *MAI Basic*, 1990 WL 3665, at *2.

But conversion and replevin are not available theories of recovery insofar as Plaintiffs do not seek recovery of the tangible objects containing the confidential information. *See Carlton*, 1995 WL 694397, at *16 (holding that "conversion is not an available theory of recovery to plaintiff insofar as it complains of ... the intangibles not represented in an instrument"). Because Plaintiffs does not claim any ownership interest in the tangible property that contains the recordings, they have failed to adequately plead claims for conversion and replevin. Accordingly, Count 19 (conversion) and Count 20 (replevin) are dismissed without prejudice for failure to state a claim. The court cannot resolve on a motion to dismiss a factual dispute regarding who owns the contents of the recordings. As a result, the court will deny Coats' motion to dismiss the misappropriation of trade secrets claim (Count 25) on this basis.

### 2.   Counts 13, 15-17, and 21: Payments

Coats makes a cursory argument that Counts 13, 15-17, and 21 should be dismissed, because the Complaint fails to identify the payments Coats received that form the basis of those claims. (D.I. 29 at 8-9). It is difficult to appreciate this argument, because Coats himself states that these claims are based on commissions he received from the payments Plaintiffs made to license the Hydrogen Technology. (*Id.*). Consistent with Coats' understanding, the complaint alleges for all of these claims, except Count 21, that it is referring to the commissions Coats would receive from IBKE (Wyo.) representing the Hydrogen Technology on behalf of Manos and Picot. (*See* D.I. 22 at ¶¶ 26, 40, 46, 225, 247, 258). In his reply brief, Coats clarified his argument by stating, "Plaintiffs do not point to any evidence that the Complaints' payment allegations are true." (D.I. 47 at 4). Because this is a motion to dismiss, the court is limited to reviewing the sufficiency of the pleadings, not the truth of the allegations. Accordingly, Coats' motion to dismiss Counts 13, 15-17, and 21 on this basis is denied.

20

### 3.    Counts 13, 15-18, and 21: Statute of Limitations

Coats argues that summary judgment should be granted in his favor on the following claims based on their three-year statute of limitations: Count 13 (breach of fiduciary duties), Count 15 (fraudulent inducement), Count 16 (negligent misrepresentation), Count 17 (intentional and negligent non-disclosure), Count 18 (promissory estoppel), and Count 21 (unjust enrichment). [11] (D.I. 29 at 9-10).  Plaintiffs assert that three tolling doctrines apply here: the discovery rule, sometimes referred to as the doctrine of inherently unknowable injuries, equitable tolling, and fraudulent concealment.  (D.I. 38 at 9-10).  Where defendants can show that plaintiffs had either actual or inquiry notice, the statute of limitations is not tolled.  *Smith v. McGee*, 2006 WL 3000363, at *3 (Del. Ch. Oct. 16, 2006).  Coats did not respond to Plaintiffs' assertion that the discovery rule applies here, leaving the court unable to conclude that it does not.  Accordingly, Coats' motion to dismiss Counts 13, 15-18, and 21 based on the statute of limitations is denied, without prejudice to renewing this argument on summary judgment or at trial.

### 4.    Count 15: Fraudulent Inducement

In Count 15, Mohanty and Le Souef assert a claim against Coats for fraudulent inducement. (D.I. 22 at ¶¶ 239-50).  Coats argues that Count 15 should be dismissed under Rule 12(b)(6),

---

[11]    *Vichi v. Koninklijke Philips Elec., N.V.*, 85 A.3d 725, 788 (Del. Ch. 2014) ("The analogous statute of limitations for fraud and negligent misrepresentation is three years, under Title 10, Section 8106 of the Delaware Code"); *Pulieri v. Boardwalk Prop., LLC*, 2015 WL 691449, at *13 (Del. Ch. Feb. 18, 2015) ("The analogous statute of limitations for a claim of unjust enrichment is three years); *Houseman v. Sagerman*, 2015 WL 7307323, at *8 (Del. Ch. Nov. 19, 2015) ("Claims for breaches of fiduciary duties—i.e., torts—are governed by a three-year statute of limitation"); *East v. Tansey*, 1993 WL 487807, at *2 (Del. Ch. Oct. 22, 1993) ("[T]he analogous three-year statute of limitations of 10 *Del. C.* § 8106 governs an action to impose a constructive trust."); *Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1036 (Del. 2003) (applying the three year statute of limitations provided by Section 8106 to plaintiff's promissory estoppel claim). The court is aware of no Delaware case or statute recognizing a claim of "intentional and negligent non-disclosure" (Count 17).  Accordingly, the court will assume that this claim is subject to the same three-year statute of limitations as fraud and negligent misrepresentation.

21

because the complaint alleges no factual basis to support its conclusory assertion that Coats "used IBKE (Wyo.) as an instrumentality to perpetuate his fraudulent conduct.... " (*Id.* at ¶ 247; D.I. 29 at 11). Paragraph 25, however, which is incorporated into Count 15 by reference, alleges, "Coats failed to adequately capitalize IBKE (Wyo.) and has maintained it at or near insolvency by siphoning off company funds for his personal benefit, and failed to observe corporate formalities in his dealings with IBKE (Wyo.)." (*Id.* at ¶ 25). A court has found that a complaint may plead an adequate basis for piercing the corporate veil based on non-conclusory allegations that a company failed to follow corporate formalities. *Albert v. Alex. Brown Mgmt. Serv., Inc.*, 2005 WL 2130607, at \*9 (Del. Ch. Aug. 26, 2005). In addition, Count 15 alleges that other acts besides Coats' purported use of IBKE (Wyo.) as an instrumentality constituted fraudulent inducement. (*See, e.g.*, D.I. 22 at ¶¶ 241-46). Coats has not adequately addressed why Plaintiffs have failed to state a claim based on those other acts.[12] Accordingly, Coats' motion to dismiss Count 15 is denied.

### 5. Count 16: Negligent Misrepresentation

Mohanty and Le Souef assert a claim against Coats for negligent misrepresentation in Count 16. (D.I. 22 at ¶¶ 239-50). Coats argues that Count 16 should be dismissed under Rule 12(b)(6), because it "fails to identify any alleged misrepresentations." (D.I. 29 at 12.). Count 16, however, expressly incorporates the other allegations in the complaint, including the preceding fraud claim, and further states that it is pled in the alternative "[t]o the extent that Coats denies making knowing misrepresentations to Mr. Le Souef and Dr. Mohanty." (D.I. 22 at ¶¶ 251, 253). A claim may be pled in the alternative and rely on allegations adopted by reference to do so. Fed.

---

[12]     Coats' assertion in a single sentence that the allegations are conclusory is itself conclusory and does not sufficiently support his motion. (D.I. 47 at 6).

R. Civ. P. 8(d)(2); Fed. R. Civ. P. 10(c). Therefore, Plaintiffs have not failed to state a claim for the reasons Coats argues. Coats' motion to dismiss Count 16 is denied.

### 6. Count 21: Unjust Enrichment

In Count 21, Mohanty and Le Souef assert a claim against Coats and IBKE (Wyo.) for unjust enrichment. (D.I. 22 at ¶¶ 282-87). To plead a claim for unjust enrichment, Plaintiffs must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Count 21 is merely a recitation of these elements, which is not sufficient to state a claim. *See Iqbal*, 556 U.S. at 678. Count 21 alleges no facts other than Coats "obtained and retained money and other value." (D.I. 22 at ¶ 284). This allegation is too vague to give Coats and IBKE (Wyo.) fair notice of the factual grounds on which the claim rests, and the other allegations incorporated by reference do not remedy this defect. *See Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 2016 WL 3659112, at *6 (S.D.N.Y. June 28, 2016) ("Vague or general allegations are insufficient to plead a claim for unjust enrichment."); *Swift v. Pandey*, 2016 WL 4267947, at *3 (D.N.J. Aug. 10, 2016) (finding "vague and conclusory allegations," which incorporated by reference the preceding paragraphs of the complaint, did not state a claim for unjust enrichment). Accordingly, Count 21 is dismissed without prejudice for failure to state a claim under Rule 12(b)(6).

### E. Counts 23 – 32 Against Various Defendants

#### 1. Count 23 & 24: Trade Secret Misappropriation under Federal Law

Counts 23 and 24 allege trade secret misappropriation against Weston and Engineering Interests based on the Defend Trade Secrets Act of 2016 (the "DTSA"). Count 23 is brought by Mohanty and Le Souef and based on the information contained in the Confidential Recordings.

23

(D.I. 22 at ¶¶ 291-302). Count 24 is brought by HMR and based on the confidentiality of the Hydrogen Technology, the Purchase Agreement, and the Mutual Cooperation Agreement. (*Id.* at ¶¶ 303-311). Counts 23 and 24 suffer from the same two infirmities, warranting dismissal under Rule 12(b)(6). First, the DTSA creates a private cause of action for the owner of a trade secret "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The complaint fails to allege any nexus between interstate or foreign commerce and the Confidential Recordings, Hydrogen Technology, Purchase Agreement, or Mutual Cooperation Agreement. Second, the DTSA, by its own terms, applies only to an act of misappropriation that "occurs on or after the date of the enactment of this Act." Pub. L. No. 114-153, § 2(e). The DTSA became effective on May 11, 2016. Thus, a plaintiff states a plausible claim for relief only if it "sufficiently alleges a prohibited 'act' occurring after May 11, 2016." *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016). The complaint does not allege any acts on or after May 11, 2016 other than a conclusory allegation of continuing use and disclosure. (*See, e.g.*, D.I. 22 at ¶¶ 298, 308). For these reasons, Counts 23 and 24 are dismissed without prejudice for failure to state a claim.

## 2. Count 25: Trade Secret Misappropriation under State Law

In Count 25, all plaintiffs sue all defendants for trade secret misappropriation under Ohio, Michigan, and Delaware law. (D.I. 22 at ¶¶ 312-319). Each defendant has been sued based on different acts, and each defendant has asserted individual arguments why Count 25 should be dismissed.

The complaint alleges that Coats misappropriated trade secrets by "disclosing and using the Confidential Recordings without the consent of the Partnership." (*Id.* at ¶ 315). Coats argues that Count 25 should be dismissed, because Plaintiffs do not have the right to possess the

24

Confidential Recordings. (D.I. 29 at 15; D.I. 38 at 16). This is a factual dispute that cannot be resolved on a motion to dismiss. Accordingly, Coats' motion to dismiss Count 25 is denied.

According to the complaint, Manos allegedly misappropriated trade secrets by "disclosing the terms and conditions of the Purchase Agreement ... to Weston without HMR's express or implied consent." (D.I. 22 at ¶ 316). Manos argues that no misappropriation occurred, because Plaintiffs' lawyer Movius expressly authorized the disclosures Manos made to Weston, as demonstrated by an email Manos submitted to the court. (D.I. 25 at 17). In addition, Manos claims that he made the disclosures to facilitate the assignment of the Purchase Agreement to Weston, and the Purchase Agreement allows assignment without HMR's consent. (*Id.*). Plaintiffs argue that Manos has raised a factual dispute best resolved on a motion for summary judgment after further discovery. (D.I. 38 at 16). The court agrees. Manos' motion to dismiss Count 25 is denied.

Finally, the complaint alleges that Weston misappropriated trade secrets related to the Purchase Agreement, Mutual Cooperation Agreement, and Hydrogen Technology by disclosing and using them to initiate and prosecute the Michigan Action. (D.I. 22 at ¶ 317). Weston argues, without citation to authority, that the partnership does not have standing to sue, because it does not have a recognizable property interest in the Purchase Agreement, Mutual Cooperation Agreement, and Hydrogen Technology. (D.I. 27 at 12). Weston further argues, without citation to authority, that "there is no stated basis of authority that persons filing suit can be held liable for using trade secrets to initiate a lawsuit directed to those trade secrets." (*Id.*). Plaintiffs did not respond to Weston's arguments regarding Count 25. (D.I. 41 at 13). Accordingly, the court will not resolve this dispute until both parties have fully presented their arguments and cited supporting authority. Weston's motion to dismiss Count 25 is denied.

25

### 3. Count 26: Extortion

In Count 26, Mohanty and Le Souef assert a claim against Weston for extortion under Mich. Comp. Laws Ann. § 750.213, the Michigan criminal statute for extortion. (D.I. 22 at ¶¶ 321-24; D.I. 27 at 13-14; D.I. 41 at 13-14). The Michigan Court of Appeals has recognized a private right of action under the criminal statute. *Jersevic v. Kuhl*, 2003 WL 1558207, at *1 (Mich. App. March 25, 2003) (per curiam). To state a claim for civil extortion, a plaintiff must plead facts plausibly demonstrating that defendant:

(1) maliciously threaten[ed] to accuse another of any crime or offense, or ... maliciously threaten[ed] any injury to the person or property (2) with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will.

*Norman Yatooma & Assoc. PC v. 1900 Assoc. LLC*, 2014 WL 2619445, at *10 (Mich. App. June 12, 2014) (quoting Mich. Comp. Laws Ann. § 750.213). "[B]ecause this is a civil cause of action in tort, an additional element of damages is also required." *Id.* Normally, the damages are the property actually extorted. *See, e.g., Carter v. Carter*, 2008 WL 5662081, at *11 (E.D. Mich. July 22, 2008) (explaining that, under Michigan civil extortion, "a party may recover money that was extorted"); *Jersevic*, 2003 WL 1558207, at *3 (recognizing a private cause of action for extortion where the "complaint alleged that defendant ... knowingly concealed and converted plaintiff's property").

Here, Count 26 alleges damages only in conclusory terms. (*See* D.I. 324 (stating that "Dr. Mohanty and Mr. Le Souef have been damaged in an amount to be proven at trial.")). Moreover, there are no allegations anywhere in the complaint that Weston converted any of Mohanty and Le Souef's property or actually received any money or other pecuniary advantages from Mohanty and Le Souef. Accordingly, Count 26 is dismissed without prejudice under Rule 12(b)(6) for failure to allege facts plausibly demonstrating damages.

26

### 4.    Count 27: Invasion of Privacy

In Count 27, Mohanty and Le Souef assert a claim against Weston and Coats for "intrusion on solitude," a form of invasion of privacy. (D.I. 22 at ¶¶ 325-30; D.I. 38 at 17). According to Weston and Coats, the complaint fails to state a claim for intrusion on solitude, because it does not allege publication. (D.I. 46 at 6). Delaware has adopted the the Restatement (Second) of Torts § 652B to determine what constitutes an intrusion on solitude. *See Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992). As the Restatement explains, intrusion on solitude "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Restatement (Second) of Torts § 652B (1977) Cmt. a. "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined." *Id.* at cmt. b; *see also Fanean v. Rite Aid Corp.*, 984 A.2d 812, 821 (Del. Super. 2009) ("[T]he focus of this tort is on the intrusion.). Accordingly, Plaintiffs have not failed to state a claim for the reasons Weston and Coats argue. Their motions to dismiss Count 27 are denied.

### 5.    Count 28: Intentional Infliction of Emotional Distress

In Count 28, Mohanty and Le Souef assert a claim against Weston and Coats for intentional infliction of emotional distress ("IIED"). (D.I. 22 at ¶¶ 331-34). A claim for IIED "requires proof that [plaintiff] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 367–68 (Del. 2013). "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community.'" *Id.* (quoting *Goode v. Bayhealth Med. Ctr., Inc.*, 2007 WL 2050761, at *2 (Del. July 18, 2007)). There is no liability for "mere insults, indignities, or annoyances that are not extreme or outrageous." *Id.*

27

Plaintiffs are not required, as Weston and Coats argue, to plead bodily harm. (D.I. 29 at 16). "[I]ntentional infliction of severe emotional distress may provide the legal predicate for an award of damages, *even in the absence of accompanying bodily harm*, if such conduct is viewed as outrageous." *Tekstrom, Inc. v. Savla*, 2007 WL 328836, at *6 (Del. Feb. 5, 2007) (emphasis in original); *cf. Tani v. FPL/Next Era Energy*, 2013 WL 3957710, at *10 (D. Del. July 29, 2013) (explaining that plaintiff's distress must result in bodily harm if defendant's conduct is directed to a third person who is not an immediate family member of plaintiff).

The complaint alleges that Weston "threaten[ed] to publicly disclose the Confidential Recordings; threaten[ed] criminal prosecution; threaten[ed] revocation of citizenship; [and] threaten[ed] to publicly disclose private and secret information concerning Dr. Mohanty and Mr. Le Souef." (D.I. 38 at 17-18). Weston argues, without citation to any authority, that even if these allegations are true, they do not exceed the bounds of decency, because they were a part of settlement discussions. (D.I. 46 at 8). Coats adds, without citation to any authority, that he cannot be liable for IIED because he was not physically present when Weston allegedly threatened Mohanty and Le Souef and "Weston is not related to, or associated with, Coats." (D.I. 47 at 8). Although Weston and Coats make appealing arguments, they do not cite any supporting authorities, and thereby fail to carry their burden as the moving party to show that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion, "[t]he defendant bears the burden of showing that no claim has been presented"). Accordingly, the motions to dismiss Count 28 are denied.

### 6.    Count 29: Abuse of Process

In Count 29, Plaintiffs assert a claim against Weston and Engineering Interests for abuse of process under Michigan law. (D.I. 22 at ¶¶ 335-38). To state a claim for abuse of process, a

28

plaintiff must plead facts plausibly showing (1) an ulterior purpose and (2) an "irregular act" in the use of process. *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 388 (E.D. Mich. 1982); *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981). Here, the complaint alleges nothing more than that Weston committed an abuse of process by "filing and prosecut[ing] ... a civil action," to "further the extortion of Mohanty and Mr. Le Souef."[13] (D.I. 22 at ¶¶ 336-37). Alleging that the defendant commenced a lawsuit is not enough by itself to state a claim, even if the lawsuit was commenced for an improper purpose. *See, e.g., R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 285 (7th Cir. 1988) ("[A] bald allegation that the prior suit was 'commenced and prosecuted' for an ulterior purpose cannot, without more, satisfy the [irregular] act requisite of an abuse of process action" under Michigan law); *Sage*, 556 F. Supp. at 388 ("[I]t is insufficient to allege only that complaint and summons issued for an improper purpose."); *Lawrence v. Burdi*, 2016 WL 313408, at *3 (Mich. App. Jan. 26, 2016) ("[T]he act must be something more than just the initiation of a lawsuit, and the ulterior purpose has to be something other than settling a suit."). Accordingly, Count 29 is dismissed without prejudice for failure to state a claim.

### 7.   Count 30 & 31: Conspiracy & Aiding and Abetting

Plaintiffs assert a claim for conspiracy (Count 30) against Coats, Manos, Weston, and Engineering Interests, and a claim for aiding and abetting (Count 31) against all defendants. (D.I. 22 at ¶¶ 339-52). Defendants argue that Plaintiffs' conspiracy and aiding and abetting claims should be dismissed, because the complaint does not identify the predicate underlying wrong. (D.I.

---

[13]     In their answering brief, Plaintiffs argue that Weston is liable for abuse of process, because he "unnecessarily disclos[ed] confidential and proprietary information" in the Michigan complaint and filed the action in Michigan despite a Delaware forum selection clause in the Purchase Agreement. (D.I. 41 at 18). Assuming such acts state a claim for abuse of process, Plaintiffs "did not provide such information in [their] complaint and thus did not meet [their] obligation to put [Weston] 'on notice of the precise misconduct with which [he was] charged." *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007).

25 at 18-19). "Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009). "Like civil conspiracy, aiding and abetting is a derivative tort." *Cornell Glasgow, LLC v. La Grange Prop., LLC*, 2012 WL 2106945, at \*11 (Del. Super. June 6, 2012). Thus, "there must be an actionable underlying wrong to which the claim of aiding and abetting can attach." *Id.* At this time, several tort claims against Coats and Weston have survived the motions to dismiss. None of the parties have addressed whether these tort claims adequately serve as predicate underlying wrongs. Accordingly, the court denies the motions to dismiss Counts 30 and 31.

### 8. Count 32: Indemnification

Manos and Weston ask the court to dismiss Count 32, for indemnification, because it fails to allege the source of their obligation to indemnify HMR. (D.I. 25 at 19). The court agrees that HMR's theory of recovery is inartfully expressed, because the complaint does not identify the source of its claim for indemnification. Nevertheless, the complaint puts Manos and Weston on notice that HMR is seeking indemnification based on the Purchase Agreement. "The right to indemnification can rest on any one of three grounds: (1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, i.e., indemnification implied-in-law." *Lagrone v. Am. Mortell Corp.*, 2008 WL 4152677, at \*6 (Del. Super. Sept. 4, 2008). Here, the only plausible basis on which HMR could assert a right to indemnity was by an express written agreement, because implied indemnity is legally unavailable. "The law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions." *Delle Donne & Assoc., LLP v. Millar Elevator Serv. Co.*, 840 A.2d 1244, 1252 (Del. 2004) (quoting *Rock v. Del. Elec. Coop., Inc.*, 328 A.2d 449, 455 (Del. Super. Ct. 1974)). Moreover, paragraphs 66 through 68 of the complaint, incorporated by

reference into Count 32, expressly allege that Sellers agreed in the Purchase Agreement to indemnify HMR. (D.I. 22 at ¶¶ 66-68). Therefore, HMR has not failed to a state a claim for indemnification for the reasons Manos and Weston argue. *See Delle Donne*, 840 A.2d at 1251-52 (holding that plaintiff did not waive its right to seek indemnification by failing to identify in the complaint the contract that was the basis for its indemnity claim).

## IV.    CONCLUSION

For the foregoing reasons, defendants' motions to dismiss and for partial summary judgment (D.I. 24, D.I. 26, D.I. 28) are granted in part and denied in part. Specifically, as explained in Part A, Manos' motion for summary judgment on Counts 1-9 is granted. Those claims are breach of the Purchase Agreement (Count 1), promissory estoppel (Count 2), breach of implied covenant of good faith and fair dealing (Count 3), unjust enrichment (Count 4), rescission and restitution (Count 5), fraudulent inducement (Count 6), negligent misrepresentation (Count 7), intentional and negligent non-disclosure (Count 8), and deceptive trade practices (Count 9).

As explained in Part B, Weston's motion to dismiss Count 1 (breach of the Purchase Agreement) is denied. Weston's motion to dismiss Count 3 (breach of the implied covenant) is granted with prejudice.

As explained in Part C, Weston's motion to dismiss Count 10 (breach of the Mutual Cooperation Agreement) and Count 11 (promissory estoppel) is granted without prejudice. Weston's motion to dismiss the claims in Count 12 (breach of the implied covenant) based on the confidentiality provision and the assigning of rights under the Purchase Agreement is granted with prejudice. Weston's motion to dismiss the claim in Count 12 based on extortion is denied.

As explained in Part D, Coats' motion to dismiss Counts 13-18 is denied. Those claims are breach of fiduciary duties (Count 13), breach of contract (Count 14), fraudulent inducement

(Count 15), negligent misrepresentation (Count 16), intentional and negligent non-disclosure (Count 17), and promissory estoppel (Count 18). Coats' motion to dismiss Count 19 (conversion) is granted without prejudice. Coats' motion to dismiss Count 20 (replevin), in which Weston and Engineering Interests joined, is granted without prejudice. The motion by Coats and IBKE (Wyo.) to dismiss Count 21 (unjust enrichment) is granted without prejudice. Coats' motion for summary judgment in his favor on Counts 13, 15-18, and 21 based on the statute of limitations is denied.

As explained in Part E, the motion by Weston and Engineering Interests to dismiss Counts 23-24 (trade secret misappropriation under federal law) is granted without prejudice. The motions by all defendants to dismiss Count 25 (trade secret misappropriation under state law) are denied. Weston's motion to dismiss Count 26 (civil extortion) is granted without prejudice. The motions by Coats and Weston to dismiss Count 27 (invasion of privacy) and Count 28 (intentional infliction of emotional distress) are denied. The motion by Weston and Engineering Interests to dismiss Count 29 (abuse of process) is granted without prejudice. The motion by Coats, Manos, Weston, and Engineering Interests to dismiss Count 30 (civil conspiracy) is denied. The motion by all defendants to dismiss Count 31 (aiding & abetting) is denied. The motions by Weston and Manos to dismiss Count 32 (indemnification) is denied. An appropriate order will enter.

32